# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

_____

|  |  |  |
|---|---|---|
| NATIONAL SECURITY COUNSELORS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 1:11-cv-00445 (BAH) |
| | ) | |
| CENTRAL INTELLIGENCE AGENCY, | ) | |
| DEFENSE INTELLIGENCE AGENCY, | ) | |
| DEPARTMENT OF JUSTICE, DEPARTMENT | ) | |
| OF STATE, NATIONAL SECURITY AGENCY, | ) | |
| and OFFICE OF THE DIRECTOR OF | ) | |
| NATIONAL INTELLIGENCE, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

_____)

## MEMORANDUM IN SUPPORT OF DEFENDANTS' PARTIAL MOTION TO DISMISS NSC'S FIRST AMENDED COMPLAINT

# TABLE OF CONTENTS

**PAGE**

**INTRODUCTION** ................................................................................................ 1

**STANDARD OF REVIEW** ................................................................................. 2

**ARGUMENT** ....................................................................................................... 3

**I.**      Because the APA's waiver of sovereign immunity does not apply, NSC's APA claims should be dismissed for lack of subject matter jurisdiction ................................................. 3

**II.**    NSC's Mandamus Claim does not meet the requirements for mandamus relief and should be dismissed for lack of subject matter jurisdiction or failure to state a claim ...... 5

**III.**   NSC does not have standing to seek prospective relief because it cannot show a real and immediate threat of future injury ............................................................................. 6

**IV.**   NSC's policy and practice challenges fail to state a claim ............................................. 10

      **A**.    Alleged Improper Blanket Withholdings of FOIA and Privacy Act Processing Material ............................................................................................... 10

      **B**.    Alleged Improper Invocation of the Glomar Response ....................................... 12

      **C.**    Alleged Failure to Provide Estimated Dates of Completion ............................... 16

      **D.**    Alleged Refusal to Identify Withheld Documents ............................................... 17

      **E.**    Alleged Refusal to Involve Exemptions with Particularity ................................ 18

      **F.**    FOIA Policy and Practice Claims ...................................................................... 18

**CONCLUSION** ................................................................................................... 19

# TABLE OF AUTHORITIES

**CASES**                                                                    **PAGE(S)**

American Historical Association v. National Archives and Records Administration,
  310 F. Supp. 2d 216 (D.D.C. 2004) ....................................................................... 8

Anderson v. Holder,
  691 F. Supp. 2d 57 (D.D.C. 2010) ......................................................................... 3

Ashcroft v. Iqbal, ,
  --- U.S. -- 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009) ............................................... 3

Auburn Regional Medical Center v. Sebelius,
  686 F.Supp. 2d 55 (D.D.C. 2010) ......................................................................... 5

Bassiouni v. C.I.A.,
  392 F.3d 244 (7th Cir. 2004) ............................................................................... 17

City of Los Angeles v. Lyons,
  461 U.S. 95, 102 (19830) .................................................................................... 3, 6

CREW v. U.S. Department of Homeland Security,
  527 F. Supp. 2d 101 (D.D.C. 2007) ............................................................... 7, 8, 9

Chang v. United States,
  738 F. Supp. 2d 83 (D.D.C. 2010) .................................................................... 2, 3

Edmonds Inst. v. U.S. Dep't of the Interior,
  383 F. Supp. 2d 105 (D.D.C. 2005) ...................................................................... 4

Fornaro v. James,
  416 F.3d 63 (D.C. Cir. 2005) ............................................................................... 5

Frugone v. CIA,
  169 F.3d 772 (D.C. Cir. 1999) ............................................................................ 14

Gardels v. CIA,,
  689 F.2d 1100 (D.C. Cir. 1982) .......................................................................... 12

Haase v. Sessions,
   835 F.2d 902 (D.C. Cir. 1987) ....................................................................... 6, 7

Kenney v. U.S. Dep't of Justice,
   603 F. Supp. 2d 184 (D.D.C. 2009) .................................................................. 4

Leatherman v. Tarrant Cnty. Narcotics Intelligence & Coordination Unit,
   507 U .S. 163 (1993) ....................................................................................... 2

Lujan v. Defenders of Wildlife,
   504 U.S. 555 (1992) ....................................................................................... 2

In re Medical Reimbursement,
   414 F.3d 7 (D.C. Cir. 2005) ............................................................................ 5

Payne Enterprises, Inc. v. United States,
   837 F.2d 486 (D.C. Cir. 1988) ...................................................................... 19

Phillippi v. CIA,
   655 F.2d 1325 (D.C. Cir.1981) ...................................................................... 12

Physicians Comm. for Responsible Med. v. U.S. Dep't of Health and Human Servs.,
   480 F. Supp. 2d 119 (D.D.C. 2007) .................................................................. 4

Quick v. Dep't Comm.
   --- F.2d. ---, 2011 WL 1326928 (D.D.C. April 7, 2011) ........................................ 9

Raines v. Byrd,
   521 U.S. 811 (1997) ....................................................................................... 2

Sierra Club v. U.S. Dep't of the Interior,
   384 F. Supp. 2d 1 (D.D.C. 2004) ...................................................................... 4

Subh v. CIA,
   2011 WL 149855 (D.D.C. Jan. 19, 2011) ..................................................... 9, 11

United Mine Workers of Am. Employee Benefit Plans Litig.,
   854 F. Supp. 914 (D.D.C. 1994) ...................................................................... 3

United States v. Sherwood,
   312 U.S. 584 (1941) ....................................................................................... 3

Valfells v. CIA,
   717 F. Supp. 2d 110 (D.D.C. 2010) ................................................................ 14

Wilner v. NSA,
    592 F.3d 60 (2d Cir. 2009) ................................................................. 12, 14, 15

**STATUTES**

5 U.S.C. § 552 ................................................................................................. 1

5 U.S.C. § 552(a)(7)(B) ................................................................................... 15

5 U.S.C. § 552(b) ............................................................................................. 18

5 U.S.C. §552(b)(3)(A) .................................................................................... 11

5 U.S.C. § 552(b)(5) ........................................................................................ 11

5  U.S.C. § 701 *et. seq* .................................................................................... 1

5 U.S.C. §§ 702, ............................................................................................... 3

5 U.S.C. § 704 .................................................................................................. 1

28 U.S.C. § 1361 .............................................................................................. 5

28 U.S.C. § 1361 .............................................................................................. 5

28 U.S.C. 1361 ................................................................................................. 1

50 U.S.C. § 403-1(i) ........................................................................................ 13

50 U.S.C. § 403g .............................................................................................. 11, 13

**RULES**

Rule 12(b)(1) ..................................................................................................... 1, 2

Rules 12(b)(1) ................................................................................................... 5

Rule 12(b)(6) ..................................................................................................... 1, 2, 3, 10

**INTRODUCTION**

Plaintiff National Security Counselors ("NSC") filed this action against six federal government agencies, asserting twenty-one Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, and FOIA-related claims.  The Defendants now move to dismiss ten of those claims under Rule 12(b)(1) for lack of subject matter jurisdiction and Rule 12(b)(6) for failure to state a claim upon which relief can be granted.

NSC has brought a total of ten claims – five claims under the FOIA, three claims under the Administrative Procedure Act ("APA"), 5 U.S.C. § 701 *et. seq*., one claim under the Mandamus Act, 28 U.S.C. § 1361, and one FOIA/APA claim – challenging FOIA policies and practices allegedly adopted by the CIA and seeking prospective relief in the form of declarations and injunctions compelling the CIA to change its alleged policies.  To have standing to seek prospective relief, a plaintiff must show a real and immediate danger of direct injury.  Because NSC cannot make that showing, it lacks standing to bring its ten claims for prospective relief - Counts 4, 11, 14, 15, 16, 17, 18, 19, 20, and 21 – and those claims should be dismissed for lack of subject matter jurisdiction.

The four claims under the APA and the one claim under the Mandamus Act should be dismissed also be dismissed on alternative grounds.  The APA waives sovereign immunity only when, among other things, there is no other adequate remedy available in court. 5 U.S.C. § 704.  Similarly, mandamus relief is only available when there is not another adequate remedy.  To invoke mandamus jurisdiction, a plaintiff must show that it has a clear right to relief and the defendant has a clear duty to act.  Each of NSC's APA and Mandamus claims is preceded by a nearly identical FOIA claim.  Because NSC can obtain judicial review of its claims under the

FOIA, it cannot meet the requirements for APA or Mandamus relief, and its APA and Mandamus claims should be dismissed.

Even if NSC had standing to bring its policy and practice challenges, NSC has failed to state claims upon which relief can be granted and its claims are subject to dismissal under Rule 12(b)(6).

## **STANDARD OF REVIEW**

When a defendant brings a motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1), the plaintiff bears the burden of establishing by a preponderance of the evidence that the court has subject matter jurisdiction. Lujan v. Defenders of Wildlife, 504 U.S. 555, 561 (1992). In determining whether the plaintiff has carried its burden, the Court must accept as true all of the factual allegations contained in the complaint. Leatherman v. Tarrant Cnty. Narcotics Intelligence & Coordination Unit, 507 U .S. 163, 164 (1993).

"No principle is more fundamental to the judiciary's proper role in our system of government than the constitutional limitation of federal-court jurisdiction to actual cases or controversies." Raines v. Byrd, 521 U.S. 811, 818 (1997). A core element of the case-or-controversy requirement is that a plaintiff must establish that it has standing to sue. Lujan v. Defenders of Wildlife, 504 U.S. 555, 561 (1992). In order to satisfy the "irreducible constitutional minimum of standing," a plaintiff must demonstrate: (1) that it has suffered injury in fact, an actual or imminent invasion of a legally protected, concrete and particularized interest; (2) a causal connection between the alleged injury and the defendant's conduct at issue; and (3) that it is "likely," not "speculative," that the court can redress the injury. Id. at 560–61. A plaintiff seeking injunctive relief must establish a fourth element to have standing. Chang v.

United States, 738 F. Supp. 2d 83, 88 (D.D.C. 2010).  It must show a real and immediate danger

of future injury, demonstrated by more than a showing of past harm.  Id. (citing City of Los

Angeles v. Lyons, 461 U.S. 95, 102 (1983)).  If a plaintiff cannot make that showing, it has not

met the requirements for seeking prospective relief in federal court.  Id.

    To survive a motion to dismiss, a complaint must contain sufficient factual matter,

accepted as true, to state a claim to relief that is plausible on its face.  Anderson v. Holder, 691 F.

Supp. 2d 57, 61 (D.D.C. 2010) (brackets omitted).  A court considering a Rule 12(b)(6) motion

must construe the complaint in the light most favorable to the plaintiff and must accept as true all

reasonable factual inferences drawn from well-pleaded factual allegations. In re United Mine

Workers of Am. Employee Benefit Plans Litig., 854 F. Supp. 914, 915 (D.D.C. 1994).  However,

where the well-pleaded facts do not permit a court, drawing on its judicial experience and

common sense, to infer more than the "mere possibility of misconduct," the complaint has not

shown that the pleader is entitled to relief.   Ashcroft v. Iqbal, ---U.S. ---, 129 S.Ct. 1937, 1949,

1950, 173 L.Ed.2d 868 (2009).

## ARGUMENT

**I.     Because the APA's waiver of sovereign immunity does not apply, NSC's APA claims should be dismissed for lack of subject matter jurisdiction.**

    The United States, as sovereign, "is immune from suit save as it consents to be sued, and

the terms of consent to be sued in any court define that court's jurisdiction to entertain the suit."

United States v. Sherwood, 312 U.S. 584, 586 (1941) (citations omitted).  The APA waives

sovereign immunity for claims (1) not seeking "money damages," (2) "for which there is no

other adequate remedy," and (3) that are seeking relief that is not "expressly or impliedly

forbidden by another statute." 5 U.S.C. §§ 702, 704.  Based on the second requirement, this

Court has repeatedly held that an APA claim must be dismissed if it either is premised on a

violation of FOIA or seeks relief that can be obtained through a FOIA claim.  See, e.g., Kenney

v. U.S. Dep't of Justice, 603 F. Supp. 2d 184, 190 (D.D.C. 2009) ("Plaintiff's claim that the

[Defendant] improperly withheld agency records that were reponsive to his FOIA request is, of

course, reviewable under the FOIA itself. Accordingly, plaintiff does not also have access to

judicial review under the APA." (internal citations omitted)); Sierra Club v. U.S. Dep't of the

Interior, 384 F. Supp. 2d 1, 30 (D.D.C. 2004) ("The FOIA itself provides an adequate remedy for

Plaintiffs' claims and separate APA review is not available.");  see also, e.g., Physicians Comm.

for Responsible Med. v. U.S. Dep't of Health and Human Servs., 480 F. Supp. 2d 119, 121 n.2

(D.D.C. 2007) (dismissing APA claim because "[a]lthough the APA governs judicial review

generally of 'final agency action,' review under the APA is limited to those agency actions for

which there is no adequate remedy in court. There is, of course, an adequate remedy in court

under FOIA." (internal citations omitted)); Edmonds Inst. v. U.S. Dep't of the Interior, 383 F.

Supp. 2d 105, 111 (D.D.C. 2005) (holding that "review under the APA is unavailable" where

"[t]he FOIA statute offers a clear and simple remedy for" the alleged "agency non-compliance

with the FOIA").

       All three of NSC's APA claims, and the APA component of its "FOIA/APA" claim, are

based on alleged violations of the FOIA and seek relief available under the FOIA.  In fact, each

of NSC's APA claims immediately follows an identical claim brought under the FOIA.

Although NSC fails to adequately allege these FOIA claims, see infra Sections III and IV, the

availability of such review means that the APA's waiver of sovereign immunity does not apply.

Accordingly, NSC's APA claims – Counts 16, 19, and 21 and the APA component of Count 14 –

should be dismissed for lack of subject matter jurisdiction.

II.    **NSC's Mandamus Claim does not meet the requirements for mandamus relief and should be dismissed for lack of subject matter jurisdiction or failure to state a claim.**

Mandamus is a drastic remedy to be invoked only in extraordinary situations and to be granted only when essential to the interests of justice.  Auburn Regional Medical Center v. Sebelius, 686 F.Supp. 2d 55, 71 (D.D.C. 2010).  " Under 28 U.S.C. § 1361,[1] a court has jurisdiction to grant mandamus relief only if '(1) the plaintiff has a clear right to relief; (2) the defendant has a clear duty to act; and (3) there is no other adequate remedy available to plaintiff.'" Id. (quoting In re Medical Reimbursement Litigation, 414 F.3d 7, 10 (D.C. Cir. 2005)); see Fornaro v. James, 416 F.3d 63, 69 (D.C. Cir. 2005).  "Even when the legal requirements for mandamus jurisdiction have been satisfied, however, a court may grant relief only when it finds compelling equitable grounds."  In re Medical Reimbursement, 414 F.3d at 10.  "In resolving a motion to dismiss an action for relief in the nature of mandamus, courts have characterized the issue as involving both a jurisdictional and a merits inquiry because, in determining whether the court has jurisdiction to compel an agency or official to act, the court must consider the merits question of whether a legal duty is owed to the plaintiff under the relevant statute."  Auburn Regional, 686 F.Supp. 2d at 71.  Accordingly, the CIA moves to dismiss NSC's Mandamus Claim under both Rules 12(b)(1) and 12(b)(6).

NSC's Mandamus Claim – Count 17 – fails to meet any of the three requirements for mandamus relief.  First, NSC does not have a clear right to relief.  As set forth below, see infra

---

[1] The Mandamus Act provides that "[t]he district courts shall have original jurisdiction of any action in the nature of mandamus to compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff." 28 U.S.C. § 1361.

5

Sections III and IV, NSC does not have standing to seek prospective relief and has failed to state claims upon which relief can be granted.  Second, the CIA does not have a clear duty to act.  As explained in Section IV, NSC seeks declarations and injunctions that would compel the CIA to take actions that are not required by the FOIA.  Third, the FOIA provides an adequate remedy for NSC's claim.  In fact, each of NSC's mandamus claims is preceded by claims brought under the APA and FOIA based on the same set of facts.  Because NSC's mandamus claims do not meet any of the three mandamus requirements, they are insufficient to establish jurisdiction for NSC to seek mandamus review from this Court and should be dismissed  for lack of jurisdiction or for failure to state a claim upon which relief can be granted.

III.    **NSC does not have standing to seek prospective relief because it cannot show a real and immediate threat of future injury.**

NSC has brought ten counts – five FOIA claims, three APA claims, one Mandamus claim, and one FOIA/APA claim – challenging five alleged CIA policies or practices that NSC claims violate the FOIA.  In each of these counts, NSC seeks prospective relief in the form of a declaration and injunction compelling the CIA the change its alleged policy.  To have standing to bring a claim for prospective relief, a "plaintiff must show that he has sustained or is immediately in danger of sustaining some direct injury as the result of the challenged official conduct and the injury or threat of injury must be both real and immediate, not conjectural or hypothetical." Lyons, 461 U.S. at 102-03 (quotation marks omitted).[2]  When challenging an alleged policy or practice, "more than a nebulous assertion of the existence of a 'policy' is

---

[2] Although the plaintiff in Lyons sought only injunctive relief, the D.C. Circuit has held that the Supreme Court's decision in Lyons apples equally to claims for declaratory relief. Haase v. Sessions, 835 F.2d 902, 911 (D.C. Cir. 1987).

required to establish standing. The plaintiffs must not only demonstrate its existence but also that they are likely to be subjected to the policy again." Haase, 835 F.2d at 911.

NSC attempts to establish standing to bring each of its ten policy and practice claims based on the same basic formulation. First, it alleges that the CIA has adopted a policy or practice that violates the FOIA. Then it claims that "[a]s a frequent FOIA requester, NSC stands to continue to be harmed by this ongoing practice in the future." Compl. ¶¶ 36, 80, 97, 106, 110, 121, 125, 132, and 136. Notably, NSC does not allege that it has specific plans to file FOIA requests in the future that would potentially implicate the alleged policies and practices it is challenging. Instead, NSC bases its claim of future injury entirely on its allegation that it is a frequent FOIA requester. That allegation, however, is insufficient to show the kind of real and immediate threat of injury that is required to establish standing to seek prospective relief.

This Court has reject similar attempts to establish standing to seek prospective relief. In CREW v. U.S. Department of Homeland Security, 527 F. Supp. 2d 101 (D.D.C. 2007), CREW challenged the denial of its FOIA request for certain White House visitor logs and, at the same time, raised an APA challenge to DHS's policy governing the retention of those records. Id. at 102. Judge Lamberth concluded that CREW lacked standing to seek prospective injunctive or declaratory relief with respect to its policy challenge because it had alleged only a past harm, namely that some records responsive to its FOIA request had been deleted pursuant to the challenged policy. Id. at 105-06. The court specifically rejected CREW's claim of a "continuing injury" based on its intention to "continue to use the FOIA to gain access to agency records" in the future, efforts that CREW contended would continue to be frustrated by DHS's record retention policy. Id. at 106 (citation omitted). Although the court described CREW's alleged

injury as "certainly plausible," it found it "too speculative and remote" to establish standing for

prospective relief because "nothing in the record before the Court suggests how frequently these

requests are made . . . and whether (or when) CREW expects to file future FOIA requests." Id.

In short, the possibility that CREW might someday file another FOIA request was "not enough

to establish an imminent, non-speculative injury-in-fact" sufficient to create standing to seek

prospective relief.  Id. at 107.

Judge Kollar-Kotelly rejected a similar argument in American Historical Association v.

National Archives and Records Administration, 310 F. Supp. 2d 216 (D.D.C. 2004). The

plaintiffs in that case, who sought access to the presidential records of former President Reagan,

challenged the legality of an Executive Order pursuant to which those records had been

withheld. Id. at 218.  Arguing that the Executive Order conflicted with the Presidential Records

Act, they sought a declaratory judgment that the Executive Order was invalid and an injunction

barring its future application.  Id. at 224 n.5.  By the time the Court considered the plaintiffs'

claim, however, most of the records the plaintiffs sought had already been released; the balance

had been withheld pursuant to an assertion of privilege, over which there was no dispute; and the

plaintiffs had no outstanding requests for presidential records.  Id. at 223-24, 228. Thus, while

the court accepted that the plaintiffs had suffered a past harm (in the form of delay in the release

of the records), it concluded that their assertion of future harm, based on their "regular[]" and

"extensive use of the records of former presidents," was too speculative to support standing.  Id.

at 228. The court concluded that even the "significant likelihood that [p]laintiffs will again seek

access to presidential records, and face indeterminate delays in accessing them," does not

establish the requisite future injury that is "sufficiently imminent, and not conjectural and

hypothetical," and thus dismissed plaintiffs' claims for prospective relief for lack of standing.

<u>Id.</u> at 228-29.

Judge Kollar-Kotelly recently reached a similar conclusion in <u>Quick v. Dep't of Comm.</u>,

--- F.2d ----, 2011 WL 1326928 (D.D.C. April 7, 2011).  In that case Quick attempted to

establish standing to pursue pattern and practice claims by alleging that he planned to submit

FOIA requests to the defendant agencies in the future.   The Court considered Quick's

allegations and concluded that the Supreme Court has foreclosed plaintiffs from relying on such

speculative claims to establish standing:

> Meanwhile, to the extent Quick seeks to establish his standing to
> pursue his "pattern or practice" claim by his passing allegation that
> he "plans to file additional FOIA requests to the NIST in the
> future," the Supreme Court has foreclosed that route: "[s]uch
> 'some day' intentions—without any description of concrete plans,
> or indeed even any specification of when the some day will be—do
> not support a finding of the [requisite] 'actual or imminent'
> injury."

<u>Quick</u>,  --- F.2d ----, 2011 WL 1326928, *11 (quoting  <u>Lujan</u>, 504 U.S. at 564).

Like the plaintiffs in <u>Crew</u>, <u>American Historical Association</u>, and <u>Quick</u>, NSC's

allegations that  "[a]s a frequent FOIA requester, NSC stands to continue to be harmed by this

ongoing practice in the future," <u>see</u> Compl. ¶¶ 36, 80, 97, 106, 110, 121, 125, 132, and 136,

are too speculative to establish standing to seek prospective relief.  NSC's status as a frequent

FOIA requester cannot transform speculation and hypothetical situations into cases or

controversies.  <u>See</u> <u>Crew</u>, 527 F. Supp. 2d at 106 ("That CREW may one day file another FOIA

request with the DHS does not represent a cognizable, palpable injury which presents a case or

controversy for the Court to consider.").  Because NSC cannot meet its burden of establishing

that it has standing to seek prospective relief, its policy and practice claims – Counts  4, 11, 14,

15, 16, 17, 18, 19, 20, and 21 – should be dismissed for lack of subject matter jurisdiction.

**IV.    NSC's policy and practice challenges fail to state a claim.**

Even if NSC had standing to bring its policy and practice claims, those claims would still be subject to dismissal under Rule 12(b)(6) for failure to state a claim upon which relief can be granted.  NSC's ten policy and practice claims – five FOIA claims, three APA claims, one Mandamus claim, and one FOIA/APA claim – either fail to establish that the CIA has adopted the challenged policy or alleged that the CIA has adopted policies and practices that are consistent with the FOIA.  Moreover, the policy and practice claims NSC has brought under the FOIA – Counts 4, 11, 15, 18, and 20 and the FOIA component of Count 14 – should be dismissed because NSC's allegations are insufficient to establish the type of pattern and practice required for review under the FOIA.  Because NSC cannot establish that the CIA has adopted policies or practices that violate the FOIA, its ten policy and practice challenges should be dismissed for failure to state a claim upon which relief can be granted.

**A.    Alleged Improper Blanket Withholdings of FOIA and Privacy Act Processing Materials**

In Claims 4 and 11, NSC alleges that the CIA has a policy or practice of improperly applying a blanket exemption to (1) "all information pertaining to an agency's processing of FOIA and Privacy Act requests," Compl. ¶ 35,  and (2) "all FOIA/[Privacy Act] reference materials."  Id. ¶ 79.  It then alleges that the CIA's policy violates the FOIA and that "[a]s a frequent FOIA requester, NSC stands to continue to be harmed by this ongoing practice in the future."  Id. ¶¶ 36, 80.  Even if NSC's factual allegations are accepted as true, the CIA's alleged policy would be consistent with the FOIA.

NSC alleges that the CIA has a policy or practice of improperly applying a blanket

10

exemption to information that can properly be withheld under specific exemptions to the FOIA's

disclosure requirement.  FOIA Exemption 3 protects records that are "specifically exempted

from disclosure by statute ... if that statute ... requires that the matters be withheld from the

public in such a manner as to leave no discretion on the issue; or ... establishes particular criteria

for withholding or refers to particular types of matters to be withheld." 5 U.S.C. § 552(b)(3)(A).

This Court has recently noted that the Central Intelligence Agency Act of 1949 ("CIA Act") is

precisely the type of statute comprehended by exemption 3.  Subh v. CIA, --- F.Supp.2d —,

2011 WL 149855, *3 (D.D.C. Jan. 19, 2011).  Section 6 of the CIA Act exempts the CIA from

"any ... law which require[s] the publication or disclosure of the organization, functions, names,

official titles, salaries, or numbers of personnel employed by the [CIA]." 50 U.S.C. § 403g.

        As one of the central functions of the CIA is the management of sensitive information,

which it collects, analyzes, and disseminates in accordance with its national security mission,

information pertaining to its processing of FOIA and Privacy Act requests and its FOIA and

Privacy Act reference materials are exempt from disclosure under Section 6 of the CIA Act and

FOIA Exemption 3.  Moreover, information pertaining to the processing of FOIA and Privacy

Act requests may also be subject to the deliberate process privilege protected by Exemption 5.  5

U.S.C. § 552(b)(5).

        Because the CIA can properly withhold FOIA and Privacy Act processing material under

FOIA Exemptions 3 and 5, even if NSC could show that the CIA has a policy of applying

blanket exemptions to FOIA and Privacy Act processing materials, such a policy would be

consistent with, not in violation of, the FOIA.  As NSC cannot establish based on its allegations

that the CIA has adopted a policy or practice that violates the FOIA, Counts 4 and 11 of NSC's

complaint should be dismissed for failure to state a claim upon which relief can be granted.

**B.**      **Alleged Improper Invocation of the Glomar Response**

In Claim 14, NSC alleges that the CIA has a policy or practice of improperly giving "a

Glomar response to any request for information pertaining to FOIA and MDR [Mandatory

Declassification Review] requests" referred to the CIA by another government agencies.  Id. at ¶

96.  NSC then claims that the alleged policy violates the FOIA and that "[a]s a frequent FOIA

requester, NSC stands to continue to be harmed by this ongoing practice in the future."  Id. ¶ 97.

NSC also alleges that because other agencies release to the public information showing that they

have referred FOIA or MDR requests to the CIA, the CIA cannot properly issue a Glomar

response to FOIA requests concerning FOIA or MDR requests it has received from other

agencies.  Compl. ¶ 95.

Even if accepted as true, NSC's allegations fail to state a claim upon which relief can be

granted.  It is well settled that "an agency may refuse to confirm or deny the existence of records

where to answer the FOIA inquiry would cause harm cognizable under a[ ] FOIA exception."

Gardels v. CIA, 689 F.2d 1100, 1103 (D.C. Cir. 1982) (citing Phillippi v. CIA, 655 F.2d 1325,

1330 (D.C. Cir.1981)).  A refusal to confirm or deny the existence of records is called a Glomar

Response.  See Wilner v. NSA, 592 F.3d 60, 67 (2d Cir. 2009) (explaining that the Glomar

doctrine originated in Phillippi, 655 F.2d 1325, a FOIA case concerning records pertaining to the

Hughes Glomar Explorer, an oceanic research vessel).

President Obama's Executive Order on Classified National Security Information

expressly authorizes agencies to issue Glomar responses to FOIA requests for classified

information.  Executive Order 13526, Section 3.6, *Processing Requests and Reviews*, provides

that "in response to a request for information under the Freedom of Information Act ... (a) An agency may refuse to confirm or deny the existence or nonexistence of requested records whenever the fact of their existence or nonexistence is itself classified under this order or its predecessors."

As set forth above, FOIA Exemption 3 protects from disclosure documents that are exempt from disclosure by statute.  The CIA may assert a Glomar Response to the types of claims at issue here under FOIA Exemption 3, based on the CIA Act, which exempts the CIA from  "any ... law which require[s] the publication or disclosure of the organization, functions, names, official titles, salaries, or numbers of personnel employed by the [CIA]." 50 U.S.C. § 403g; the National Security Act of 1947, as amended, ("NSA Act"), 50 U.S.C. § 403-1(i), which protects intelligence sources and methods from unauthorized disclosure; or both of these statutes. See Subh, --- F.Supp.2d —, 2011 WL 149855, *3 ("It is well established that these provisions of the [NSA] and the [CIA] Act are 'precisely the type of statutes comprehended by exemption 3.").

As previously explained, one of the central functions of the CIA is information management: safeguarding classified intelligence information from unauthorized disclosure to ensure the continued trust and cooperation of CIA intelligence sources and the continued effectiveness of clandestine CIA intelligence methods.  The CIA's information management function involves processing requests for the pubic release of CIA information or records, including processing response to FOIA and MDR referrals from other federal government agencies.  The CIA may by asked by another government agency to review CIA-originated information or documents in the other agency's possession, based on the referring agency's determination that the CIA material is responsive to a FOIA request.  Responding to requests

from other agencies in a manner that protects classified CIA information and intelligence sources

or methods from unauthorized disclosure is an essential component of the CIA's information

management.

Because acknowledging whether responsive CIA-originated documents exist could

disclose the existence of classified information that the CIA obtained in confidence and provided

in confidence to the referring agency, the CIA may refuse to confirm or deny the existence or

nonexistence of records relating to its processing of FOIA and MDR referrals.  The CIA's

Glomar responses to requests regarding FOIA and MDR referrals are valid under FOIA

Exemption 1, which protects properly classified information, and Exemption 3, based on the CIA

and NSA Acts.

In addition, NSC's allegation that other agencies disclose to the public FOIA or MDR

request they have referred to the CIA is irrelevant.  The statement of another government agency

with respect to the existence or nonexistence of CIA information are not binding on the CIA and

do not waive the CIA's ability to assert an otherwise applicable FOIA exemption to protect CIA

information from disclosure.  Frugone v. CIA, 169 F.3d 772, 775-76 (D.C. Cir. 1999).  This

Court recently concluded in Valfells v. CIA, 717 F.Supp. 2d 110 (D.D.C. 2010), that an FBI

disclosure of records which included redactions of CIA-originating information did not

constitute an official acknowledgment by the CIA that the latter agency had any records on the

subject of the FBI's records.  Valfells,  717 F.Supp. 2d at 120.  Similarly, in this case, statements

by other agencies that they have referred FOIA or MDR requests to the CIA are not

acknowledgments by the CIA that it possesses documents.

Public knowledge is also irrelevant to whether an agency's invocation of a Glomar

response it appropriate.  In a recent case before the Second Circuit, a FOIA requesters submitted

FOIA requests to the National Security Agency and Department of Justice for documents related

to the Terrorist Surveillance Program ("TSP").  <u>Wilner v. NSA</u>, 592 F.3d 60, 64 (2d Cir. 2009).

The government agencies responded by invoking the Glomar doctrine and refusing to confirm or

deny whether such documents existed.  <u>Id.</u>  The plaintiffs filed suit challenging the defendants

Glomar response, claiming, among other things, that because the existence of the TSP had

recently been disclosed to the public by the news media, the agencies' Glomar response was

inappropriate.  <u>Id.</u> at 69.  The Court considered the plaintiffs' argument and explicitly rejected it:

> We now hold that, as a general rule, (1) an agency may provide a
> Glomar response to FOIA requests for information gathered under
> a program whose existence has been publicly revealed, and may do
> so specifically with respect to information gathered under the TSP,
> and (2) that such a response will be reviewed in the same manner
> as any other Glomar response to a FOIA request.

<u>Id.</u>  The Second Circuit's analysis is directly on point here.  NSC's allegation that other agencies

may disclose that they have referred FOIA of MDR requests to the CIA does not change the

Glomar analysis.

Because responding to FOIA requests for information regarding FOIA and MDR

referrals from other agencies would itself reveal information about CIA functions and

intelligence sources or methods that are exempted from disclosure under Exemption 3, in

conjunction with the CIA and NSA Acts, a policy of providing Glomar responses to such

requests is entirely consistent with the FOIA.  Because NSC cannot establish, based on the facts

in its complaint, that the CIA has adopted a policy or practice that violates the FOIA, Count 14

should be dismissed for failure to state a claim upon which relief can be granted.

### C.      Alleged Failure to Provide Estimated Dates of Completion

Under the FOIA, "[e]ach agency shall ... establish a telephone line or Internet service that provides information about the status of a request to the person making the request ..., including ... an estimated date on which the agency will complete action on the request."  5 U.S.C. § 552(a)(7)(B).  In Counts 15, 16 and 17, NSC alleges that the CIA has a policy or practice of refusing to provide estimated dates of completion to FOIA requesters.  Compl. ¶ 104.  NSC further claims that the alleged policy violates the FOIA and that "as a frequent FOIA requester, NSC stands to continue to be harmed by this ongoing practice."  Id. ¶ 106.

NSC's own complaint undermines its allegation that the CIA has adopted a policy of refusing to provide FOIA requesters with estimated dates of completion.  In ¶ 101, NSC alleges that "[o]n 17 November 2010, a CIA representative informed NSC that CIA's new policy was to inform requesters that the estimated date of completion for any given request is two years from the CIA's date of receipt."  This allegation, if accepted as true, would establish that the CIA has a policy of providing estimated completion dates to FOIA requesters.  NSC seems to base its claim that the CIA has a policy of failing to provide estimated completion dates on two allegations that the agency failed to provide such dates to other FOIA requesters.  Id. ¶¶ 102-103.  NSC, however, provides no basis for concluding that these are anything other than isolated incidents, especially in light of NSC's allegation that the CIA informed it directly of a new CIA policy of providing estimated completion dates.  Because NSC's own complaint undermines its allegation that the CIA has adopted a policy of refusing to provide estimated completion dates, Counts 15, 16, and 17 should be dismissed for failure to state a claim.

D.     **Alleged Refusal to Identify Withheld Documents**

In Counts 18, 19, and 20, NSC alleges that the CIA has a policy or practice of refusing to identify withheld records in the administrative stage.  Compl. ¶ 120.  NSC further claims that the alleged policy violates the FOIA and that "[a]s a frequent FOIA requester, NSC stands to continue to be harmed by this ongoing practice in the future."  Id. ¶ 121.

Even if accepted as true, NSC's allegations do not establish that the CIA has adopted a policy that violates the FOIA.  In Bassiouni v. C.I.A., 392 F.3d 244 (7th Cir. 2004), the Court analyzed a challenge to the CIA's refusal to identify withheld documents.  In that case, the CIA informed a FOIA requester that it had located responsive documents but would not be producing or identifying them.  Id. at 245.  The Court dubbed this type of response a "no number, no list" response and concluded that such responses were appropriate and legally indistinguishable from Glomar responses.  Id. at 246-47.  The Court further noted that in some instances "[t]he risk to intelligence sources and methods comes from the details that would appear in a *Vaughn* index; it is these details-both the documents that appear in a list and the documents that the CIA might have gathered but did not-that permit crafty observers to infer what the CIA is investigating, what it has overlooked, and how (and from whom) it gleans information."  Id.  The Court also observed that the availability of a "no number, no list" response benefits requesters because it allows agencies to inform them that responsive documents exist even if the agencies cannot provide any details about the documents.  Id. at 247.

In Counts 18, 19, and 20, NSC appears to be challenging the very practice that the Court upheld in Bassiouni.  Because agencies can properly issue "no number, no list" responses, a CIA policy of doing so when appropriate would not violate the FOIA.  Because NSC cannot establish

17

that the CIA has adopted a policy or practice that violates the FOIA, Counts 18, 19, and 20

should be dismissed for failure to state a claim.

### E.      Alleged Refusal to Invoke Exemptions with Particularity

In Counts 20 and 21, NSC alleges that the CIA has a policy or practice of invoking

exemptions "on a document level without indicating which exemptions apply to which particular

redactions."  Compl. ¶ 129.   NSC further alleges that the CIA's alleged policy or practice

violates the FOIA and that "[a]s a frequent FOIA requester, NSC stands to continue to be harmed

by this ongoing practice in the future."  Id. ¶ 132.

Once again, the alleged policy or practice that NSC challenges in Counts 20 and 21 does

not violate the FOIA.  The FOIA does not require agencies to specify the exemption under which

a deletion is made if including the indication would harm an interest protected by the exemption:

> Any reasonably segregable portion of a record shall be provided to
> any person requesting such record after deletion of the portions
> which are exempt under this subsection. The amount of
> information deleted, and the exemption under which the deletion is
> made, shall be indicated on the released portion of the record,
> <u>unless including that indication would harm an interest protected
> by the exemption in this subsection under which the deletion is
> made</u>.

5 U.S.C. § 552(b) (emphasis added).  By refusing to specify the exemptions under which

redactions are made, agencies may be able to release more information than they could if they

were required to indicate the claimed exemptions next to each redaction.

Because an agency may, consistent with the FOIA, refuse to specify the exemptions

under which a deletion is made when appropriate, NSC cannot establish that the CIA has

adopted a policy or practice that violates that FOIA.  Accordingly, Counts 20 and 21 of NSC's

complaint should be dismissed for failure to state a claim.

18

### F.      FOIA Policy and Practice Claims

In crafting Counts 4, 11, 15, 18, and 20 and the FOIA component of Count 14 , NSC attempts to state the kind of FOIA "policy or practice" claim recognized by the D.C. Circuit in Payne Enterprises, Inc. v. United States, 837 F.2d 486 (D.C. Cir. 1988). There, the Court recognized that plaintiffs may seek equitable relief under FOIA when "an agency's refusal to supply information evidences a policy or practice of delayed disclosure or some other failure to abide by the terms of the FOIA, and not merely isolated mistakes by agency officials."  Id. at 491.    NSC, however, has not alleged facts evidencing a policy or practice of FOIA noncompliance.  Aside from its conclusory allegations that the policies exist, NSC alleges nothing more than isolated incidents in which the CIA allegedly violated the FOIA.  Such isolated incidents offer a stark contrast to the evidence in Payne, where the agency conceded that for almost two years it had a followed an impermissible practice of withholding documents.  Id. at 491 & n.8.  Even if the allegations in NSC's complaint are accepted as true, the potential violations of the FOIA in the complaint are more likely to be explained as "merely isolated mistakes by agency officials," id. at 491, than evidence of a policy or practice and are insufficient to establish FOIA pattern and practice claims.  Accordingly, NSC's FOIA practice and pattern claims –  Counts 4, 11, 15, 18, and 20 and the FOIA component of Count 14 – should be dismissed for failure to state a claim upon which relief can be granted.

### CONCLUSION

For all the reasons stated above, the Court should grant Defendants' partial motion to dismiss NSC's First Amended Complaint.

Dated: June 3, 2011                    Respectfully submitted,

                                       TONY WEST
                                       Assistant Attorney General

                                       ELIZABETH J. SHAPIRO
                                       Deputy Branch Director

                                       /s/ Ryan Parker
                                       RYAN  PARKER
                                       Trial Attorney
                                       United States Department of Justice
                                       Civil Division, Federal Programs Branch
                                       20 Massachusetts Avenue, N.W.
                                       Washington, DC 20530
                                       Tel: (202) 514-4336; Fax: (202) 616-8202
                                       Attorneys for Defendant