**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

---

NATIONAL SECURITY COUNSELORS,

　　　　　Plaintiff,

　　v.

CENTRAL INTELLIGENCE AGENCY, *et al.*,

　　　　　Defendants.

---

Civil Action Nos. 11-443, 11-444,
11-445 (BAH)

Judge Beryl A. Howell

## <u>MEMORANDUM OPINION</u>

The plaintiff, National Security Counselors ("NSC"), a Virginia-based non-profit organization, brought these three related actions against six federal intelligence agencies (collectively, "the defendants")—the Central Intelligence Agency ("CIA"), the Defense Intelligence Agency ("DIA"), the Department of Justice ("DOJ"), the Department of State ("State"), the National Security Agency ("NSA"), and the Office of the Director of National Intelligence ("ODNI")—pursuant to, *inter alia*, the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, and the Administrative Procedure Act ("APA"), 5 U.S.C. §§ 701 *et seq.*[1] Stemming from the plaintiff's submission of numerous FOIA requests to the defendants, these actions originally comprised more than four dozen claims challenging the defendants' responses

---

[1] The actions addressed in this opinion originated as three separate actions, which the plaintiff filed on the same day along with a notice that all three cases were related because they involve common factual issues. *See* Compl., NSC 443 ECF No. 1; Not. Related Case, NSC 444 ECF No. 2; Not. Related Case, NSC 445 ECF No. 2. As explained below, *infra* Part I, two of these actions, Civil Action Nos. 11-443 and 11-444, have since been consolidated. For purposes of organizational clarity, the Court will refer to each action by its civil case number, without the accompanying year. Thus, for example Civil Action No. 11-444 will be referred to as "NSC 444," with court filings in that case identified by the prefix and appropriate docket number.

to these requests, as well as broader practices and policies guiding the defendants' respective procedures for responding to FOIA requests.

With the majority of these claims resolved through prior dispositive motions, now pending before the Court are the defendants' motions for summary judgment on all of the plaintiff's remaining claims, as well as the plaintiff's cross-motions for summary judgment, either in whole or in part, on many of these claims. In addition, the plaintiff has moved for reconsideration of this Court's prior dismissal of one its FOIA claims. For the reasons set out below, summary judgment is granted to the defendants with respect to each of the plaintiff's remaining claims, and the plaintiff's effort to obtain additional disclosure in response to its various FOIA requests is denied in all respects.

## I.    BACKGROUND

The relevant factual and procedural history is summarized only briefly below since the Court's prior opinions resolving the parties' previous dispositive motions provide ample additional detail. *See Nat'l Sec. Counselors v. CIA* ("*NSC I*"), 898 F. Supp. 2d 233 (D.D.C. 2012); *Nat'l Sec. Counselors v. CIA* ("*NSC II*"), 960 F. Supp. 2d 101 (D.D.C. 2013). The present opinion addresses the outstanding claims originally alleged in three related cases, which together have called upon the Court to resolve no fewer than six dispositive motions over the last five years.

The story begins in February 2011, when the plaintiff filed three separate actions—NSC 443, NSC 444, and NSC 445—alleging that the defendants improperly processed dozens of the plaintiff's FOIA requests and maintained various policies and practices that constituted ongoing violations of FOIA or the APA. *NSC I*, 898 F. Supp. 2d at 241–42.[2] In total, these cases alleged

---

[2]    Nearly a year later, in 2012, the plaintiff, along with three individuals, filed a separate case against two of the defendants, *see* Compl., *Nat'l Sec. Counselors v. CIA*, No. 12-284, ECF No. 1, related to the plaintiff's earlier-

forty-five separate claims against the defendants.  *See* NSC 443 Compl., ECF No. 1; NSC 444
Am. Compl., ECF No. 6; NSC 445 Am. Compl, ECF No. 7.  After dismissal of the majority of
the plaintiff's claims relating to the defendants' alleged policies and practices in handling FOIA
requests, *id.* 290–91, upon motion by the plaintiff, two of these cases, NSC 443 and NSC 444,
were consolidated, with the third case continuing to proceed as a separate action, *see* NSC 444
Minute Order, dated Apr. 2, 2014.

Thereafter, the defendants moved for summary judgment on NSC's remaining claims in
each of these actions, and NSC cross-moved for summary judgment on a portion of those claims.
*NSC II*, 960 F. Supp. 2d at 116–17.  The Court granted in part and denied in part each of the
defendants' motions, further resolving seven of NSC's claims.  *Id.* at 208–11.  With the plaintiff
conceding summary judgment or voluntarily withdrawing two additional claims, *id.* at 118 n.3,
fifteen of NSC's claims against the defendants survived, in whole or in part, the parties' initial
round of dispositive motions addressing this trio of cases.  As a result, all of NSC's pattern or
practice claims have now been dismissed, and its remaining claims relate to the defendants'
responses to individual FOIA requests, including eleven requests submitted to the CIA, and one
request submitted to each of the DIA, ODNI, DOJ, and State.

With these FOIA challenges still unresolved, the defendants set about reprocessing many
of the relevant FOIA requests in an effort to comply fully with their obligations under the statute.
*See* Joint Status Report, NSC 444 ECF No. 59.  Thereafter, the defendants again moved for
summary judgment on each of the plaintiff's remaining claims.  *See* Defs.' Mot. Summ. J. on All
Remaining Claims, NSC 444 ECF No. 60, NSC 445 ECF No. 59.  In response, the plaintiff filed
three separate cross-motions for partial summary judgment on a number of the outstanding

---

filed actions, *see* Notice of Related Case, NSC 284 ECF No. 2.  Given the distinct legal and factual issues presented
in this latest action, however, the present opinion addresses only the claims raised in these earlier-filed actions.

claims.  *See* Pl.'s Cross-Mot. Part. Summ. J., NSC 444 ECF No. 72, NSC 445 ECF Nos. 70, 73.

During the course of briefing these motions, the parties continued to engage in settlement

negotiations to an effort to narrow the issues requiring resolution by the Court.  *See* Sec. Joint

Mot. Amend Summ. J. Briefing Schedule at 1, NSC 444 ECF No. 82.  In light of these ongoing

discussions, the Court stayed these actions and directed the parties to inform the Court of any

issues still in dispute when their negotiations were complete.  *See* NSC 444 Minute Order, dated

Mar. 16, 2015.

On April 2, 2015, the parties jointly notified the Court that, of its original claims, NSC

continued to challenge only the sufficiency of the defendants' searches with respect to the FOIA

requests at issue in NSC 444 Counts Eighteen and Twenty, and NSC 445 Counts One, Two,

Three, and Seven.  *See* Joint Summ. Remaining Disputes ("Joint Summ."), NSC 444 ECF No.

88.  In addition, NSC still challenges the withholding, in full or in part, of 216 agency records

identified by the defendants in an updated *Vaughn* index.  *See id.*, Ex. ("Combined *Vaughn*

Index"), NSC 444 ECF No. 88-1.[3]  This apparent progress notwithstanding, NSC also indicated

its intent to file two motions, pursuant to Federal Rule of Civil Procedure 54, seeking

reconsideration of this Court's prior dismissal of two of its claims against the CIA and DOJ.  *Id.*

at 2 n.1.  While ultimately declining to file one of these expected motions, *see* Pl.'s Not. Non-

Filing Mot., NSC 445 ECF No. 85, NSC has moved for reconsideration of various aspects of the

Court's prior disposition of its claim in Count Three of NSC 443.  Pl.'s Part. Mot. Recon., NSC

444 ECF No. 89.

---

[3]        As discussed below, *infra* Part III.A, by voluntarily producing certain sought-after records in electronic format, the defendants rendered moot two of the plaintiff's cross-motions for summary judgment, *see* Pl.'s Not. Withdrawal Cross-Mots. Part. Summ. J., NSC 444 ECF No. 86 at 1; *see also* NSC 445 Minute Order, dated July 15, 2016.

Each of the parties' three pending motions have been fully briefed and are now ripe for consideration.  For ease of reference, these three motions are: (1) the defendants' Motion for Summary Judgment on All Remaining Claims, NSC 444 ECF No. 60, NSC 445 ECF No. 59; (2) the plaintiff's Motion for Partial Reconsideration, NSC 444 ECF No. 89; and (3) the plaintiff's Cross-Motion for Partial Summary Judgment addressing the plaintiff's underlying FOIA challenges, NSC 445 ECF No. 70.

## II.    LEGAL STANDARD

Congress enacted the FOIA as a means "to open agency action to the light of public scrutiny," *Am. Civil Liberties Union v. U.S. Dep't of Justice*, 750 F.3d 927, 929 (D.C. Cir. 2014) (quoting *Dep't of Air Force v. Rose*, 425 U.S. 352, 361 (1976)), and "to promote the 'broad disclosure of Government records' by generally requiring federal agencies to make their records available to the public on request," *DiBacco v. U.S. Army*, 795 F.3d 178, 183 (D.C. Cir. 2015) (citing *U.S. Dep't of Justice v. Julian*, 486 U.S. 1, 8 (1988)).  As the Supreme Court has "consistently recognized[,] . . . the basic objective of the Act is disclosure."  *Chrysler Corp. v. Brown,* 441 U.S. 281, 290 (1979).  At the same time, the statute represents a "balance [of] the public's interest in governmental transparency against legitimate governmental and private interests [that] could be harmed by release of certain types of information."  *United Techs. Corp. v. U.S. Dep't of Def.,* 601 F.3d 557, 559 (D.C. Cir. 2010) (internal quotation marks and citations omitted).  Reflecting that balance, the FOIA contains nine exemptions set forth in 5 U.S.C. § 552(b), which "are explicitly made exclusive and must be narrowly construed."  *Milner v. U.S. Dep't of Navy,* 562 U.S. 562, 565 (2011) (internal quotation marks and citations omitted) (citing *FBI v. Abramson,* 456 U.S. 615, 630 (1982)); *see Murphy v. Exec. Office for U.S. Attys.,* 789 F.3d 204, 206 (D.C. Cir. 2015); *Citizens for Responsibility & Ethics in Wash. v. U.S. Dep't of*

*Justice* ("*CREW*"), 746 F.3d 1082, 1088 (D.C. Cir. 2014); *Pub. Citizen, Inc. v. Office of Mgmt. & Budget,* 598 F.3d 865, 869 (D.C. Cir. 2010).  "[T]hese limited exemptions do not obscure the basic policy that disclosure, not secrecy, is the dominant objective of the Act." *Rose,* 425 U.S. at 361.

The agency invoking an exemption to the FOIA has the burden "to establish that the requested information is exempt." *Fed. Open Mkt. Comm. of Fed. Reserve Sys. v. Merrill,* 443 U.S. 340, 352 (1979); *see U.S. Dep't of Justice v. Reporters Comm. for Freedom of Press,* 489 U.S. 749, 755 (1989); *DiBacco,* 795 F.3d at 195; *CREW,* 746 F.3d at 1088; *Elec. Frontier Found. v. U.S. Dep't of Justice,* 739 F.3d 1, 7 (D.C. Cir. 2014), *cert. denied sub nom. Elec. Frontier Found. v. Dep't of Justice*, 135 S. Ct. 356 (2014); *Assassination Archives & Research Ctr. v. CIA,* 334 F.3d 55, 57 (D.C. Cir. 2003).  In order to carry this burden, an agency must submit sufficiently detailed affidavits or declarations, a *Vaughn* index of the withheld documents,[4] or both, to demonstrate that the government has analyzed carefully any material withheld, to enable the court to fulfill its duty of ruling on the applicability of the exemption, and to enable the adversary system to operate by giving the requester as much information as possible, on the basis of which the requester's case may be presented to the trial court.  *See Oglesby v. U.S. Dep't of Army,* 79 F.3d 1172, 1176 (D.C. Cir. 1996) ("The description and explanation the agency offers should reveal as much detail as possible as to the nature of the document, without actually disclosing information that deserves protection . . . [which] serves the purpose of providing the requestor with a realistic opportunity to challenge the agency's decision." (citation omitted)); *see also CREW,* 746 F.3d at 1088 ("The agency may carry that burden by submitting affidavits that 'describe the justifications for nondisclosure with reasonably

---

[4]     "A *Vaughn* index describes the documents withheld or redacted and the FOIA exemptions invoked, and explains why each exemption applies." *Prison Legal News v. Samuels,* 787 F.3d 1142, 1145 n.1 (D.C. Cir. 2015).

specific detail, demonstrate that the information withheld logically falls within the claimed exemption, and are not controverted by either contrary evidence in the record nor by evidence of agency bad faith.'" (quoting *Larson v. U.S. Dep't of State,* 565 F.3d 857, 862 (D.C. Cir. 2009)). While "an agency's task is not herculean[,]" it must "describe the justifications for nondisclosure with reasonably specific detail and demonstrate that the information withheld logically falls within the claimed exemption." *Murphy,* 789 F.3d at 209 (internal quotation marks omitted) (citing *Larson,* 565 F.3d at 862).

The FOIA provides federal courts with the power to "enjoin the agency from withholding agency records and to order the production of any agency records improperly withheld from the complainant," 5 U.S.C. § 552(a)(4)(B), and "directs district courts to determine *de novo* whether non-disclosure was permissible," *Elec. Privacy Info. Ctr. v. U.S. Dep't of Homeland Sec.,* 777 F.3d 518, 522 (D.C. Cir. 2015). A district court must review the *Vaughn* index and any supporting declarations "to verify the validity of each claimed exemption." *Summers v. U.S. Dep't of Justice,* 140 F.3d 1077, 1080 (D.C. Cir. 1998). Moreover, a district court has an "affirmative duty" to consider whether the agency has produced all segregable, non-exempt information. *Elliott v. U.S. Dep't of Agric.,* 596 F.3d 842, 851 (D.C. Cir. 2010) (referring to court's "affirmative duty to consider the segregability issue *sua sponte* ") (quoting *Morley v. CIA,* 508 F.3d 1108, 1123 (D.C. Cir. 2007)); *Stolt–Nielsen Transp. Grp. Ltd. v. United States,* 534 F.3d 728, 734 (D.C. Cir. 2008) ("[B]efore approving the application of a FOIA exemption, the district court must make specific findings of segregability regarding the documents to be withheld.") (quoting *Sussman v. U.S. Marshals Serv.,* 494 F.3d 1106, 1116 (D.C. Cir. 2007)); *Trans–Pac. Policing Agreement v. U.S. Customs Serv*., 177 F.3d 1022, 1028 (D.C. Cir. 1999) ("[W]e believe that the District Court had an affirmative duty to consider the segregability issue

*sua sponte* . . . even if the issue has not been specifically raised by the FOIA plaintiff."); *see also* 5 U.S.C. § 552(b) ("Any reasonably segregable portion of a record shall be provided to any person requesting such record after deletion of the portions which are exempt under this subsection.").

"In FOIA cases, summary judgment may be granted on the basis of agency affidavits if they contain reasonable specificity of detail rather than merely conclusory statements, and if they are not called into question by contradictory evidence in the record or by evidence of agency bad faith." *Judicial Watch, Inc. v. U.S. Secret Serv.*, 726 F.3d 208, 215 (D.C. Cir. 2013) (internal quotation marks omitted) (quoting *Consumer Fed'n of Am. v. U.S. Dep't of Agric.*, 455 F.3d 283, 287 (D.C. Cir. 2006)). "Ultimately, an agency's justification for invoking a FOIA exemption is sufficient if it appears 'logical' or 'plausible.'" *Judicial Watch, Inc. v. U.S. Dep't of Def.,* 715 F.3d 937, 941 (D.C. Cir. 2013) (quoting *Am. Civil Liberties Union v. U.S. Dep't of Def.,* 628 F.3d 612, 619 (D.C. Cir. 2011)); *Larson,* 565 F.3d at 862 (quoting *Wolf v. CIA,* 473 F.3d 370, 374–75 (D.C. Cir. 2007)).

## III.   DISCUSSION

Over the last five years, a majority of the dozens of claims alleged by the plaintiff in connection with numerous FOIA requests submitted to the defendants between 2009 and 2011 have been resolved. Nonetheless, while the issues still in dispute between the parties have been substantially narrowed, the three pending motions present a number of outstanding issues that will be addressed as follows: first, the plaintiff's motion for reconsideration of the Court's grant of summary judgment to the CIA on Count Three of NSC 443 is discussed. Next, the plaintiff's remaining challenges to the defendants' responses to its FOIA requests will be considered, beginning with an assessment of the adequacy of the CIA's search for responsive agency

records, which the plaintiff challenges in NSC 444 Counts Eighteen and Twenty, and NSC 445

Counts One, Two, Three, and Seven.  Finally, the legal sufficiency of the defendants'

justification for their withholdings under FOIA Exemptions 3 and 5, in response to the plaintiff's

FOIA requests described in NSC 445 Counts One, Two, Three, Five, Six, Seven, and Eight, are

reviewed.

> ### A.   NSC's Motion for Reconsideration is Denied, and All Remaining Claims Alleged in NSC 443 are Conceded

The plaintiff has renewed its request, first asserted in Count Three of NSC 443, for

additional information responsive to a May 12, 2010 FOIA request for the Tables of Contents

("TOCs") from all back issues of the CIA in-house journal, *Studies in Intelligence*, through a

motion for reconsideration.  *See* Pl.'s Part. Mot. Recon.; NSC 443 Compl. ¶ 30.

The CIA has withheld certain material appearing in these TOCs, including numerous

authors' names, as well as a smaller number of article titles and other related information, under

FOIA Exemption 1, *NSC II*, 960 F. Supp. 2d at 168, which exempts from disclosure "matters that

are . . . (A) specifically authorized under criteria established by an Executive order to be kept

secret in the interest of national defense or foreign policy and (B) are in fact properly classified

pursuant to such Executive order," 5 U.S.C. § 552(b)(1).  Arguing that such withholding is

improper, the plaintiff contends that certain of this information has been made public through

other official agency sources, including the CIA's public website.  *See NSC II*, 960 F. Supp. 2d at

168.  According to the plaintiff, the apparent release of *some of* this information through other

official avenues undercuts the CIA's assertion that all of the material it has withheld in response

to the FOIA request at issue is subject to Exemption 1.  *Id.* at 168–169.

In August 2013, the Court concluded that the agency had met its burden of producing all

responsive, non-exempt information included in the relevant TOCs.  *Id.* at 171.  In reaching this

conclusion, the Court noted that federal agencies maintain no "affirmative duty to ascertain whether information has been made publicly available before deciding to withhold it from release under the FOIA." *Id.* at 169 (citing *Davis v. U.S. Dep't of Justice*, 968 F.2d 1276, 1279 (D.C. Cir. 1992)).  Accordingly, the withholding of information potentially available through other means does not necessarily suggest that an agency's response to a particular FOIA request was careless or otherwise legally inadequate.  *Id.* at 169.  Moreover, the Court credited the CIA's assertion that, based on its review of materials made available on its public website, the agency released "any officially disclosed information" falling within the scope of the plaintiff's FOIA request as of November 2012.  *Id.* 169–70 (citing Supp. Decl. Martha M. Lutz (Nov. 15, 2012) ("NSC 443 Lutz Decl.") ¶ 7, NSC 443 ECF No. 43-1).  The Court thus concluded that the agency properly invoked Exemption 1 to withhold any *other* information included in the TOCs and granted summary judgment to the CIA in all relevant respects.  *Id.* at 171; *see also* Order, NSC 444 ECF No. 58.[5]  Thereafter, following an extended dispute regarding the agency's responsibility to produce these records electronically, the CIA voluntarily produced electronic versions of records the agency produced in an earlier paper production to the plaintiff in October 2014.  *See* Pl.'s Part. Mot. Recon. at 3.

Nearly a year and a half later, the plaintiff filed the present motion seeking reconsideration of the August 2013 Order and attacking anew the credibility of the CIA's assurance that it had produced all information included in the TOCs that, at the time of its

---

[5]     The Court denied summary judgment to the CIA with respect to a single document, identified as a "two-page classified TOC from volume 53 (number 2)," which was produced to the plaintiff with redactions, and directed the CIA to submit "a further supplemental affidavit to establish that the portions of this document withheld under Exemption 1 'are in fact properly classified.'"  *NSC II*, 960 F. Supp. 2d at 171.  In connection with the present motions, the CIA further explained that material redacted from this document "depicts specific intelligence gathering methods employed by the Agency, the identities of covert officers, and intelligence analysis into certain trends and/or foreign countries that may influence future collection efforts."  Supp. Decl. Martha M. Lutz (Mar. 4, 2014) ¶ 14, NSC 444 ECF No. 60-1.  This document does not appear in the parties' final Combined *Vaughn* Index and, therefore, summary judgment is granted, as conceded, to the CIA as to its withholdings therein.

original production, had been previously officially disclosed by the agency.  Pl.'s Mem. Supp.

Mot. Part. Recon. ("Pl.'s Recon. Mem.") at 2–5, NSC 444 ECF No. 89.  In support, the plaintiff

cites the CIA's most recent electronic production in connection with the present actions as

further evidence that publicly disclosed information has been wrongfully withheld.  This most

recent production, completed in October 2014 following the parties' resolution of the plaintiff's

request for responsive documents in electronic format, ostensibly comprised the same materials

previously produced to the plaintiff in hardcopy.  *See* Pl.'s Not. Withdrawal Cross-Mots. Part.

Summ. J., NSC 444 ECF No. 86 at 1 (explaining that the CIA, "by providing electronic copies of

the requested records, . . . has rendered moot" the parties' dispute regarding the agency's

responsibility to provide responsive records in electronic format).  According to plaintiff,

however, the records produced by the agency were "reprocessed" by the agency prior to being

released in electronic format.  Fourth Decl. Kelly McClanahan, Esq. (Apr. 15, 2015) ¶¶ 4, 7,

NSC 444 ECF No. 89-1.  Noting various inconsistencies between this electronic production and

the materials previously provided in hardcopy, the plaintiff highlights two categories of

information that, in the plaintiff's view, demonstrate that the agency continues to withhold

officially released information.

First, the plaintiff contends that, in its most recent electronic production, the CIA

continued to withhold the bulk of the information previously identified by the plaintiff as having

been officially disclosed prior to November 2012.  Pl.'s Recon. Mem. at 3.  Second, the plaintiff

asserts that, in the months following the August 2013 Order, the CIA officially released

additional information that the agency likewise withheld in the October 2014 electronic

production.  *Id.* at 3–4.  This new information derives in part from documents released in

connection with another FOIA matter currently pending before this Court.  *Id.* at 6–7; Fourth

11

Decl. Kelly McClanahan, Esq. (Apr. 15, 2015) ¶ 9 (citing *Scudder v. CIA*, No. 12-807 (D.D.C.

filed May 16, 2012)).  In light of this evidence, the plaintiff seeks an order directing the CIA to

renew its search for publicly released information in order to supplement its October 2014

production.  Pl.'s Recon. Mem. at 5.  Though acknowledging that it has already obtained some

portion of the additional information it seeks (*i.e.*, those materials the plaintiff has identified as

publicly available), the plaintiff explains that its effort to obtain this information directly from

the agency is essential to its goal of providing "researchers and students with a comprehensive

set of TOCs for [*Studies in Intelligence*] that they could then use to guide their research."  *Id.* at 5

n.6.

      In light of the inconsistencies identified by the plaintiff in the CIA's hardcopy and

electronic productions, the Court directed the agency to provide an explanation for any such

differences, as well as any steps taken by the agency to remedy these discrepancies.  NSC 444

Minute Order, dated May 10, 2016.  In response, the agency submitted an additional proffer

describing in greater detail the contents of its October 2014 electronic production.  Def.'s Resp.

Court's Order Dated May 10, 2016 ("CIA Resp."), NSC 444 ECF No. 96.  As an initial matter,

the agency explained that it did not "reprocess" the records previously found to be responsive to

the plaintiff's FOIA request in making its electronic production.  *Id.* at 2.  Instead, "[a]s a

courtesy to NSC," the CIA acknowledged that it "remove[d] redactions from certain

information" that the agency released in connection with the *Scudder* action cited by the

plaintiff.  *Id.*  Further, in response to the plaintiff's claim that certain information produced in

hardcopy was not included in the subsequent electronic production, the CIA provided additional

electronic copies of each of the documents identified by the plaintiff as missing from the latter

production.  *Id.* at 3–4.

Finally, with regard to any additional information released publicly by the agency in the period between its hardcopy and electronic productions, the CIA contends that, after initially processing the plaintiff's FOIA request in December 2011 and February 2012, "[i]t did not and was not required to revisit and reprocess each of its redactions before providing NSC with electronic copies of the responsive records" in October 2014.  *Id.* at 4.  To the contrary, the CIA argues that requiring the agency to reprocess each of its redactions before providing the plaintiff with electronic records the agency had already produced in hardcopy is inconsistent with this Court's precedent.  *Id.* (citing authorities).

### 1.    *Legal Standard*

A motion for reconsideration under Rule 59(e) is "'not simply an opportunity to reargue facts and theories upon which a court has already ruled,'" *Fresh Kist Produce, LLC v. Choi Corp.*, 251 F. Supp. 2d 138, 140 (D.D.C. 2003) (quoting *New York v. United States*, 880 F. Supp. 37, 38 (D.D.C. 1995)), nor is it a "vehicle to present a new legal theory that was available prior to judgment," *Patton Boggs LLP v. Chevron Corp.*, 683 F.3d 397, 403 (D.C. Cir. 2012) (citing *Fox v. Am. Airlines, Inc.,* 389 F.3d 1291, 1296 (D.C. Cir. 2004)); *see also* Standing Order ¶ 14, NSC 444 ECF No. 4.  Instead, a "Rule 59(e) motion is discretionary and need not be granted unless the district court finds that there is an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice." *Fox*, 389 F.3d 1291, 1296 (D.C. Cir. 2004) (citing *Firestone v. Firestone,* 76 F.3d 1205, 1208 (D.C. Cir. 1996); *see also Mohammadi v. Islamic Republic of Iran*, 782 F.3d 9, 17 (D.C. Cir. 2015) (quoting *Patton Boggs*, 683 F.3d at 403)).  In considering such a motion, the D.C. Circuit has cautioned that, as a general rule, courts should "be loath to [reconsider their prior rulings in the midst of a given proceeding] in the absence of extraordinary circumstances such as where the

initial decision was clearly erroneous and would work a manifest injustice." *PNC Fin. Servs. Grp., Inc. v. Comm'r*, 503 F.3d 119, 127–28 (D.C. Cir. 2007) (internal quotations omitted) (quoting *Christianson v. Colt Indus. Operating Corp.*, 486 U.S. 800, 817 (1988)).

### 2.    *Discussion*

Despite the D.C. Circuit's admonition against reconsideration of prior rulings absent extraordinary circumstances, the parties' arguments in connection with the present motion largely parallel those advanced in connection with the CIA's original request for summary judgment.  As before, the plaintiff argues that evidence, in the form of information it avers has been published on the CIA's website and other official channels, undermines the agency's assertion that all previously officially released information has been included in its most recent production.  The plaintiff charges that this publicly available information demonstrates that the agency "fundamentally misled the Court" regarding the extent of the agency's efforts to identify previously released information and its corresponding effort to ensure that all information withheld in connection with the instant FOIA request is properly subject to FOIA Exemption 1. Pl.'s Recon. Mem. at 3.

The CIA responds that the plaintiff has mischaracterized the agency's prior representations to the Court, explaining that "[w]hile the CIA produced the information that it determined had been officially disclosed, it did not claim, either in its declaration or its motion papers, that it produced the information that *Plaintiff alleged* was publicly available."  Def.'s Opp'n Pl.'s Mot. Part. Reconsideration ("Def.'s Recon. Opp'n") at 6, NSC 444 ECF No. 91 (emphasis in original).  Thus, the agency reiterates its prior assertion, credited by this Court, that it has undertaken reasonable efforts to identify any information included in the TOCs that was *officially* disclosed prior to November 2012 and has included this information in its most recent

production to NSC. *Id.* at 7–8. In response, the plaintiff points to the agency's distinction between (1) information NSC contends has been officially released and (2) information that, while publicly available, the agency has not determined to have been officially released, "encapsulates the reason NSC filed [the instant reconsideration m]otion." Pl.'s Reply Supp. Mot. Part. Recon. at 3 ("Pl.'s Recon. Reply"), NSC 444 ECF No. 93. In short, the plaintiff asks the Court, upon consideration of additional evidence purportedly showing that records published on the CIA's website have been withheld by the agency, to reexamine its holding that the CIA undertook reasonable efforts to ensure that all withheld information is exempt from disclosure under Exemption 1. *Id.*

Having reviewed this evidence, however, the Court concludes that reconsideration of its prior holding is not warranted. The present motion rests primarily on the plaintiff's view that its proffered evidence demonstrates that the Court, in granting summary judgment to the CIA, misunderstood the extent of the agency's production. Pl.'s Recon. Mem. at 3–4. According to the plaintiff, given this purported misunderstanding, the prior holding in favor of the CIA was clearly erroneous and must be revisited. Pl.'s Recon. Reply at 1. As before, however, the Court is not persuaded that the evidence proffered by the plaintiff meaningfully undermines the agency's assurance that it undertook reasonable steps to produce all non-exempt records responsive to the plaintiff's FOIA request.

In response to NSC's FOIA request, the CIA located and produced TOCs from 148 issues of *Studies in Intelligence* published over the last five decades, each of which included, on average, entries for ten separate articles. NSC 443 Lutz Decl. ¶¶ 4–5. At the behest of the plaintiff, agency officials searched both the agency's public website and the CIA's internal databases "to determine whether the [a]gency had made any previous releases of" the

information included in these TOCs.  *Id.* ¶ 7.  Following these supplemental searches, the

agency's declarant averred that the agency released any previously disclosed information

included in the TOCs to the NSC in connection with its request for these materials.  *Id.*

Nonetheless, in opposing summary judgment in the first instance, the plaintiff argued that the

agency's wrongfully withheld certain previously disclosed information and requested the release

of additional material withheld in forty-one of the roughly 1,500 total entries included in the

TOCs produced by the agency.  *Id.* ¶ 8 (emphasizing that the challenged withholdings equate to

less than three percent of the total volume of material produced to NSC).

As to this original set of challenged withholdings, a significant majority of this material

falls outside the stipulated scope of the plaintiff's present FOIA request.  From the forty-one

entries at issue, the plaintiff identified eighty "pieces of substantive information," which it

defines to include "an article's author, an article title, or the descriptive text accompanying the

article title," it believes were wrongfully withheld by the agency.  Pl.'s Recon. Mem. at 3 & n.4.

Of this total, at least sixty are the names of authors that appear in publicly released copies of

specific articles, but which are redacted in the TOCs produced to the plaintiff.  *See generally In*

*Camera* Decl. Kelly McClanahan (Oct. 29, 2012), NSC 443 ECF No. 58-1.  Yet, the plaintiff

voluntarily agreed to limit the scope of its challenge in this action to the redaction of article *titles*,

thus forgoing any claim to the release of information about authors' names in connection with

the present FOIA request.  *NSC II*, 960 F. Supp. 2d at 170 n.37.  Moreover, even assuming these

authors' names were responsive to NSC's request, the agency explains that the disclosure of an

author's name in a particular context, or in connection with a particular article, does not

necessarily permit the disclosure of this individual's name as it appears in other agency

documents, since relevant information (*e.g.*, the author's position and title) may change over

time.  NSC 443 Lutz Decl. ¶ 9; *see also Mobley v. CIA*, 806 F.3d 568, 583 (D.C. Cir. 2015)

(explaining that an item of information is "officially acknowledged" and therefore subject to

disclosure only where, *inter alia*, the information requested is "as specific as the information

previously released" and "match[es] the information previously disclosed" (internal quotations

omitted) (quoting *Fitzgibbon v. CIA,* 911 F.2d 755, 765 (D.C. Cir. 1990))).

Even crediting the plaintiff's submission that the remaining information it has identified

has been officially released, however, the Court is not convinced that the redaction of certain

previously released material meaningfully undermines the CIA's assertion that it has taken

reasonable steps to ensure that all withheld information is properly subject to Exemption 1.  As

noted above, an agency responding to a FOIA request bears no obligation to determine whether

material subject to a FOIA exemption has elsewhere been publicly released before withholding

this material in connection with a particular request.  *Davis*, 968 F.2d at 1279.  Nonetheless,

here, the agency agreed to conduct an additional review of its publicly available online resources

to attempt to identify any previously released material, and then did release additional

information to the plaintiff as a result of this search.  *See* Pl.'s Recon. Mem. at 3 (acknowledging

that the agency released "some classification codes" identified by NSC as having been

previously released).  With these "eminently reasonable efforts" to identify officially released

information in mind, the plaintiff's scattered examples of withheld information that may be

otherwise publicly available does little to "undercut the 'substantial weight' accorded to 'an

agency's affidavit concerning the details of the classified status of the disputed record.'"  *NSC II*,

960 F. Supp. 2d at 169 (citing *Afshar v. U.S. Dep't of State*, 702 F.2d 1125, 1131 (D.C. Cir.

1983)); *accord DiBacco v. U.S. Army*, 795 F.3d at 191 (noting that an agency's "'failure to turn

up a particular document . . . does not undermine the determination that the agency conducted an

adequate search for the requested records'" (quoting *Wilbur v. CIA*, 355 F.3d 675, 678 (D.C. Cir. 2004))).

Second, as to the information publicly disclosed since the August 2013 Order, the plaintiff offers no reason to suggest that the exclusion of this information from the agency's October 2014 electronic production is relevant to the present dispute. As the agency clarified in its most recent submission, the electronic records produced in October 2014 were largely identical to the records previously produced in hardcopy to NSC. CIA Resp. at 2. Any inconsistencies between these productions were the result of either (1) the CIA's voluntary disclosure of additional information released publicly after the agency's original hardcopy production, or (2) inadvertent withholdings of information released in hardcopy format, which the CIA has since cured through the production of additional electronic records. *Id.* at 2–4.

While NSC suggests that these minor inconsistencies substantially undermine the agency's credibility regarding the adequacy of its initial search, Pl.'s Recon. Mem. at 4, the plaintiff offers no basis for concluding that the failure to take account of information released only *after* that search in any way undercuts the agency's assurance that all information publicly released *as of* the original search was produced to NSC. As the D.C. Circuit has emphasized, given the premium Congress places on rapid processing of FOIA requests, judicial review of agency responses to FOIA requests "properly focuses on the time the determination to withhold is made." *Bonner v. U.S. Dep't of State*, 928 F.2d 1148, 1152 (D.C. Cir. 1991) (citing *Afshar v. Department of State,* 702 F.2d 1125, 1138 n. 18 (D.C. Cir. 1983)). "To require an agency to adjust or modify its FOIA responses based on post-response occurrences could create an endless cycle of judicially mandated reprocessing." *Id.*; *see also Am. Civil Liberties Union v. U.S. Dep't of Justice*, No. 15-5217, 2016 WL 1657953, at *4 (D.C. Cir. Apr. 21, 2016) (per curiam). Thus,

even assuming the agency has disclosed additional responsive information since the Court's August 2013 ruling, the plaintiff offers no support for the proposition that this information should have been incorporated into the agency's subsequent electronic production. Thus, the exclusion of any additional newly released information from these records is irrelevant to the Court's consideration of the sufficiency of the agency's production prior to the August 2013 Order.

In sum, the existence of a certain limited information withheld in response to the plaintiff's request that has been subsequently publicly released by the CIA through other means does not persuasively demonstrate that the Court's prior grant of summary judgment was premised on any omission or misrepresentation by the CIA. At the same time, while cognizant of the plaintiff's asserted interest in obtaining a comprehensive set of TOCs in response to its present FOIA request, the Court discerns no significant injustice in declining to reconsider its prior ruling on this issue. By definition, any additional information to which the plaintiff is entitled is already available to the public. Any inconvenience to the plaintiff in compiling the information it has acquired through other sources with the information it has obtained by means of the present FOIA request is simply insufficient to support NSC's request for more comprehensive disclosure. Accordingly, the plaintiff's effort to relitigate this issue is denied.

The plaintiff likewise renews its request for a *sua sponte* Order from the Court directing the CIA to release the names of all authors identified in the TOCs whose names have been previously officially disclosed through other avenues. Pl.'s Recon. Mem. at 5–6. As the Court previously explained, in bringing the present action, the plaintiff voluntarily agreed to limit the scope of its challenge to the *titles* of articles appearing in the TOCs that the plaintiff believes have been wrongfully withheld. *NSC II*, 960 F. Supp. 2d at 170 n.37; *see also* Pl.'s *In Camera*

Opp'n Def. CIA's Mot. Summ J. on Count 3 at 2, NSC 443 ECF No. 58 ("NSC admits that it did

agree not to formally challenge any withholdings of authors' names, [but] it made that agreement

before learning the true extent of CIA's improper invocations of the CIA Act to withhold this

information." (internal citation omitted)).  Nonetheless, in seeking reconsideration, the plaintiff

again asks the Court to consider, *sua sponte*, a challenge to the CIA's withholding of authors'

names from certain tables of contents that the plaintiff agreed not to make.  For the reasons

previously articulated, *see NSC II*, 960 F. Supp. 2d at 170 n.37, the plaintiff's invitation to rule

on matters not properly before the Court is declined and, accordingly, the plaintiff's request for

reconsideration on this score is also denied.[6]

   Apart from its partial request for reconsideration, the plaintiff has conceded all remaining

claims arising under NSC 443.  In its initial opposition to the defendants' request for summary

judgment, the plaintiff continued to dispute the adequacy of the CIA's search for eleven *Studies

in Intelligence* articles responsive to the FOIA request at issue in Count One of Case No. 443,

and one redaction from one document produced in response to that request.  Pl.'s Mem. Opp'n

Def.'s Mot. Summ. J. & Supp. Pl.'s Cross-Mot. Part. Summ. J. ("Pl.'s 444 Opp'n") at 2–3, NSC

444 ECF No. 71.  In reply, however, the CIA indicated that these outstanding disputes had been

resolved in discussions between the parties, Def.'s Reply Supp. Mot. Summ. J. & Opp'n Pl.'s

Cross-Mots. Summ. J. ("Def.'s 444 Reply") at 1, NSC 444 ECF No. 83, and the parties made no

mention of these issues in their subsequent joint status report identifying those documents and

redactions that remain in controversy in this case, *see generally* Joint Summ.  Indeed, in response

---

[6]      In seeking reconsideration, the plaintiff further claims that, despite the CIA having agreed to produce all
responsive records in electronic format, the agency failed to provide electronic copies of a portion of the materials
produced. Pl.'s Recon. Mem. at 7.  As noted, however, in response to this Court's May 10, 2016 Minute Order, the
CIA has supplemented its October 2014 production to include electronic copies of all materials identified by the
plaintiff as missing from the earlier production. CIA Resp. at 3–4.

to the Court's Order seeking additional clarification of this most recent joint status report, the parties again did not indicate that any other claims or issues in NSC 443 remain in dispute.  Joint Resp. Court's 3 November 2014 Order, NSC 444 ECF No. 87.  Consequently, the Court grants summary judgment to the CIA on all remaining counts of NSC 443, as conceded.

### B.      Adequacy of Search Efforts

The Court turns next to the merits of the plaintiff's remaining FOIA challenges.  As previously indicated, this discussion begins with a review of the plaintiff's outstanding claims contesting the adequacy of the defendants' efforts to identify records responsive to various FOIA requests.  These claims are addressed in the order in which they were filed, beginning with Counts Eighteen and Twenty in NSC 444 and then Counts One, Two, Three, and Seven in NSC 445.

### 1.      *Legal Standard*

Upon receiving a FOIA request, federal agencies are "required to perform more than a perfunctory search" to identify potential responsive records.  *Ancient Coin Collectors Guild v. U.S. Dep't of State*, 641 F.3d 504, 514 (D.C. Cir. 2011).  Instead, the agency bears the burden of demonstrating that it "made a 'good faith effort to conduct a search using methods which can be reasonably expected to produce the information requested.'"  *DiBacco*, 795 F.3d at 188 (internal alterations omitted) (quoting *Oglesby v. U.S. Dep't of Army*, 920 F.2d 57, 68 (D.C. Cir. 1990)).  To meet this burden, the agency must "demonstrate beyond material doubt that its search was 'reasonably calculated to uncover all relevant documents.'"  *Valencia-Lucena v. U.S. Coast Guard*, 180 F.3d 321, 325 (D.C. Cir. 1999) (quoting *Truitt v. U.S. Dep't of State*, 897 F.2d 540, 542 (D.C. Cir. 1990)).  At the summary judgment stage, an agency may meet this burden by submitting "'[a] reasonably detailed affidavit, setting forth the search terms and the type of search performed, and averring that all files likely to contain responsive materials (if such

records exist) were searched.'" *Ancient Coin Collectors Guild*, 641 F.3d at 514 (quoting

*Valencia–Lucena*, 180 F.3d at 326).  Such an affidavit must "'explain in reasonable detail the

scope and method of the search conducted by the agency.'" *See Morley,* 508 F.3d at 1121

(quoting *Perry v. Block,* 684 F.2d 121, 127 (D.C. Cir. 1982)).

### 2.    *NSC 444 Count Eighteen*

Summary judgment was previously denied to the CIA on the adequacy of its search for

records responsive to the FOIA Request F-2011-00682 ("Request 682"), which agency response

was challenged in Count Eighteen of NSC 444.  *NSC II*, 960 F. Supp. 2d at 151–53.  Request 682

sought a "copy of all [CIA] records pertaining to the search tools and indices available to the

Office of Information Management Services ("IMS") for conducting searches of its own records

in response to FOIA requests."  *Id.* at 127 (quoting Decl. Martha M. Lutz (Dec. 13, 2011) ("First

Lutz Decl."), Ex. Q at 1, NSC 444 ECF No. 20–3).  The request was limited to "*only* those

search tools and indices that would be personally used by IMS personnel to search IMS records

systems."  *Id.*  Summary judgment was denied because the CIA had, to that point, "failed to meet

its burden" of producing a "'reasonably detailed affidavit, setting forth the search terms and the

type of search performed" so that the Court could "determine if the search was adequate.'"  *Id.* at

151–52 (quoting *Oglesby*, 920 F.2d at 68).  Specifically, in denying summary judgment to the

agency, the Court explained that the declaration provided by the agency failed to describe the

"parameters [the agency] used to accomplish the search, *i.e.*, whether the CIA searched for the

indices themselves or what search terms the CIA used to identify responsive records."  *Id.* at 152.

Having now supplemented its prior affidavit to provide additional detail regarding the CIA's

search methods, the agency again seeks summary judgment on the question of the adequacy of

its search efforts.  Defs.' Mem. Supp. Mot. Summ. J. on All Remaining Claims ("Defs.' Mem.")
at 7–9, NSC 444 ECF No. 60.

The CIA's new declaration identifies the individuals who performed the search for
records responsive to Request 682, as well as the methods those individuals employed to identify
potentially responsive records.  *See* Suppl. Decl. Martha M. Lutz (Mar. 4, 2014) ("2014 Lutz
Decl.") ¶¶ 7–10, NSC 444 ECF No. 60-1.  First, the agency's declarant explains that, because the
plaintiff's FOIA request is limited to information related to IMS's searches of its own records,
the agency's search for responsive documents was limited to IMS itself.  *Id.* ¶ 7.  To identify
potentially responsive records, the agency "consulted with Information Management Technical
Officers ('IMTOs') who are knowledgeable about Agency records systems and who task and
oversee searches conducted in response to FOIA requests[, and are] in the best position to
provide details regarding the search tools and indices available to IMS for its own record
searches."  *Id.* ¶ 7.  The declaration explains that, according to these IMTOs, "IMS primarily
uses two databases to conduct searches of its own records, the CIA's Automated Declassification
and Review Environment ('CADRE') and the Space Management and Retirement Tracking
System ('SMART2')."  *Id.* ¶ 8.  The IMTO assigned to IMS averred that neither CADRE nor
SMART2 has an index that would allow a user to "browse information about a general subject
matter or using some other identifier."  *Id.*  Instead, IMS must search its databases using unique
search queries designed for each FOIA request.  *See id.*

Nonetheless, construing Request 682 to seek agency records about the CADRE and
SMART2 databases themselves, the CIA searched "an internal [agency] website . . . for
descriptions of CADRE and SMART2 using the full database name and abbreviations as search
terms."  *Id.* ¶ 9.  These searches generated two responsive records, which "provide[]

descriptions" of the databases and have been produced to NSC. *Id.* Further, "based on personal knowledge of the records systems," IMS personnel produced to the plaintiff a Federal Register Privacy Act Systems of Records notice describing the CIA's record systems. *Id.*

The plaintiff characterizes this detailed explanation as a "complain[t] that [the CIA's] databases do not have 'indices' and that it does not refer to anything by the term 'search tools,'" Pl.'s 444 Opp'n at 5 (citing 2014 Lutz Decl. ¶¶ 8–9), but this misconstrues the thrust of the CIA's declaration. Indeed, as described above, the agency's declaration explains that the two databases used primarily by IMS staff to conduct searches of its own records included neither indices nor automated search tools to identify potentially responsive records. 2014 Lutz Decl. ¶ 8. Likewise, while the plaintiff points to the agency's declarations in other matters to suggest that the agency maintains additional databases of records, the agency here explains that these "databases" are in fact informal compilations of agency records, not specific to IMS, maintained by subject-matter experts at the agency. *Id.* ¶ 10. Request 682 is narrowly tailored to obtain records related to search tools and indices maintained by the IMS, a component within one of the CIA's five directorates. *See* Decl. Martha Lutz (Dec. 13, 2011) ¶¶ 35, 48, NSC 444 ECF No. 20-1. Since IMS is the component that tasks other CIA components to search for records, *see id.* ¶ 34, it is not implausible that IMS *itself* has few databases and indices. Although the plaintiff argues that the terms "search tools" and "indices" are often used in declarations by the CIA "to describe its FOIA process to courts," Pl.'s 444 Opp'n at 5–6, and that "[t]hese terms mean *something* to whomever writes these declarations," *id.* at 7, the CIA has explained, in detail, why those terms "search tools" or "indices," which may apply to databases maintained by other agency components, do not apply to records maintained by IMS and IMS personnel, *see* 2014 Lutz Decl. ¶¶ 7–10.

To be sure, an agency is required to "construe a FOIA request liberally," *LaCedra v. Executive Office of U.S. Attorneys*, 317 F.3d 345, 348 (D.C. Cir. 2003) (quoting *Nation Magazine v. U.S. Customs Serv.*, 71 F.3d 885, 890 (D.C. Cir. 1995), and the CIA has done so here in the context of the tightly limited request from the plaintiff.  The CIA reasonably restricted its search to IMS in light of the plaintiff's request seeking "*only* those search tools and indices that would be *personally* used by *IMS personnel* to search *IMS records systems*."  *NSC II*, 960 F. Supp. 2d at 151–53 (emphasis added).  Additionally, although he CIA avers that IMS does not consider CADRE or SMART2 to be "search tools," it nevertheless searched for any description of the databases since it believed the databases could be considered responsive to the request.  2014 Lutz Decl. ¶ 9.  Consequently, the CIA has met its burden of describing adequately the personnel who performed the search for responsive records and the methods used in that search, and summary judgment is granted to the CIA on Count Eighteen in NSC 444.

### 3.    *NSC 444 Count Twenty*

Along similar lines, summary judgment was previously denied to the CIA on the adequacy of its search for records responsive to the FOIA Request F-2010-00020 ("Request 020"), which search was challenged in Count Twenty in NSC 444.  *NSC II*, 960 F. Supp. 2d at 153–54.  Request 020 sought copies of all CIA "records, including cross-references, pertaining to guidelines for attorneys in the Office of General Counsel ('OGC') for the conduct of civil cases, especially pertaining to interactions between OGC attorneys and Department of Justice ('DOJ') attorneys."  *Id.* at 119 (quoting First Lutz Decl., Ex. T at 1).  The request was limited to "*general* guidelines, and records that only pertain to guidelines for a specifically named case should be excluded."  First Lutz Decl., Ex. T at 1 (emphasis in original).  The CIA found no responsive records.  *NSC II*, 960 F. Supp. 2d at 153.  Summary judgment was denied on this count because,

as with the agency's response to Request 682, the CIA failed to explain with the requisite specificity the agency's search efforts, including the record systems searched, the search parameters used, and the process by which certain directorates were identified as those most likely to possess responsive records. *Id.* at 153–54.

The CIA has resolved these issues in its supplemental declaration accompanying the present motion. The CIA's declarant avers that the "Litigation Division of the Office of General Counsel . . . would be the only office within the CIA likely to maintain records responsive to this request" because that division "handles all civil litigation to which the Agency is a party, and it also works with Department of Justice attorneys in connection with those cases." 2014 Lutz Decl. ¶ 11. Thus, to identify potentially responsive records, IMTOs "conducted searches of the electronic records systems that house current and archival Litigation Division records," using a variety of search terms, including "guidelines, procedures, handbook, legal guidance, [or] instruction" as well as the terms "attorney or OGC." *Id.* ¶ 12 (internal quotation marks omitted). After these searches yielded no results, the agency surveyed "Litigation Division management," who "are responsible for the day-to-day administration of the office and the supervision of its attorneys" and "would be responsible for drafting any guidelines governing the conduct of Litigation Division attorneys," in an effort to verify its search results. *Id.* The CIA's declarant, who is herself the Chief of the Litigation Support Unit for the CIA, personally "verified [the IMTOs'] previous findings" by conducting her own discussion with Litigation Division management. *Id.* These managers confirmed that they were aware of no current or historical guidelines for civil case management and that, as a general matter, "training on civil litigation matters is provided to Litigation Division attorneys orally, rather than in writing." *Id.*

Offering only a brief challenge to the CIA's renewed request for summary judgment, the plaintiff focuses on this final suggestion that Litigation Division attorneys generally obtain training orally, as opposed to through written guidelines.  Pl.'s 444 Opp'n at 7.  Plainly dubious of the agency's assertions on this score, the plaintiff alleges that, even assuming most training is delivered orally, "any records of that 'oral training' would be responsive" to Request 020, and the "CIA shows no indication of ever searching for" such records.  *Id.*

Neither the plaintiff's apparent incredulity regarding the dearth of responsive records, nor its related speculation regarding the potential existence of undiscovered responsive records, is sufficient to overcome the agency's request for summary judgment.  As an initial matter, because the Litigation Division handles all civil cases for the CIA, it is reasonable to believe that any "guidelines for attorneys in the Office of General Counsel . . . for the conduct of civil cases," First Lutz Decl., Ex. T at 1, would be held by the Litigation Division.  Within this division, the CIA searched for all records pertaining to "guidelines, procedures . . . legal guidance, [and] instruction," using search terms reasonably calculated to identify such materials, and further conferred with Litigation Division managers in an attempt to locate any responsive records. 2014 Lutz Decl. ¶ 12.  Contrary to the plaintiff's creative parsing of the agency's declaration, the search terms used did not distinguish between oral or written training, nor is there any evidence that any such limit was raised during conversations with the division's managers.  *See id.* Accordingly, the detailed description provided in the agency's most recent declaration provides enough specificity to find that the search for records responsive to FOIA 020 was sufficient and, therefore, summary judgment is granted to the CIA as to Count Twenty in NSC 444.

### 4.   *NSC 445 Counts One, Two, Three, and Seven*

The plaintiff next challenges the adequacy of the CIA's search in connection with four FOIA requests submitted in late 2009 and early 2010, which are the subject of Counts One, Two, Three, and Seven of NSC 445.  Summary judgment was previously granted to the CIA as to the adequacy of the agency's search efforts on each of these counts.  *See NSC II*, 960 F. Supp. 2d at 209–10.  Irrespective of this prior disposition, however, the plaintiff now maintains that the adequacy of the CIA's searches "is still in controversy."  Pl.'s Mem. Opp'n Defs.' Mot. Summ. J. on All Remaining Claims & Supp. Pl.'s Cross-Mot. Part. Summ. J. ("Pl.'s 445 Opp'n") at 3, NSC 445 ECF No. 69.

According to the plaintiff, the Court previously approved the agency's search efforts "without the benefit of knowing what was actually *in* the records" produced by the agency.  *Id.* This assertion is put forth in the plaintiff's opposition and cross-motion for summary judgment, while invoking Federal Rule of Civil Procedure 54(b) to urge that "the Court should revise its earlier opinion and hold that CIA failed to perform an adequate search in those four counts."  *Id.*[7] In this sense, the plaintiff's present opposition is more properly construed as a separate motion for reconsideration of the Court's prior disposition of this aspect of these claims.

Nonetheless, however styled, the plaintiff's request to revisit the Court's prior holding on this issue is denied for two reasons.  First, the plaintiff has waived any challenge to the adequacy of CIA's searches for records responsive to the requests in Counts One, Two, Three, and Seven. In the round of summary briefing that resulted in *NSC II*, the plaintiff specifically challenged the

---

[7]      The plaintiff initially challenged the adequacy of State's search in connection with the FOIA request identified in Count 9 of NSC 445, but more recently reports that this Count is now moot.  Pl.'s Reply Mem. Opp'n Defs.' Mot. Summ. J. on All Remaining Claims & Supp. Pl.'s Cross-Mot. Part. Summ. J. at 2 n.2, NSC 445 ECF No. 79.  The plaintiff likewise has abandoned a portion of its challenge to the CIA's search in Count 7, following a subsequent, supplemental search conducted by the CIA.  *Id.* at 2 & n.3.

adequacy of the searches conducted by State and the NSA, but made no argument regarding the

CIA's search efforts.  Pl.'s Opp'n Defs.' 445 Mot. Summ. J. ("Pl.'s *NSC II* 445 Opp'n") at 35,

NSC 445 ECF No. 33.  Thus, NSC waived any challenge to the adequacy of the CIA's search.

*See Students Against Genocide v. U.S. Dep't of State*, 257 F.3d 828, 834–35 (D.C. Cir. 2001)

(affirming the district court's holding that FOIA requester waived an issue by failing to raise in

in an earlier proceeding); *Citizens for Responsibility and Ethics in Wash. v. U.S. Dep't of Educ.*,

905 F. Supp. 2d 161, 168 n.5 (D.D.C. 2012) (finding argument not raised in summary judgment

regarding processing of FOIA request waived).

Second, while Federal Rule of Civil Procedure 54(b) permits "any order or other

decision, however designated, that adjudicates fewer than all the claims" in a matter to "be

revised at any time before the entry of a judgment adjudicating all the claims," such revisions are

not mandated by the rule.  *See Filebark v. U.S. Dep't of Transp.*, 555 F.3d 1009, 1013 (D.C. Cir.

2009) (noting district court "was free to reconsider" a motion under 54(b)'s permissive scheme).

A district court may exercise its discretion "[a]s justice requires," such as when "the court has

patently misunderstood a party, has made a decision outside the adversarial issues presented to

the [c]ourt by the parties, has made an error not of reasoning, but of apprehension, or where a

controlling or significant change in the law or facts [has occurred] since the submission of the

issue to the court."  *Estate of Botvin ex rel. Ellis v. Islamic Republic of Iran*, 772 F. Supp. 2d

218, 223 (D.D.C. 2011) (internal quotations and citations omitted).  The plaintiff has not even

addressed these factors, let alone offered enough evidence to convince the Court that "justice

requires" a reversal of its previous grant of summary judgment based on arguments the plaintiff

could have, but explicitly chose not to raise.  *See Patton Boggs LLP*, 683 F.3d at 403 (explaining

that a motion for reconsideration is not a "vehicle to present a new legal theory that was

available prior to judgment"). Indeed, to the extent that the Court's prior holding in favor of the

CIA failed to take into account the contents of the materials produced to the plaintiff, this is

precisely *because* the plaintiff failed to bring this issue to the Court's attention in connection

with the CIA's earlier motion. For these reasons, the plaintiff's request to revisit this prior ruling

in favor of the CIA is denied.[8]

*          *          *

In sum, summary judgment is granted to the CIA on Counts Eighteen and Twenty in NSC

444 with regard to the adequacy of the CIA's search efforts. Likewise, summary judgment is

granted, again, to the CIA as to the adequacy of its search efforts in Counts One, Two, Three,

and Seven in NSC 445.

### C.      Remaining Challenged Withholdings

The Court turns next to the parties' remaining disputes regarding the defendants'

withholding of certain documents, either in full or in part, under various FOIA exemptions. As

noted, the parties have provide an updated *Vaughn* index describing the withheld agency records

still subject to dispute, as well as the defendants' asserted bases for refusing to produce these

materials to the plaintiff. As set out in this updated *Vaughn* index, the parties have resolved all

outstanding disputes stemming from FOIA requests addressed in NSC 444 and have narrowed

the universe of documents still in dispute in NSC 445. Specifically, the plaintiff continues to

---

[8]      Undeterred by this firm procedural bar, the plaintiff belatedly filed a supplemental notice purporting to demonstrate that the CIA's declarant "materially misrepresented" the agency's technical ability to identify additional material responsive to the plaintiff's requests. Pl.'s Notice of New Factual Development at 2, NSC 445 ECF No. 86. As support, the plaintiff points to statements included in a declaration submitted by the CIA in a separate FOIA action stating that, "[u]p until approximately three or four years ago," the CIA was only able to provide records in the manner the agency deployed in this case. *Id.* (quoting Sec. Supp. Decl. Martha M. Lutz (July 23, 2015), NSC 445 ECF No. 86-1). The FOIA requests at issue here generated final responses between May 2010 and September 2010, roughly five years before the agency's July 2015 declaration. *NSC II*, 960 F. Supp. 2d at 120-23. Thus, even assuming the issue was properly before the Court, this newly uncovered evidence only *bolsters* the agency's initial unchallenged assertion that its efforts to identify material responsive to the plaintiff's requests were adequate.

challenge agency withholdings under FOIA Exemptions 3 and 5 in connection with FOIA requests addressed in NSC 445 Counts One, Two, Three, Five, Six, Seven, and Eight.

Analysis of the plaintiff's continued challenges is organized according to the exemption invoked by the defendants in withholding responsive records, beginning with those records withheld under Exemption 3 by the CIA and then turning to records withheld under Exemption 5 by the CIA, DIA and ODNI. To meet their burden of establishing that the requested information was properly withheld under either asserted exemption, *Elec. Frontier Found.*, 739 F.3d at 7, the defendants must show that the asserted justification for invoking the relevant FOIA exemption is "'logical' or 'plausible,'" *Judicial Watch, Inc.*, 715 F.3d at 941.

### 1. *Exemption 3*

First, the plaintiff continues to challenge the withholding, in whole or in part, under FOIA Exemption 3 of eighteen agency records by the CIA, which is the only defendant here to rely on Exemption 3. These eighteen withheld records were responsive to the plaintiff's FOIA requests at issue in NSC 445 Counts One, Two, and Seven.

As relevant here, Exemption 3 applies to matters "specifically exempted from disclosure by statute . . . if that statute" either (1) "requires that the matters be withheld from the public in such a manner as to leave no discretion on the issue," or (2) "establishes particular criteria for withholding or refers to particular types of matters to be withheld." *See* 5 U.S.C. § 552(b)(3). The D.C. Circuit has explained that "Exemption 3 differs from other FOIA exemptions in that its applicability depends less on the detailed factual contents of specific documents; the sole issue for decision is the existence of a relevant statute and the inclusion of withheld material within the statute's coverage." *Morley*, 508 F.3d at 1126 (quoting *Ass'n of Retired Rail Road Workers v. U.S. Rail Road Ret. Bd.*, 830 F.2d 331, 336 (D.C. Cir. 1987)).

31

The plaintiff challenges the CIA's decision to withhold material from three documents under Section 6 of the Central Intelligence Agency Act ("CIA Act"), 50 U.S.C. § 3507, and to withhold material in two of these records, as well as fifteen other documents, under the National Security Act, 50 U.S.C. § 3024(i).  The Supreme Court has held, and the plaintiff does not contest, that both of these statutes are "withholding statutes" for the purposes of Exemption 3. *Davy v. CIA*, 357 F. Supp. 2d 76, 86 (D.D.C. 2004) (citing *CIA v. Sims*, 471 U.S. 159 (1985)).  In the plaintiff's view, however, the agency improperly withheld certain information that is protected by neither statute.  The challenged withholdings under each statute are discussed in turn.

### a)   CIA Act

The CIA Act provides that the CIA "shall be exempted from the . . . provisions of any other law which require[s] the publication or disclosure of the organization, functions, names, official titles, salaries, or numbers of personnel employed by" the agency.  50 U.S.C. § 3507.  While the Court has previously discussed at length the degree to which this statute protects from disclosure agency records under Exemption 3, *NSC II*, 960 F. Supp. 2d at 174–79, the parties continue to dispute the proper scope of this exemption, as well as the degree to which certain information withheld by the CIA in this case is exempt from disclosure under FOIA.

In particular, the CIA continues to press an argument squarely rejected in this Court's earlier decision.  The CIA explains that it "respectfully disagrees with this Court's initial determination" and "maintains that, while the scope of [the CIA Act] is not without limits, it explicitly allows CIA to withhold information concerning its organization and functions as they relate to the protection of intelligence sources and methods."  Defs.' Mem. at 16.  *NSC II* rejected this proposed construction of the relevant statutory language and instead held that the

32

CIA Act exempts from disclosure under FOIA only material that "would reveal the specific categories of personnel-related information enumerated in the statute, *i.e.*, 'the organization, functions, names, official titles, salaries, or numbers of personnel employed by the Agency.'" *NSC II*, 960 F. Supp. 2d at 180 (quoting 50 U.S.C. § 3507). Specifically, the Court concluded that, while other statutes may protect this information from disclosure, the following six categories of information are "presumptively not exempt from disclosure under" the CIA Act: "(1) 'internal templates utilized by the [CIA] in tasking FOIA requests[;]' (2) 'internal rules, policies and procedures governing FOIA processing including classification, referrals, coordinations, and fees[;]' (3) 'organizational information revealing CIA's internal system of decentralized information management[;]' (4) '[i]nternal information concerning ways in which CIA is able to store and retrieve information[;]' (5) 'information about the CIA's core functions,' including 'intelligence activities, intelligence sources and methods, and the collection, analysis, and dissemination of foreign intelligence[;]' and (6) 'recommendations from FOIA analysts and attorneys about how requests should be administratively processed and routed[.]'" *Id.* at 184–85.[9]

Against this legal backdrop, the Court now turns to the three documents identified by the parties in their most recent joint status report as those for which the plaintiff continues to challenge withholdings under the CIA Act, namely: CIA-157, 349, and *6. *See* Combined *Vaughn* Index at 27, 32, 34.[10] Document CIA-157 is a document entitled "Which Directorate do

---

[9]     This central holding has since been adopted by at least two other Judges on this Court, *see Whitaker v. CIA*, 31 F. Supp. 3d 23, 34 (D.D.C. 2014), *aff'd* 2016 U.S. App. LEXIS 1086 (D.C. Cir. Jan. 21, 2016); *Sack v. CIA*, 53 F. Supp. 3d 154, 170 (D.D.C. 2014), and the CIA offers no new authority to the contrary, *see generally* Defs.' Mem. at 16–20. Likewise, the CIA provides no legal basis for continuing to dispute this aspect of *NSC II*. Indeed, as the plaintiff correctly notes, *see* Pl.'s 445 Opp'n at 17, the CIA has, to date, chosen not to avail itself of avenues by which the agency may have obtained review of the Court's prior holding.

[10]     These documents are responsive to the FOIA requests underlying NSC 445 Counts 2 (Document CIA-157) and 7 (Documents CIA-349 and *6). *Id.* Documents described in the CIA's Supplemental *Vaughn* Index prepared

I task?," which includes a two-columned chart listing the potential subject matter of a FOIA request in the left column, *e.g.*, "Arms Control," "Assassinations (event)," "Nuclear Proliferation," and the corresponding agency directorate, which may maintain records about the listed subject, in the right column.  Suppl. Decl. of Martha M. Lutz (Oct. 7, 2014) ("Suppl. Lutz Decl.") ¶ 11, NSC 445 ECF No. 77-1.  While the CIA has released, with one redaction, the list of subjects in the left column, the agency has generally withheld "the corresponding directorates that would be tasked with searching their holdings for responsive records," in the right column. *Id.*  According to the CIA, such redactions are required under the CIA Act and Exemption 3 "to protect the location where specific types of records are stored."  Combined *Vaughn* Index at 27.

At first blush, this information would appear to fall squarely into the presumptively non-exempt category of internal information concerning ways in which the CIA stores and retrieves information.  *See supra.*  Seeking summary judgment, however, the CIA's declarant states that "[t]he CIA Act was asserted to protect these details because they would indicate the specific functions of the Agency personnel who staff these offices."  Suppl. Lutz Decl. ¶ 11.  In *NSC II*, the CIA was cautioned that "conclusory or generalized descriptions will not suffice" to justify CIA Act withholdings.  960 F. Supp. 2d at 185.  Yet, even this brief justification for the agency's decision to withhold this information ignores this Court's central holding in *NSC II*: merely describing which directorate is primarily responsible for maintaining general categories of agency records does not identify the organization or functions of CIA *personnel* working within each listed directorate, which is the only information the CIA Act specifically exempts from disclosure. *Id.* at 180.

---

in connection with its reply in support of the present summary judgment motion, *see* Suppl. Decl. of Martha M. Lutz ¶ 4, NSC 445 ECF No. 77-1, are identified by an asterisk.

To a degree, the agency is correct that information regarding which directorate within the agency is primarily responsible for maintaining particular categories of records is broadly indicative of the general functions of agency personnel employed in these listed divisions.  As this Court has explained, however, the CIA Act may be invoked to protect only certain specified categories of information related to agency employees, namely, "'the organization, functions, names, official titles, salaries, or numbers of personnel employed by the Agency.'"  *NSC II*, 960 F. Supp. 2d at 180.  The agency's interpretation of "functions" is largely a rehashing of its effort, rejected in *NSC II*, to conflate the functions of the agency itself with the functions of its individual employees.  *Id.* at 176.  As explained in *NSC II*, this effort to cloak nearly all of the agency's operations from scrutiny and disclosure under the auspices of the CIA Act is a bridge too far.  Though certainly in keeping with the agency's apparent efforts to seek a wholesale exemption from FOIA's disclosure requirements, *see* Pl.'s Reply Mem. Opp'n Defs.' Mot. Summ. J. on All Remaining Claims & Supp. Pl.'s Cross-Mot. Part. Summ. J. ("Pl.'s 445 Reply"), Ex. T (Operational Files Exemption Workshop) at 8, NSC 445 ECF No. 79-2 (noting that the CIA "actively lobbies for a blanket exemption from the FOIA"), the agency's preferred interpretation of the CIA Act "strips the word 'personnel' of any real meaning," *NSC II*, 960 F. Supp. 2d at 176 (internal alteration omitted) (quoting *Milner v. U.S. Dep't of Navy,* 562 U.S. at 578).  With this in mind, the information redacted from Document CIA-157 may be reflective of the function of the *divisions* listed on the chart as maintaining records on certain subjects, but does not indicate the function of any particular agency *employee*.  Thus, the CIA's assertion of the CIA Act and Exemption 3 to withhold Document CIA-157 is unavailing.  Since the agency considers this document to be a twin to Document CIA-349, *see* Suppl. Lutz Decl. ¶ 11, the CIA

Act and Exemption 3 likewise do not provide a legally sufficient basis for the withholding of Document CIA-349.[11]

For much the same reason, the CIA's argument as to its withholding of material under Exemption 3 in Document CIA-*6 is also misplaced.  Document CIA-*6 is one of seven documents the CIA located in the course of conducting a supplemental search in connection with the present motion, and the CIA seeks withholding of this document solely by invocation of the CIA Act.  *Id.* ¶ 18.  This document includes a set of slides entitled, "Welcome to Fundamentals of the Privacy Act," which comprise training materials for CIA employees related to the agency's collection, maintenance, and disclosure of personal information.  Pl.'s 445 Reply, Ex. S, NSC 445 ECF No. 79-1.  The agency asserts that material in this document has been withheld under the CIA Act in order to "protect the names of CIA offices contained in the training materials, which would disclose the functions of the personnel in those offices."  Suppl. Lutz Decl. ¶ 19.  As the plaintiff points out, however, the suggestion that, by simply disclosing the *name* of a given agency office, the agency has effectively disclosed the functions of personnel working in that office proves too much.  Pl.'s 445 Reply at 10 (noting that revealing the name of the Directorate of Science and Technology suggests only in the broadest terms the functions of the agency employees assigned to that office).  Instead, consistent with this Court's prior holding, the agency may invoke the CIA Act to withhold only those materials that "would reveal the *specific categories of personnel-related information*" identified in the statute.  *NSC II*, 960 F. Supp. 2d at 180 (emphasis added).

For this reason, the agency's affidavits on this score are insufficient to demonstrate that the material withheld in these responsive documents falls within the ambit of the CIA Act and is,

---

[11]       As discussed next, *infra* Part III.C.1.b, the material redacted from these two documents is nonetheless protected from disclosure under the National Security Act.

therefore, properly withheld under FOIA Exemption 3.  Accordingly, the agency's reliance on the CIA Act for the withholding of these three documents is rejected.[12]

### b)      National Security Act

For Documents CIA-157 and CIA-349, as well as fifteen additional documents produced with redactions to the plaintiff, the CIA also invokes the National Security Act to withhold redacted material under FOIA Exemption 3.[13]  The National Security Act requires the Director of National Intelligence to "protect intelligence sources and methods from unauthorized disclosure."  50 U.S.C. § 3024(i)(1).  As interpreted by the D.C. Circuit, this language exempts from disclosure under FOIA, material that the agency "demonstrates . . . 'can reasonably be expected to lead to unauthorized disclosure'" of intelligence methods or sources.  *Wolf v. CIA*, 473 F.3d 370, 377 (D.C. Cir. 2007) (quoting *Gardels v. CIA*, 689 F.2d 1100, 1103 (D.C. Cir. 1982)); *see also Larson v. U.S. Dep't of State*, 565 F.3d at 863 (allowing for withholding of information that "could provide enough clues to allow some individuals to determine who provided [certain] information to the CIA").  In light of the national security interests implicated by such material, courts give "even greater deference to CIA assertions of harm to intelligence sources and methods under the National Security Act."  *Wolf*, 473 F.3d at 377 (citing *Sims*, 471 U.S. at 168–69).

Seeking summary judgment, the CIA argues that the material withheld under Exemption 3 in the seventeen documents at issue "reveals specific intelligence capabilities, collection

---

[12]      The challenged redactions appear on two pages of the 257-page training document.  *See* Pl.'s 445 Reply, Ex. S at 57, 115.  In each instance, the CIA also invokes the attorney-client privilege to justify its redactions.  *Id.*  As discussed below, *infra* Part III.C.3.b, because this material is protected from disclosure under FOIA Exemption 5, no further disclosure is required in Document CIA-*6.

[13]      These additional documents are responsive to the FOIA requests at issue in NSC 445 Count 1 (Document CIA-46) and NSC 445 Count 7 (Documents CIA-338, 339, 340, 341, 342, 345, 347, 353, 358, 360, 362, *2, *3, *5).  Combined *Vaughn* Index at 21, 31–34.

techniques, methods employed by the [agency] in acquiring intelligence and/or that would demonstrate a classified interest of the [CIA]," 2014 Lutz Decl. ¶ 23, and, therefore, "clearly falls within the protections provided by the [National Security Act]," Defs.' Mem. at 21.  In response, the plaintiff argues that the CIA's broad assurances regarding the significant intelligence interests implicated by these materials are insufficient to meet the agency's burden of demonstrating that each of its Exemption 3 withholdings are permitted under the National Security Act.  Pl.'s 445 Reply at 10–12.  The discussion that follows addresses first the agency's withholdings in Documents CIA-157 and CIA-349, for which the CIA also relied on the CIA Act, before next considering the remaining information withheld by the agency pursuant to the National Security Act.

First, with respect to Documents CIA-157 and CIA-349, the agency contends that redacted information indicating which agency directorate is tasked with responding to specific categories of FOIA requests must be withheld to avoid revealing intelligence methods employed by the agency.  Suppl. Lutz Decl. ¶ 11.  Specifically, the agency's declarant averred in a supplemental declaration that this information is exempt from disclosure "because the involvement of one or more directorates/offices with a specific subject would reveal intelligence collection methods and capabilities associated with [those] parts of the Agency."  *Id.*  As an example, the declarant explains that "if it were revealed that the National Clandestine Service, as opposed to the Directorate of Intelligence, needs to be tasked with searching for records on a certain subject, that would tend to reveal the [CIA]'s operational involvement in certain areas, rather than merely an analytical interest in that subject."  *Id.*  The agency's reasoning on this front is far from precise.  In essence, however, the agency appears to suggest that information indicating that a particular category of agency records is maintained by a division involved in

intelligence gathering, as opposed to a division that merely analyzes information already held by the CIA, provides some indication of the "intelligence . . . methods" employed by the agency.

After objecting to the CIA's initial justification for its redactions in this document, Pl.'s 445 Opp'n at 21, the plaintiff offered no response to the more fulsome explanation provided in this supplemental declaration, *see generally* Pl.'s 445 Reply.  In any event, assuming the plaintiff has not waived its objection to these withholdings, the additional information provided by the agency is sufficient to demonstrate that release of the redacted information may provide "enough clues to allow some individuals" to divine the methods by which the agency collects intelligence. *Larson*, 565 F.3d at 863.

On one hand, the agency's explanation of the link between a directorate's record-keeping responsibilities and the methods by which the CIA collects intelligence is initially difficult to square with its wholesale redactions in these documents.  Indeed, in addition to redacting information related to records dealing with subjects that facially may be closely related to intelligence-gathering (*e.g.*, "Rendition," "Chemical/Biological Warfare," "Covert Action"), the agency's redactions cover categories that are less obviously tied to the collection of intelligence (*e.g.*, "Contracts," "Oral Histories").  *See* Pl.'s 445 Opp'n, Ex. M, NSC 445 ECF No. 70-13. Nonetheless, it is not illogical to imagine that revelations related to even these seemingly innocuous topics may implicate sensitive intelligence-gathering methods.  As just one hypothetical example, the release of information suggesting that CIA records related to contracts are maintained primarily by the National Clandestine Service would bear significantly on the degree to which the CIA may engage third-parties to collect intelligence.  As such, the agency's more detailed explanation of its withholdings is sufficient to demonstrate that the information

redacted from Documents CIA-157 and CIA-349 is exempt from disclosure under the National Security Act.

With regard to the other information withheld under the National Security Act, the CIA's declarant explains that the documents at issue generally "provide[] guidance as to how to protect national security information and interests in the course of responding to certain FOIA requests," and that the information redacted from these documents "would reveal the means by which the [CIA] protects classified [a]gency equities in the FOIA context." Suppl. Lutz Decl. ¶ 12. Thus, for example, the declarant states that the redacted material includes "guidance as to when a *Glomar* response – where the Agency neither confirms nor denies the existence of responsive records – would be appropriate." *Id.* More broadly, the agency asserts that "the other withheld information is similar guidance designed to protect against acknowledgement or unauthorized disclosure of specific intelligence methods through the FOIA process." *Id.*

The plaintiff does not dispute that, in principle, certain information related to otherwise exempt agency records may be withheld under the National Security Act. Pl.'s 445 Reply at 10–11 (conceding that "it would defeat the purpose of the *Glomar* response if a requester could pierce the veil by reviewing the search records"). Nonetheless, the plaintiff contends that the agency has failed to meet its burden of demonstrating that *all* of the material it has withheld on this ground in fact qualifies for such protection. *Id.* at 11 (arguing that the agency's "declarant speaks in broad examples, *implying* that all of the instances are described by those examples, but not actually *saying so*" (emphasis in original)).[14] For example, the plaintiff posits that guidance documents designed to protect against acknowledgment or unauthorized disclosure of specific

---

[14] After the plaintiff initially disputed the "conclusory" explanations provided in the agency's first declaration in connection with the present motions, Pl.'s 445 Opp'n at 20–21 (citing 2014 Lutz Decl.), the agency provided a supplemental declaration explaining in greater detail its basis for the withholdings still in dispute, *see* Suppl. Lutz Decl.

intelligence methods may include "records about requests where the [CIA] debated whether to issue [a *Glomar* response] and then decided to acknowledge the existence of responsive records." *Id.* To ensure that only those records that "pertain to requests in which [the CIA] issued a *Glomar* response or similar response" are withheld, the plaintiff asks the Court to conduct an *in camera* review of the withheld materials before granting summary judgment to the agency. *Id.*

By focusing on agency action with respect to specific requests, however, the plaintiff misunderstands the thrust of the agency's declaration. Rather than describing records reflecting particular requests for which the agency did or did not acknowledge the existence of responsive agency records, the agency's declarant indicates that the information redacted from these documents is guidance explaining how to avoid the unauthorized disclosure of specific intelligence methods *in general*. Suppl. Lutz Decl. ¶ 12. Thus, the plaintiff's request for an *in camera* review misses the point. The agency's objection to releasing the withheld information is not limited to information describing responses to any particular FOIA request, but is instead founded on the concern that the general guidance included in these documents reflects the "means by which the [CIA] protects its classified equities." Suppl. Lutz Decl. ¶ 12. Thus, the CIA's declarant avers that disclosure of the processes by which the agency protects certain information "would, in turn, expose intelligence sources and methods." *Id.*

With this in mind, the Court is not persuaded that *in camera* review is warranted in this case. While district courts generally enjoy broad discretion to conduct *in camera* review in FOIA proceedings, the D.C. Circuit has cautioned that such review is "neither necessary nor appropriate" where an agency's affidavits "standing alone were sufficiently specific to place the challenged documents within the exemption categories, and the plaintiffs [do] not contest the contents of the withholdings or present any evidence contradicting the affidavits or suggesting

bad faith." *Larson*, 565 F.3d at 870; *see also ACLU v. U.S. Dep't of Justice*, 2016 U.S. App. LEXIS 7308, at *8 (D.C. Cir. Apr. 21, 2016) ("find[ing] it unnecessary to review the documents to determine whether the information has been properly withheld" under Exemption 1 given the sufficiency of the agency declaration).  Moreover, where an agency's withholdings implicate national security concerns, such review is "particularly a last resort[, and] a court should not resort to it routinely on the theory that 'it can't hurt.'"  *Id.* at *4 (quoting *ACLU v. U.S. Dep't of Def.*, 628 F.3d 612, 626 (D.C. Cir. 2011)).

Here, the plaintiff points to a single example of information withheld by the agency under the National Security Act that, in the plaintiff's view, is difficult to cast as likely to reveal protected intelligence methods.  Pl.'s 445 Opp'n at 21–22 (noting that the agency has redacted, from Document CIA-353 certain "codes used to describe the different types of document requests CIA FOIA analysts process").  While certain of these codes have been disclosed (*e.g.*, "F=FOIA," "EO=Executive Order Request (mandatory declassification case)"), it is not illogical to assume that other, undisclosed codes may correspond to agency activities that would provide, for individuals familiar with the agency's operations, enough clues to discern unacknowledged or otherwise protected intelligence methods. The plaintiff's general suspicion notwithstanding, the agency's affidavits on this score are not suggestive of bad faith, nor are the agency's redactions so sweeping as to suggest the degree of imprecision the plaintiff posits.  As such, further review of the material withheld by the CIA under the National Security Act is unnecessary, and the plaintiff's request for *in camera* review is denied.  Accordingly, summary judgment is granted to the CIA as to its withholdings under the National Security Act in Documents CIA-46, 338, 339, 340, 341, 342, 345, 347, 353, 358, 360, and 362.

The foregoing analysis applies equally to the challenged redactions in three additional training documents the agency discovered most recently through supplemental searches, which the plaintiff identifies as Documents CIA-*2, *3, and *5.[15]  First, with regard to Document CIA-*2, which the parties describe as "Operational File Exemption Workshop slides," Combined *Vaughn* Index at 33, the agency has redacted three lists describing various "categories of designated 'operational files'" held by three agency divisions.  Suppl. Lutz Decl. ¶ 19.  According to the agency, the operational files mentioned in these lists are exempt from disclosure under the National Security Act. *Id.*[16]  Given that the underlying organizational documents include "some of the [CIA]'s most sensitive information," the agency's declarant avers that the disclosure of the redacted categories "would reveal areas of operational interest of the [CIA], which in turn would reveal protected intelligence sources and methods."  *Id.*

The plaintiff asks the Court to reject this interpretation of the National Security Act, which it portrays as a claim that, "because operational files are excluded from FOIA, anything referencing them (even in broad categories) is exempt" from disclosure, Pl.'s 445 Reply at 12, but this characterization plainly overstates the agency's basis for its withholdings.  Rather, of the twenty-nine slides describing the agency's handling of FOIA requests implicating operational

---

[15]     The agency initially indicated that certain material in documents CIA-*2 and *5 was withheld under the CIA Act "to protect the names of CIA offices contained in the training materials, which would disclose the functions of the personnel in those offices."  Suppl. Lutz Decl. ¶ 19.  In its final, revised *Vaughn* Index, however, the agency indicates that the "CIA Act was marked in error for this information."  Combined *Vaughn* Index at 33–34.

[16]     The CIA provides no citation, but the agency apparently intends to refer to 50 U.S.C. § 3141, which authorizes the CIA to exempt its "operational files" from search, review, publication or disclosure under FOIA.  50 U.S.C. § 3141(a).  The statute defines "operational files" to include: "(1) files of the National Clandestine Service which document the conduct of foreign intelligence or counterintelligence operations or intelligence or security liaison arrangements or information exchanges with foreign governments or their intelligence or security services; (2) files of the Directorate for Science and Technology which document the means by which foreign intelligence or counterintelligence is collected through scientific and technical systems; and (3) files of the Office of Personnel Security which document investigations conducted to determine the suitability of potential foreign intelligence or counterintelligence sources; except that files which are the sole repository of disseminated intelligence are not operational files." *Id.* § 3141(b).

files, the agency has invoked the National Security Act to redact content appearing on only four slides.  Pl.'s 445 Reply, Ex. T.  On three of these slides, the agency has withheld all material other than the headings, which each read:  "Categories of Designated Operational Files of the [Agency Directorate]."  *Id.* at 14–16.[17]  On the fourth, the agency has redacted a single bullet, which appears under the heading "Scope of the Operational Files Exemption."  *Id.* at 17.  As before, one could plausibly conclude that the information set out in these redacted slides, which presumably describes the kinds of operational files protected under the National Security Act, may be indicative of certain methods by which the agency collects intelligence.  Though describing such files in categorical terms likely provides less *concrete* information regarding the nature and content of the files, it is plausible that even these categorical descriptions would provide some insight into their content and use and, by extension, the CIA's intelligence-gathering methods.

Finally, the plaintiff's challenge to the agency's withholdings in Documents CIA-*3, CIA-*5 is similarly lacking.  As before, the agency redacted from these documents information pertaining to "methods employed by the Agency to safeguard against the unauthorized disclosure of sensitive national security information in the course of responding to FOIA requests."  Suppl. Lutz Decl. ¶ 19.  According to the agency's Supplemental *Vaughn* Index, the material redacted in Document CIA-*3 includes "two references to FOIA processing practices which would reveal intelligence methods," while the information withheld in Document CIA-*5 "reveal[s] means used to protect intelligence sources and methods."  Combined *Vaughn* Index at 34.  The plaintiff contends that these asserted justifications lack the "level of specificity necessary to warrant

---

[17]     These redactions are marked as withheld pursuant to the CIA Act, but the agency has clarified that this material was in fact withheld under the National Security Act.  Combined *Vaughn* Index at 34.

summary judgment," and therefore requests summary judgment in its favor on these withholdings.  Pl.'s 445 Reply at 12.

Again, the agency's asserted basis for its redactions in these two documents are not a model of precision, which likely stems from the challenging task of sufficiently describing the agency's reason for withholding this information without jeopardizing the very interest subject to protection by the FOIA exemption.  Nonetheless, the agency's prior explanation for its decision to redact substantially similar material from documents included in its initial production, *see* Suppl. Lutz Decl. ¶ 12, helps elucidate its otherwise brief account of its redactions in Documents CIA-\*3 and CIA-\*5.  Like the redactions described above, these more recent redactions reflect the agency's concern that revealing the means by which it protects classified information may "expose intelligence sources and methods."  *Id.*  As previously noted, one could plausibly conclude that the limited redactions in these documents reflect a good-faith effort to avoid disclosure of sufficient information to identify otherwise protected intelligence methods.  For this reason, summary judgment is granted to the CIA with respect to its withholdings under the National Security Act in Documents CIA-\*2, \*3, and \*5.

*                    *                    *

To recapitulate, while rejecting its withholdings under the CIA Act in Counts Two and Seven of NSC 445, the Court grants summary judgment to the CIA as to its withholdings under FOIA Exemption 3 and the National Security Act in Counts One, Two and Seven of NSC 445.

### 2.    *Exemption 5 – Deliberative Process Privilege*

In addition to challenging the CIA's withholdings under FOIA Exemption 3, the plaintiff challenges numerous withholdings by the CIA, DIA, DOJ, and ODNI under FOIA Exemption 5. *See generally* Combined *Vaughn* Index. To support each of these withholdings, the defendants

45

invoked one or both of the two common law privileges – the deliberative process privilege and the attorney/client privilege.  *See id.*  The defendants' withholdings under each privilege are addressed *seriatim* below, beginning in this section with the deliberative process privilege.

### a)   Legal Standard

Intended to protect "open and frank discussion" among government officials to enhance the quality of agency decisions, *U.S. Dep't of Interior v. Klamath Water Users Protective Ass'n*, 532 U.S. 1, 9 (2001), the deliberative process privilege "protects 'documents reflecting advisory opinions, recommendations and deliberations comprising part of a process by which governmental decisions and policies are formulated,'" *Loving v. U.S. Dep't of Def.*, 550 F.3d 32, 38 (D.C. Cir. 2008) (quoting *Klamath Water*, 532 U.S. at 8 (2001)).  "To qualify for the deliberative process privilege, an intra-agency [communication] must be both pre-decisional and deliberative." *Abtew v. U.S. Dep't of Homeland Sec.*, 808 F.3d 895, 898 (D.C. Cir. 2015) (citing *Coastal States Gas Corp. v. U.S. Dep't of Energy,* 617 F.2d 854, 866 (D.C. Cir. 1980)); *Whitaker v. U.S. Dep't of State*, 2016 U.S. App. LEXIS 1086, at *3–4 (D.C. Cir. Jan. 21, 2016) (per curiam) (internal quotations and citation omitted) ("To fall under the privilege's penumbra, documents must be both pre-decisional and deliberative.").

In general, a "document is predecisional if it was 'prepared in order to assist an agency decisionmaker in arriving at his decision,' rather than to support a decision already made." *Petroleum Info. Corp. v. U.S. Dep't of Interior*, 976 F.2d 1429, 1434 (D.C. Cir. 1992) (quoting *Renegotiation Bd. v. Grumman Aircraft,* 421 U.S. 168, 184 (1975)); *see also Leopold v. CIA*, 89 F. Supp. 3d 12, 19 (D.D.C. 2015) (quoting *Petroleum Info. Corp.,* 976 F.2d at 1434).  While the D.C. Circuit has observed that the "term 'deliberative' does not add a great deal of substance to the term 'pre-decisional,'" *Nat'l Sec. Archive v. CIA*, 752 F.3d 460, 463 (D.C. Cir. 2014) (citing

*Access Reports v. U.S. Dep't of Justice*, 926 F.2d 1192, 1195 (D.C. Cir. 1991), "'deliberative' in this context means, in essence, that the communication is intended to facilitate or assist development of the agency's final position on the relevant issue," *id.* (citing *Russell v. U.S. Dep't of the Air Force*, 682 F.2d 1045, 1048 (D.C. Cir. 1982)).

"[U]nlike other exemptions where the agency declaration and *Vaughn* index may be read in conjunction to provide an adequate justification for application of an exemption to a class or category of records, to sustain its burden of showing that records were properly withheld under Exemption 5, an agency must provide in its declaration and *Vaughn* index precisely tailored explanations for each withheld record at issue." *NSC II*, 960 F. Supp. 2d at 188.  Further, the deliberative process privilege does "does not protect documents in their entirety; if the government can segregate and disclose non-privileged factual information within a document, it must." *Loving*, 550 F.3d at 38 (citing *Army Times Publ'g Co. v. U.S. Dep't of Air Force,* 998 F.2d 1067, 1071 (D.C. Cir. 1993)).

### b)      CIA (NSC 445 Counts One, Two, Three, and Seven)

In *NSC II*, summary judgment was denied to the CIA on each of its deliberative-process withholdings under Exemption 5, with the Court holding that the agency failed in all instances to meet its burden of demonstrating that withheld material was both predecisional and deliberative. *NSC II*, 960 F. Supp. 2d at 189–91.  Nonetheless, before ordering further disclosure, the Court permitted the CIA to supplement its prior submissions in order to demonstrate that its challenge withholdings are exempt from disclosure under the deliberative process privilege.  *Id.* at 190. Having filed a supplemental *Vaughn* index, as well as additional accompanying declarations, the agency now renews its request for summary judgment as to each of its deliberative-process withholdings.

In response, the plaintiff continues to challenge "a small fraction" of the CIA's deliberative-process withholdings, Pl.'s 445 Opp'n at 22, spread across eighty-seven separate agency records produced in connection with four FOIA requests corresponding to NSC 445 Counts One, Two, Three, and Seven. Combined Vaughn Index at 19–33.[18] According to the agency, each of these records are "processing documents associated with FOIA requests submitted by other parties." Defs.' Mem. at 23; 2014 Lutz Decl. ¶ 26. Thus, in order to explain both the nature of the decision-making authority vested in the individuals issuing the disputed documents, as well as the positions in the chain of command of the parties to those documents, the agency's declarant has expanded upon the agency's prior submissions to provide a more thorough description of how the CIA processes FOIA requests. 2014 Lutz Decl. ¶ 26.

### (1)     CIA FOIA Response Process

In broad strokes, the agency's declarant explains that the CIA's FOIA response process is coordinated by the agency's Public Information Programs Division ("PIPD"), which receives FOIA requests and delegates processing duties within PIPD and, as necessary, to other divisions within the agency. *Id.* ¶¶ 27–29 (explaining that "simple" requests are processed entirely by PIPD, while "complex" requests are tasked to the Information Review Officer ("IRO") of one or more agency directorate). When requests are processed initially by another agency directorate, that directorate's IRO oversees searches conducted by relevant offices within the directorate. *Id.* ¶ 28. As the agency's declarant previously indicated, "[b]ecause CIA's records systems are decentralized and compartmented, each component must . . . devise its own search strategy, which includes identifying which of its records systems to search, as well as what search tools,

---

[18]     Beyond these individual challenges, in its initial opposition, the plaintiff "invite[d] the Court to require more detailed explanations for all [deliberative-process] withholdings *sua sponte*." Pl.'s 445 Opp'n at 22; *id.* at 22 n.21. To the extent that this request was not mooted by the parties' subsequent negotiations, the Court declines the invitation to require the CIA to produce additional material to support withholdings no longer in dispute.

indices and terms to employ."  Decl. Martha M. Lutz (Sept. 26, 2012) ("2012 Lutz Decl.") ¶ 13,

NSC 445 ECF No. 29-1.

Due to the "nature of a particular records system, or the search tools, indices, or terms

employed, [these initial searches] may locate many documents that are not responsive to the

request."  *Id.* ¶ 14.  As such, directorate IROs are responsible for making "initial

determination[s] as to whether each record is responsive" to a given request, and reviewing

responsive documents for proposed redactions and withholdings.  2014 Lutz Decl. ¶¶ 28–29.

Often after consultation with other directorate IROs, each IRO "sends its preliminary

assessment[]" to PIPD through the agency's CADRE system.  *Id.* ¶ 29.

Thereafter, according to the declarant, PIPD's Information and Privacy Coordinator and

her staff are responsible for evaluating the sufficiency and propriety of the agency's response, as

well as ensuring consistency of any response across agency divisions and individual FOIA

requests.  *Id.* ¶ 29.  This typically involves "incorporat[ing] all of [the IROs'] recommendations

regarding exemption, segregation, redaction and release [and] conduct[ing] a review, from a

corporate perspective, on behalf of the entire CIA."  2012 Lutz Decl. ¶ 16.  During such a

review, "additional information may be withheld in order to protect overall CIA equities."  *Id.*

Finally, after PIPD officials complete this overarching review, a "record copy of each document

is then finalized and produced to the requester."  *Id.*  Thus, in the agency's view, "the

Information and Privacy Coordinator and her staff make the final decisions on behalf of the

[CIA]" regarding the agency's response to any particular request.  Suppl. Lutz Decl. ¶ 13 & n.7.

As a result, the CIA argues that all of its challenged withholdings in these materials

represent "pre-decisional discussions detailing whether certain exemption claims are supportable

and preliminary recommendations as to how to handle the request that preceded the Agency's

final determination." 2014 Lutz Decl. ¶ 30.  More specifically, the agency's declarant explains that the withheld "communications discuss responsiveness of certain records, contain questions regarding the scope of a request, and/or consider whether the existence of certain information can be acknowledged in connection with a request for a certain subject matter." Supp. Lutz. Decl. ¶ 13.  According to the agency, disclosure of these "pre-decisional communications would inhibit frank discussions between" agency employees tasked with processing and responding to FOIA requests regarding "how to interpret specific requests, tailor searches, protect sensitive information, apply exemptions, respond to inquiries from the requester, and estimate and asses appropriate fees." Defs.' Mem. at 24–25 (quoting 2014 Lutz Decl. ¶ 29).  Along similar lines, the agency asserts the deliberative process privilege to withhold "raw" search results, which the agency's declarant describes as "an interim stage in the process of responding" to a particular FOIA request.  2014 Lutz Decl. ¶ 30.

Having more thoroughly explained the nature of its FOIA response process, the agency argues that it has met its burden of demonstrating that each of the eighty-seven documents arising from this process were properly withheld under the deliberative process privilege.  Defs.' Mem. at 25.  In response, the plaintiff again suggests that the agency's broad withholding of these materials is "simply indefensible and cannot be endorsed by the Court." Pl.'s 445 Opp'n at 22.  With this in mind, the agency's bases for withholding both preliminary FOIA search results and subsequent intra-agency communications regarding pending FOIA requests are addressed in turn.

### (2)      Preliminary Search Terms and Results

First, the plaintiff argues that the agency has improperly withheld both the *terms* used by CIA personnel to conduct preliminary searches, as well as the *results* of these preliminary

searches, in response to the particular FOIA requests at issue in NSC 445 Counts One, Two, and

Three. *Id.* at 22–24.  The plaintiff asserts that these materials are categorically excluded from

protection by the deliberative process privilege on the ground that neither the terms nor results of

a particular search may be properly construed as pre-decisional and deliberative under this

Circuit's precedent. *Id.*

As to search terms, the plaintiff observes that agencies are generally required to identify

the terms used to identify potentially responsive records in order to demonstrate the adequacy of

their searches before a reviewing court. *Id.* at 23.  Thus, because the final set of search terms are

usually disclosed in any subsequent litigation challenging the agency's response, the plaintiff

posits that this information is not properly subject to Exemption 5, *id.*, which exempts from

disclosure internal agency materials that "would not be available by law to a party other than an

agency in litigation with the agency," 5 U.S.C. § 552(b)(5).[19]  Along similar lines, according to

the plaintiff, preliminary search results are "purely factual information," such that "even if

someone does review the search results and then decides to perform a second search, that mere

fact does not transform the results of the first search into *deliberations*."  Pl.'s 445 Opp'n at 24

(emphasis in original).[20]

While the agency's initial submissions in connection with the present motions were less

than precise, the agency responds by emphasizing that the challenged withholdings at issue here

include only "search terms and search results from *preliminary* searches."  Defs.' Reply Supp.

---

[19]     Specifically, NSC challenges the agency's decision to withhold search terms in Documents CIA-11, 22, 39, 40, 42, 46, 53, 74, 100–102, 104, 107, 110–113, 116, 121, 123, 129, 131, 163, 168, 186, 219, 252, and 321. Pl.'s 445 Opp'n at 22 & n.23.

[20]     These challenged redactions appear in Documents CIA-5, 7, 9, 11, 12, 22, 23, 27, 30, 31, 36, 39–42, 45–47, 53, 73, 82–90, 92, 94, 100–105, 108, 110–114, 116, 118, 121, 123, 129, 131, 151, 162, 163, 168, 183, 184, 190, 191, 202, 218-223, 226, 227, 231–233, 236, 252, 255, 259, 280, 289, 321, 322, 323, and 330. Pl.'s 445 Opp'n at 24 & n.25.

Mot. Summ. J. & Opp'n Pl.'s Cross-Mot. Summ. J. ("Defs.' 445 Reply") at 9, NSC 445 ECF No.

77 (emphasis added); *see also* Pl.'s 445 Opp'n at 24 n.25 (compiling instances in which the CIA

"appears to have redacted *preliminary* search results" (emphasis added)).  The agency explains

that these preliminary searches are used to guide the agency's subsequent deliberations regarding

its final response to a particular FOIA request, with initial searches informing the agency's later

decision as to how to identify all responsive records, as well as the agency's decision, in

appropriate cases, to issue an alternative response in lieu of producing responsive documents.

Defs.' 445 Reply at 10.  In this sense, the agency suggests that the details of its initial searches

were a key component of the internal agency deliberations regarding how to craft an appropriate

response to the FOIA requests for which the plaintiff seeks processing information.  Neither

party's argument on this front is supported with relevant case law, nor has the Court itself

identified any case on point addressing the application of Exemption 5 to the FOIA search

process itself.  Nonetheless, upon a review of the authority in this Circuit, the Court concludes

that the search materials withheld by the CIA are not, as the plaintiff contends, categorically

excluded from protection under the deliberative process privilege.

     As previously noted, material withheld under the deliberative process privilege must be

both predecisional and deliberative.  *Nat'l Inst. of Military Justice v. U.S. Dep't of Def.*, 512 F.3d

677, 680 n.4 (D.C. Cir. 2008); *see also In re Sealed Case*, 121 F.3d 729, 737 (D.C. Cir. 1997).

Here, both the search terms and results of the agency's preliminary searches in connection with

the relevant FOIA requests is easily characterized as predecisional.  According to the agency's

declarant, preliminary searches are used to "conduct background research on a particular topic

before performing the searches for responsive records," and are used to "inform the Agency's

[final] responses."  Supp. Lutz. Decl. ¶ 13.  Thus, both the search terms and the results stemming

from these initial searches are used to guide the agency's later response to a particular FOIA request and generally cannot be said to "support a decision already made." *Petroleum Info. Corp.,* 976 F.2d at 1434.  Moreover, despite its suggestion that the agency's final search terms are "*always* released in litigation," Pl.'s 445 Opp'n at 23 (emphasis in original), NSC offers no support for the proposition that search terms used in the agency's *preliminary* searches to further refine its subsequent efforts to identify responsive documents are so disclosed.

By the same token, the plaintiff suggests that, where PIPD tasks another directorate with processing a FOIA request, any records reflecting the assigned directorate's responses that are accepted and approved by PIPD without further modification would "definitely" not qualify for protection under the deliberative process privilege.  Pl.'s 445 Reply at 13–14.  In fact, however, the D.C. Circuit has made clear that, in order for a recommendation later adopted by an agency decision-maker to be subject to disclosure under FOIA, "it must be evident that 'the reasoning in the report is adopted by the agency as *its* reasoning, even when the agency's decision agrees with the conclusion of a report.'"  *Elec. Frontier Found.*, 739 F.3d at 10 (quoting *Renegotiation Bd.*, 421 U.S. at 184) (internal alterations omitted).  Here, the plaintiff offers no indication that the PIPD, in agreeing with the conclusion of an individual directorate, intends to adopt the *reasoning* of that directorate in choosing to release or withhold a particular document.  As such, the plaintiff offers no support for the proposition that search results produced without further alteration to a FOIA requester cannot be said to be predecisional.

Similarly, the D.C. Circuit has emphasized that the court's inquiry regarding whether material is "deliberative," and therefore exempt under Exemption 5, begins with an examination of "the context in which the materials are used."  *Petroleum Info. Corp.*, 976 F.2d at 1434 (internal quotation marks and citations omitted).  Thus, while the D.C. Circuit has observed that

disputes regarding a particular withholding can "often be resolved by the simple test that factual material must be disclosed but advice and recommendations may be withheld," *Wolfe v. Dep't of Health & Human Servs.*, 839 F.2d 768, 774 (D.C. Cir. 1988) (citing *Mead Data Cent., Inc. v. U.S. Dep't of Air Force*, 566 F.2d 242, 256 (D.C. Cir. 1977)), the Circuit has long recognized that "[i]n some circumstances, even material that could be characterized as 'factual' would so expose the deliberative process that it must be covered by the privilege," *Elec. Frontier Found.*, 739 F.3d at 13 (quoting *Wolfe,* 839 F.2d 768); *see also In re Sealed Case*, 121 F.3d 729, 737 (D.C. Cir. 1997) ("The deliberative process privilege does not shield . . . material that is purely factual, unless the material is so inextricably intertwined with the deliberative sections of documents that its disclosure would inevitably reveal the government's deliberations.").

In this regard, the plaintiff's efforts to cast the sought-after search terms and results as "purely factual information" are unavailing.  As explained above, the CIA's declarant has broadly explained the method by which the agency responds to FOIA requests, including the PIPD's role in tasking directorate IROs with overseeing complex requests, as well as the role of preliminary searches in informing the agency's final responses to requesters.  2014 Lutz Decl. ¶¶ 27–30.  In large measure, this additional information outlining this agency-wide process addresses the concerns raised in *NSC II* regarding the "function and significance" of a particular document in the FOIA response process, as well as the "nature of the decision-making authority" vested in agency personnel in various divisions responsible for processing incoming requests. *NSC II*, 960 F. Supp. 2d at 189.  Thus, for example, while the agency's initial submissions left unanswered a number of questions regarding the genesis and function of preliminary search results, *see NSC II*, 960 F. Supp. 2d at 190, the agency's supplemental declarations provide meaningful insight into the use of preliminary searches to guide the agency's final response to a

particular request, *see* Supp. Lutz. Decl. ¶ 13.  Likewise, while the agency's initial descriptions did not specify whether particular CIA officials maintained authority to "approve withholding decisions, scope-of-search decisions, or other decisions about how to process" a particular FOIA request, *NSC II*, 960 F. Supp. 2d at 190, the agency has since clarified its position that *only* the PIPD Coordinator and her staff "make the final decisions on behalf of the Agency" regarding the agency's response to any particular request, Suppl. Lutz Decl. ¶ 13 & n.7.

Moreover, as set out in the agency's declarations, the information the plaintiff seeks is at the heart of the CIA's deliberations regarding how to comply with its obligations in responding to FOIA requests in a context where, due to the nature of the agency's mission, national security interests may be implicated.  As the agency's declarant explains, initial search results prompt internal communications regarding the scope of a given FOIA request, whether particular records are responsive, and whether the agency may acknowledge the existence of otherwise responsive records. *Id.* ¶ 13.  In this light, revealing the initial search terms and results used by the agency to guide its subsequent efforts to respond to a particular FOIA request may expose a central element of the agency's deliberations in determining how to formulate any final response.  Most notably, as the agency points out, preliminary searches generally dictate whether the agency must neither confirm nor deny the existence of responsive document.  Defs.' 445 Reply at 10.

In sum, records reflecting the agency's preliminary searches are not categorically excluded from protection under the deliberative process privilege and are, instead, properly withheld as deliberative under Exemption 5.  *Accord Whitaker*, 2016 U.S. App. LEXIS 1086, at *4 (summary affirmance of CIA deliberative-process withholding based on the agency's characterization of withheld documents as "'predecisional deliberations by [CIA] personnel regarding the nature of information retrieved, the scope of legal exemptions, the application of

exemptions to particular material, or making recommendations related to final Agency

determinations'"). Accordingly, because the plaintiff asserts no other ground for objecting to the

agency's withholdings, from which the agency segregated and released all non-exempt factual

information, 2014 Lutz Decl. ¶ 31, summary judgment is granted to the CIA as to its redaction of

preliminary search terms and results in each of the documents identified above, *supra* nn.17, 18.

### (3) Remaining Deliberative-Process Withholdings

Beyond its categorical objections, the plaintiff contends that the agency's justifications in

support of deliberative-process withholdings in four documents are "simply too bare and too

conclusory to survive any level of scrutiny." Pl.'s 445 Opp'n at 24–25. Specifically, the

plaintiff challenges the CIA's withholdings in Documents CIA-340, 341, 342, and 351, which

stem from a FOIA request addressed in NSC 445 Count Seven.[21]

First, the "matched set" of documents numbered CIA-340, 341, and 342 are each

described as a "Draft FOIA Internal Business Procedure." Combined *Vaughn* Index at 32. For

each document, the defendants' *Vaughn* index includes identical language explaining the

agency's deliberative-process withholding: "The deliberative process privilege of Exemption

(b)(5) was asserted to protect the entire document as it is a pre-decisional draft." *Id.* In a

supplemental declaration, the CIA's declarant further explains that these documents were each

withheld in full "on the basis that they are draft documents that show deliberative

communications – which do not reflect final Agency decisions." Suppl. Lutz Decl. ¶ 16 & n.8.

---

[21]   The plaintiff initially challenged the agency's decision to withhold Documents CIA-55 and CIA-324 pursuant to the deliberative process privilege. Pl.'s 445 Opp'n at 24. As to Document CIA-55, the agency invoked the attorney-client privilege to withhold this document, "which consists of legal advice that was solicited by an Agency component and information provided by the component in furtherance of that advice," in full. Combined *Vaughn* Index at 22; *see also* Suppl. Lutz Decl. ¶ 17. Since the plaintiff appears to have waived its challenge to the agency's withholding on this alternative ground, *see* Combined *Vaughn* Index at 22, its challenge to the agency's deliberative-process withholding is denied, as moot. Likewise, because Document CIA-324 is not included in the parties' final, combined *Vaughn* index, *see generally* Combined *Vaughn* Index, summary judgment is granted to the CIA as to its withholdings in this document, as conceded.

The plaintiff objects to the agency's "bald assertion" regarding the exempt status of these documents, which the plaintiff characterizes as relying on the "mere designation of [these] document[s] as" drafts.  Pl.'s 445 Opp'n at 25.  In support, the plaintiff correctly notes that the D.C. Circuit has "foreclose[d] the . . . argument that any document identified as a 'draft' is per se exempt" under Exemption 5.  *Arthur Andersen & Co. v. IRS*, 679 F.2d 254, 257 (D.C. Cir. 1982) (citing *Coastal States*, 617 F.2d at 866).  Thus, the D.C. Circuit clarified that, "[e]ven if a document is a 'draft of what will become a final document,' the court must also ascertain 'whether the document is deliberative in nature.'"  *Id.* at 257–58 (quoting *Coastal States*, 617 F.2d at 866).  In this sense, the Circuit recognized that the deliberative process exemption may not be used to shield a body of "working law" within an agency, *id.*, but protects those "communications which are themselves deliberative in nature, [as well as] all communications which, if revealed, would expose to public view the deliberative process of an agency," *Russell*, 682 F.2d at 1048 (upholding withholding of draft manuscript of official Air Force account of the use of Agent Orange during the Vietnam War); *see also Dudman Commc'ns Corp. v. U.S. Dep't of Air Force*, 815 F.2d 1565, 1569 (D.C. Cir. 1987) (explaining that "disclosure of editorial judgments—for example, decisions to insert or delete material or to change a draft's focus or emphasis—would stifle . . . creative thinking and candid exchange of ideas").  With drafts thus neither categorically included, nor categorically excluded, from deliberative-process protection, Judges on this Court have repeatedly held that drafts may be withheld under Exemption 5 where the withholding agency carries its normal burden of demonstrating that withheld materials are both predecisional and deliberative.  *See Competitive Enter. Inst. v. Office of Sci. & Tech. Policy*, No. 14-CV-01806 (APM), 2016 WL 544463, at *5–7 (D.D.C. Feb. 10, 2016), *modified*, No. 14-CV-01806 (APM), 2016 WL 2642961 (D.D.C. May 9, 2016) (collecting cases).

Here, the agency's formulaic descriptions of the withheld drafts provides relatively little information to support its decision to withhold these documents in their entirety.  For example, the CIA does not identify or otherwise describe the agency officials who authored or edited these materials, much less the decision-making authority vested in these individuals.  Moreover, while the agency need not identify a specific *final* document to demonstrate a draft's predecisional nature, *see Nat'l Sec. Archive*, 752 F.3d at 463, the agency provides no description of the deliberative process in which these drafts were involved or the role played by the documents in that process.  Instead, the CIA's bare assertion that the documents "show deliberative communications – which do not reflect final Agency decisions" lends some credence to the plaintiff's suggestion that the agency seeks to withhold these materials solely on the basis of their status as drafts.

Nonetheless, while the relative paucity of information provided by the CIA makes this a close case, the Court is ultimately persuaded that the agency has—barely—met its burden of demonstrating that the agency properly invoked Exemption 5 in withholding these materials.  Beyond simply labeling the withheld documents as "drafts," the agency has explained that each document is a "pre-decisional draft," Combined *Vaughn* Index at 32, which includes "deliberative communications" that do not reflect a final agency decision or policy, Suppl. Lutz Decl. ¶ 16 & n.8.  Without question, the Court's consideration of these withholdings would have been assisted by a more thorough explanation of the deliberative process giving rise to these drafts, as well as the function these drafts played in that process.  Nonetheless, the agency's unrefuted submissions make clear that the withheld materials represented draft versions of internal agency procedures that preceded the adoption of any final agency policy.  *Id.*  Consistent

with their preliminary nature, these drafts reflect the input of agency personnel involved in the drafting and editing process. *Id.*

While the agency fails to identify these individuals, the D.C. Circuit has clarified that the chilling risk associated with disclosure of predecisional drafts "arises from disclosure that the [agency] as an institution made changes in a draft at some point—not from disclosure that particular [agency] employees at particular stages in the editorial process made such changes." *Dudman Commc'ns Corp.*, 815 F.2d at 1569. Moreover, the CIA's representations in support of its decision to withhold these documents is broadly consistent with language recently deemed sufficient to support the agency's assertion of the deliberative process privilege. *See Whitaker*, 2016 U.S. App. LEXIS 1086, at *4. Overall, though the agency's bare justification of its decision to withhold these documents gives the Court some pause, the agency has met its burden of demonstrating that the withheld drafts preceded the adoption of any final agency policy and were "intended to facilitate or assist development of the agency's final position" regarding its internal FOIA processing procedures. *Nat'l Sec. Archive*, 752 F.3d at 463. Further, the agency's declarant avers that, in all instances, segregable factual material not subject to exemption or otherwise inextricably intertwined with deliberative communications was produced to the plaintiff. 2014 Lutz Decl. ¶ 31. With this in mind, the agency has met its burden of demonstrating that the draft documents it seeks to withhold are properly exempt from disclosure under the deliberative process privilege.

As such, the agency's request for summary judgment as to its withholding, in full, of Documents CIA-340, 341, and 342 is granted. For the same reason, the CIA's request for summary judgment as to its withholding of Document CIA-351, which the agency describes

simply as a "[d]raft outline discussing FOIA fees and fee waivers" containing discussion of the predecisional intra-agency deliberations preceding final decision," is also granted.

**c)       DIA (NSC 445 Count Five)**

In addition to contesting the CIA's deliberative-process withholdings, the plaintiff continues to contest various withholdings by DIA under Exemption 5 and the deliberative process privilege.  Pl.'s 445 Opp'n at 30, 32.  The challenged withholdings stem from a FOIA request submitted to DIA in 2009, which underlies NSC 445 Count Five.  NSC 445 FAC ¶¶ 45–46; Combined *Vaughn* Index at 35–36.

In *NSC II*, DIA was cautioned that failing entirely to submit a *Vaughn* index and, as a result, providing only "generic summaries of the documents withheld" by the agency was insufficient to support its invocation of the deliberative process privilege under Exemption 5. 960 F. Supp. 2d at 191–92.  Again seeking summary judgment, the agency has augmented its prior submissions to include two supplemental declarations, as well as a *Vaughn* index providing additional factual information regarding each withholding.  *See* Sec. Supp. Decl. Alesia Y. Williams (Feb. 28, 2014) ("Sec. Williams Decl."), NSC 445 ECF No. 59-4; Def. DIA Supp. *Vaughn* Index, NSC 445 ECF No. 59-5; Third Supp. Decl. Alesia Y. Williams (Oct. 7, 2014) ("Third Williams Decl."), NSC 445 ECF No. 77-2.  Despite this additional information supplied by the agency, NSC continues to dispute the DIA's deliberative-process withholdings in nine documents: DIA-22, 116, 127, 251, 257, 261, 423, 424, and 428.  Combined *Vaughn* Index at 34–36.

According to DIA, these records generally include memoranda reflecting "internal discussions between agencies that were responsible for processing the FOIA requests and administrative appeal of several professional FOIA requesters."  Third Williams Decl. ¶ 3.  As

60

explained by the agency's declarant, where a FOIA or MDR request implicates the interests of more than one federal intelligence agency, the process of coordinating a response "is complex and usually involves the exchange of memoranda that communicate an opinion from one agency to another about the handling of a particular document or series of documents." *Id.* ¶ 3. For example, a referring agency may recommend asserting an exemption for a particular reason, with the receiving agency responding to either agree with the recommendation or propose an alternative response. *Id.* To wit, seven of the nine disputed documents are memoranda between the DIA FOIA Office and other federal agencies regarding efforts to coordinate responses to particular FOIA or MDR requests, *id.* ¶¶ 3, 7 (Documents DIA-22, 116, 251, 257, 261, 423, and 428), with one of the remaining documents (Document DIA-424) being an attachment to one of these memorandum that includes an inventory of "specific recommendations for withholding and follow-on referrals to additional agencies," *id.* ¶ 7. Finally, Document DIA-127 is an internal spreadsheet with annotations from unidentified DIA FOIA Office officials and advising attorneys regarding the office's response to a particular FOIA request, which includes "annotations deliberating the withholding of certain information pursuant to the FOIA exemptions." *Id.*

With these additional submissions, the DIA has adequately described both the nature of the deliberative process giving rise to the disputed documents, as well as the function and significance of these documents in that process. Indeed, the inter-agency process described by the DIA's declarant bears some similarity to the intra-agency FOIA processing procedure employed within the CIA. *Compare* 2014 Lutz Decl. ¶¶ 27–30, *with* Third Williams Decl. ¶ 3 (each describing a process under which an office with primary responsibility for responding to a particular FOIA request solicits the assistance of other offices with more direct access to and

interest in relevant agency records).  Thus, for example, Document DIA-22 is described as consisting of "two separate referral memoranda discussing a FOIA case," including an original "request for coordination and specific instructions on how to respond" from DIA and a subsequent response providing "specific instructions on the release of the information and the connection between [the] particular FOIA request and other requests from the same requester." Third Williams Decl. ¶ 7; Combined *Vaughn* Index at 35.  Coupled with the agency's declarations, this information demonstrates that the materials withheld by the agency are emblematic of the "give-and-take of the consultative process" by which intelligence agencies work together to respond to FOIA and MDR requests.  *Coastal States*, 617 F.2d at 866.

Likewise, the information provided by the agency demonstrates the degree to which the release of these materials may chill these interagency deliberations.  For example, the agency's declarant notes that, in certain instances, "[a] referring agency may request, for various reasons related to national security, that a receiving agency process [a particular] record for release under the FOIA without any attribution to or acknowledgment of the referring entity or the coordination to reach a final determination."  Third Williams Decl. ¶ 4.  As the declarant explains, the decision whether to attribute the processing of a document to a particular intelligence agency is *itself* often subject to debate among the interested agencies.  *Id.*  The release of these discussions, the declarant avers, "would potentially chill the deliberations between agencies at least with respect to document processing and the question of agency attribution" and "could make it more likely that agencies would not have such extensive deliberations in the future."  *Id.* ¶¶ 4, 7.

In light of these representations, the agency has put forward persuasive evidence that the interagency communications contained in these withheld documents are both predecisional and

deliberative such that their public disclosure may stifle candid communication among interested agency officials. *Accord Whitaker*, 2016 U.S. App. LEXIS 1086, at *4. Finally, while "some portions of some sentences could be segregated for release without injury to the deliberative process," the agency's declarant avers that "this small amount of information provides . . . no intelligible insight into these documents." Third Williams Decl. ¶ 8. Consequently, summary judgment is granted to DIA as to its Exemption 5 withholdings under the deliberative process privilege.[22]

### d)     ODNI (NSC 445 Count Six)

The plaintiff also opposes the entry of summary judgment for the ODNI based on its assertion of the deliberative process privilege to justify two redactions in agency records produced to the plaintiff. Pl.'s 445 Opp'n at 32; Combined *Vaughn* Index at 37.[23]

The ODNI has not provided a *Vaughn* index, instead asking the Court to rely entirely upon its declarations in assessing the validity of the challenged redactions. In general, the agency's declarant explains that the material withheld from the agency's production "includes information contained within inter-agency and intra-agency e-mails that discuss the proper handling of particular FOIA requests; the responsiveness of certain documents; policies; and advice on best courses of action." Decl. of Jennifer L. Hudson ("Hudson Decl.") (Feb. 27, 2014) ¶ 22, NSC 445 ECF No. 59-6. The agency's declarant asserts that these "pre-decisional

---

[22]     Having concluded that the agency may withhold these documents, in full, pursuant to the deliberative process privilege, the Court does not consider the plaintiff's challenge to the agency's decision, in the alternative, to withhold Document DIA-127 under the attorney-client privilege. *See* Combined *Vaughn* Index at 35.

[23]     The challenged withholdings stem from a FOIA request submitted to ODNI in 2009, which underlies NSC 445 Count 6. NSC 445 FAC ¶¶ 45–46. Although the final *Vaughn* index lists three challenged withholdings, two of the challenged redactions are materially identical. *See* Pl.'s 445 Opp'n at 32. Consequently, only two redactions are at issue, found on pages five and twenty of the ODNI's final production. *See* Decl. of Jennifer L. Hudson (Feb. 27, 2014), Ex. A at 5, NSC 445 ECF No. 59-7; *id.*, Ex. B at 20, NSC 445 ECF No. 59-8. Page numbers refer to the handwritten pagination at the lower right corner of each page of the ODNI document at issue.

discussions among ODNI employees [include] possible approaches to take with respect to the particular FOIA requests; candid internal ODNI discussions, and exchanges of opinion among ODNI and CIA staff regarding these issues; and recommendations for actions." *Id.* ¶ 26.  Thus, according to the agency, "[i]n each instance, the officials who wrote and received the . . . material that was redacted were in a position to provide recommendations to the ultimate decision-maker regarding how ODNI should respond to particular FOIA requests." *Id.* ¶ 27.

Unlike those offered by the CIA and DIA, the ODNI's submissions in support of its request for summary judgment provide more than sufficient information regarding the agency's basis for asserting the deliberative process privilege.  Specifically, paragraph 28(a) of the ODNI's declaration, which refers to the first challenged withholding, states:

> Page 5 – 5/13/08 e-mail from ODNI/IMD to ODNI/OLA – one sentence providing analysis regarding how another U.S. Government agency plans to process a FOIA request and how that agency's actions might affect ODNI's obligations under FOIA was redacted based on the deliberative process privilege.

Hudson Decl. ¶ 28(a), ECF No. 59-6.

Based on the description provided by the ODNI, as well as the Court's review of the underlying record containing the challenged redaction, the agency has met its burden of demonstrating that the redacted material is properly subject to the deliberative process privilege. The description provided by the agency indicates that the underlying communication involved officials within ODNI discussing factors relevant to responding to a FOIA request.  The redacted sentence appears in an email exchange between ODNI officials in the Information Management Office ("IMO") and Office of Legislative Affairs regarding the agency's proposed response to a FOIA request seeking records related to Congressional oversight committees.  *See* Hudson Decl., Ex. A at 5–6.  The sentence in question follows an IMO official's description of the requester's particular interest in information "relevant to" a specific committee during a particular period of

time, with the email author then asking "Has there been any discussion of this nature within the ODNI?" *Id.* at 5.  In this context, the agency's description of the redacted material as "regarding how another . . . agency plans to process a FOIA request and how that agency's actions might affect" ODNI's own response is more easily characterized as both predecisional and deliberative. The redacted material clearly precedes any final agency determination regarding the FOIA request at issue and served to inform the agency's ultimate response.  Accordingly, the agency has met its burden of demonstrating that the redacted sentence is both predecisional and deliberative, and may be withheld pursuant to the deliberative process privilege and FOIA Exemption 5.

Similarly, the ODNI's declarant states the following regarding the other challenged withholding:

> Page 20 – 12/15/06 e-mail between two ODNI/IMD employees – one sentence that reveals the processing of a specific open and on-going FOIA request in relation to whether it was referred to another U.S. Government agency was redacted based on deliberative process privilege.

Hudson Decl. ¶ 28(h).

The redacted sentence appears in a long-running email exchange between IMO officials regarding the processing of two pending FOIA requests.  *See* Hudson Decl., Ex. B at 20–22.  The redacted material follows discussion among these officials regarding which agency is responsible for processing each of these prior requests.  *Id.*  As before, considered in this context, the agency's assertion that the withheld sentence addresses which agency would ultimately take the lead in processing one of these requests is more easily understood as predecisional and deliberative.  In this light, the agency's description of the redacted material, which addressed an "open and on-going" FOIA request and comprised internal deliberations regarding the degree to

which the ODNI would or would not be responsible for processing the request, is sufficient to justify the agency's decision to withhold this material as privileged.

Thus, summary judgment is granted to the ODNI as to its claims for Exemption 5 pursuant to the deliberative process privilege in the challenged withholdings.

*          *          *

To summarize, the Court grants summary judgment to the CIA, the DIA, and the ODNI with respect to those agencies withholdings pursuant to the deliberative process privilege and FOIA Exemption 5.  Specifically, summary judgment is granted to the CIA with respect to its deliberative-process withholdings in Counts One, Two, Three, and Seven of NSC 445; to the DIA with respect to its deliberative-process withholdings in Count Five of NSC 445; and to the ODNI with respect to its deliberative-process withholdings in Count Six of NSC 445.[24]

### 3.    *Exemption 5 – Attorney-Client Privilege*

Finally, the parties continue to dispute numerous Exemption 5 withholdings pursuant to the attorney-client privilege.  In particular, the plaintiff challenges withholdings by the CIA, DIA, and DOJ pursuant to attorney-client privilege in sixteen records responsive to FOIA requests at issue in four of the plaintiff's claims, NSC 445 Counts Two, Five, Seven, and Eight. As explained below, certain of these withholdings overlap with the defendants' withholdings under the deliberative process privilege.  Following a summary of the scope of the attorney-client privilege, each agencies' withholdings are addressed in turn.

---

[24]    The plaintiff also challenges DOJ's withholding of two documents (Documents DOJ-3 and DOJ-13) pursuant the deliberative process privilege.  *See* Combined *Vaughn* Index at 37.  Since these documents are properly withheld under the attorney-client privilege, *see infra* Part III.C.3.c, the Court need not – and does not – consider whether the agency has met its burden of withholding them under the deliberative process privilege.

### a)       Legal Standard

The "oldest of the privileges for confidential communications known to the common law," the attorney-client privilege is intended "to encourage full and frank communication between attorneys and their clients and thereby promote broader public interests in the observance of law and administration of justice." *Upjohn Co. v. United States*, 449 U.S. 383, 389 (1981).  To qualify for protection from disclosure under the attorney-client privilege, a communication must satisfy each of three criteria: "[(1)] the person to whom the communication was made is 'a member of the bar of a court' [(2)] who 'in connection with the communication is acting as a lawyer' and [(3)] the communication was made 'for the purpose of securing primarily either (i) an opinion on law or (ii) legal services or (iii) assistance in some legal proceeding.'" *In re Lindsey*, 158 F.3d 1263, 1270 (D.C. Cir. 1998) (quoting *In re Sealed Case*, 737 F.2d 94, 98–99 (D.C. Cir. 1984)).  In addition to qualifying communications originating with an attorney, the privilege also protects "the giving of information to the lawyer to enable him to give sound and informed advice." *Upjohn*, 449 U.S. at 390.  "In the governmental context, the 'client' may be the agency and the attorney may be an agency lawyer." *Tax Analysts v. IRS*, 117 F.3d 607, 618 (D.C. Cir. 1997).

### b)       CIA (NSC 445 Counts Two and Seven)

As explained in *NSC II*, the CIA's submissions in connection with its original request for summary judgment were "largely insufficient" to demonstrate that material the agency withheld under the attorney-client privilege was "sent 'for the purpose of securing primarily either (i) an opinion on law or (ii) legal services or (iii) assistance in some legal proceeding.'"  960 F. Supp. 2d at 193–95.  In particular, the CIA's justifications for withholding this material suffered from three primary deficiencies.  First, the agency's description of withheld communications as

"relate[d] to" matters for which agency attorneys provided legal advice failed to demonstrate that these communications were "sent or received for the primary purpose of seeking or providing" legal advice. *Id.* at 194. Second, the agency's suggestion that agency personnel engaged in the withheld communications *intended* their discussions to remain confidential was insufficient to show that the withheld material was *in fact* confidential. *Id.* Third, while the agency relied on the attorney-client privilege to withhold many documents in their entirety, the agency provided no explanation for such broad withholding. *Id.* at 194–95.

The CIA has made efforts to cure these deficiencies, but the plaintiff still disputes the agency's attorney-client withholdings in thirteen documents produced by the CIA in connection with two separate FOIA requests. Combined *Vaughn* Index at 30–34. The challenged withholdings fall broadly into two categories of documents: (1) internal FOIA processing documents appearing in the CIA's CADRE file management system; and (2) internal training materials providing guidance to agency personnel regarding various aspects of the agency's responsibilities under FOIA. Each category of withholdings is addressed below.

### (1)      Internal FOIA Processing Records

The plaintiff challenges redactions in three documents, identified as Documents CIA-253, 254, and 286, which the agency describes as screenshots from the CIA's CADRE database that, according to the agency "show the processing of certain FOIA requests" that were identified in response to the plaintiff's request for processing information for earlier FOIA requests submitted to the agency by the plaintiff and various third parties. *See* 445 FAC ¶¶ 18–24; *NSC II*, 960 F. Supp. 2d at 122–23.

Each of these documents is comprised of a one-page screenshot including information identifying the relevant FOIA request and requester, as well as the subject of the request. *See*

Pl.'s 445 Opp'n, Ex. R at 14–16, ECF No. 68-18.  While each screenshot includes sections labeled "Instructions" and "Response," material included in these two sections is generally redacted.  *See id.* at 14, 15 (all material appearing in the "Response" sections redacted, with no information appearing in the "Instructions" sections); *see id.* at 16 (one of four sentences appearing in the "Instructions" section redacted, with no information appearing in the "Response" section).  Seeking summary judgment, the CIA explains that, "[i]n the course of responding to certain FOIA requests, personnel from PIPD or the directorate IRO offices at times request legal advice from attorneys in the CIA's Office of General Counsel [('OGC')]."  2014 Lutz Decl. ¶ 32.  According to the agency, the disputed redactions are intended to protect legal advice "that was solicited by an Agency component" in connection with the relevant FOIA requests and, in two instances, "information provided by the component in furtherance of that advice."  Combined *Vaughn* Index at 30.

Latching onto the agency's assertion that OGC attorneys provide legal advice "in the course of responding to certain FOIA requests," the plaintiff contends that this general description is "virtually the same as 'in the normal course of business,' which is traditionally considered one of the *exceptions* to the [attorney-client privilege]."  Pl.'s 445 Opp'n at 27–28 (emphasis in original).  Consequently, the plaintiff asserts that the redacted documents "appear to be straightforward tasking orders sen[t] from the [CIA] FOIA office to OGC regarding requests for OGC records."  *Id.* at 27.  Thus, in the plaintiff's view, because there "is no indication on the face of these records that any legal advice was solicited or given in these records," *id.*, the agency has improperly withheld this material under Exemption 5.

The plaintiff's attempt to construe the material withheld by the agency as falling under an "exception" to the attorney-client privilege is in vain.  Indeed, as the non-binding authority NSC

cites makes clear, communications in the normal course of business are unprotected by the attorney-client privilege only where they "do not contain legal advice."  *See id.* at 28 ("Documents that were created during the normal course of business *and do not contain confidential legal advice* are not protected by either the attorney-client privilege or the work product doctrine." (emphasis added) (quoting *RBS Citizens, N.A. v. Husain*, 291 F.R.D. 209, 220 (N.D. Ill. 2013))).  Here, the CIA has clarified that "attorneys are not involved in the day-to-day processing of FOIA requests" at the agency.  Suppl. Lutz Decl. ¶ 15.  Thus, according to the agency's declarant, the "redacted information in these documents does not, in fact, reflect responses to tasking requests."  *Id.*  Instead, the redacted material includes "legal advice provided by a CIA attorney to the client and then memorialized by the client in the CADRE database."  *Id.*

The plaintiff offers no evidence to cast doubt on the agency's assurance that the limited redactions in these documents were intended to protect information exempted from disclosure under the attorney-client privilege.  Accordingly, summary judgment is granted to the CIA with respect to its Exemption 5 withholdings in these three documents.

### (2)  Training Materials

The plaintiff also contests the CIA's attorney-client privilege withholdings in ten training and guidance documents—Documents CIA-338, 341, 347, 358, *1, *2, *4, *5, *6, and *7—otherwise responsive to the plaintiff's FOIA request for such materials.  These documents are described by the CIA as follows: (1) "an orientation for Privacy Act analysts" (Document CIA-338); (2) "a draft on internal FOIA business procedures" (Document CIA-341); (3) "internal PIPD policies" (Document CIA-347); (4) "guidelines for FOIA case managers" (Document CIA-358); (5)–(10) "additional training materials" located "in the course of

conducting a supplemental search," (CIA-*1, *2, *4, *5, *6, and *7).  Suppl. Lutz Decl. ¶¶ 16, 18.

According to the agency's declarant, the CIA "invoked the attorney-client privilege to withhold the legal advice provided by OGC attorneys that is directly quoted and/or summarized" in the first four documents.  *Id.* ¶ 16.  For example, in Document-338, which is entitled "Privacy Act Branch Orientation," the agency has redacted roughly half a page of the five-page document, with the redaction appearing to be an introductory paragraph under the heading "Guidance and Policy," as well as two of three paragraphs appearing under a subheading that reads "Use of Exemptions (b)(2) and (b)(5)."  Pl.'s 445 Opp'n, Ex. D at 4–5.  With respect to the last six documents, the agency's declarant avers that the information withheld pursuant to the attorney-client privilege in these documents "consists of advice discussing the administration of specific provisions of the FOIA and Privacy Act tailored to CIA records and information," which is "contained within training slides, outlines and examples authored by OGC attorneys."  *Id.*

Objecting to the agency's redactions in these records, the plaintiff describes these documents as "internal regulations" that, while perhaps written by lawyers, "are statements of policy" and not "legal advice, especially not legal advice *solicited by an Agency component*."  Pl.'s 445 Opp'n at 29 (emphasis in original).  The plaintiff argues further that "once an attorney's product is turned into a *policy*, it ceases to be privileged."  Pl.'s 445 Reply at 14 (emphasis in original); *see also id.* ("[W]hen an attorney is educating staffers about their responsibilities under the law and telling them what to do, that information is not legally privileged.").  Additionally, surmising that these records "are clearly located in some database accessible by an entire office, if not the entire Agency," the plaintiff suggests that they are necessarily cannot qualify as confidential communications protected by the attorney-client privilege.  Pl.'s 445 Opp'n at 29.

The factual predicate for the plaintiff's conclusion that the CIA's limited redactions from agency training materials run afoul of the law falls short.  As the agency has explained, the material redacted from these documents is comprised of legal advice and examples provided by CIA OGC attorneys to assist in the preparation of training materials for CIA employees responsible for processing FOIA requests for agency records.  While the agency's description of the genesis of these documents, as well as the means by which they are stored, is somewhat vague, the agency's declarant avers that these records have been maintained confidentially, such that "the contents of these records were not shared beyond the parties."  2014 Lutz Decl. ¶ 32. Set against this clear averment, the plaintiff's effort to portray these materials as "statements of policy" that are widely available within the agency appears unsubstantiated.  To the extent that the plaintiff means to suggest that these materials have been widely distributed within the agency, perhaps breaching any confidentiality that originally attached to the documents, *see Coastal States*, 617 F.2d at 863 (confidentiality breached where documents "were circulated no further than among those members of the organization who are authorized to speak or act for the organization in relation to the subject matter of the communication" (internal quotations omitted)), the plaintiff provides no basis upon which to conclude that these materials were shared with agency employees who were not responsible for carrying out the record processing tasks described therein.

Accordingly, the agency has met its burden of demonstrating that its redactions in these materials were appropriate, and summary judgment is granted to the CIA with respect to its withholdings in Documents CIA-338, 341, 347, 358, *1, *2, *4, *5, *6, and *7.

### c)      DOJ (NSC 445 Count Eight)

Lastly, the plaintiff challenges the DOJ's compliance with the August 2013 Order resolving NSC 445 Count Eight, which addressed the plaintiff's request for all records held by the DOJ Office of Legal Counsel ("OLC") regarding FOIA, the Privacy Act, the Federal Records Act, the Presidential Records Act, or "agency records retention policies."  445 FAC ¶¶ 63–64.  In *NSC II*, DOJ was granted summary judgment as to thirteen of the sixteen responsive records DOJ located in response to this request; summary judgment was denied, as moot, as to one additional record; and summary judgment was denied, in part, as to two records, identified as Documents DOJ-3 and DOJ-13.  *NSC II*, 960 F. Supp. 2d at 199.  As a result, DOJ was ordered to release "the portions of Documents 3 and 13 that correspond to the pieces of privileged information that were made publicly available by the agencies who received the legal advice in question from the OLC."  *Id.* at 199–200.

The DOJ's declarant states that the agency has since complied with this prior Order by releasing copies of Documents DOJ-3 and DOJ-13 "that had been redacted to disclose only the portions that correspond to the pieces of information that were made publicly available."  *See* Sec. Decl. Paul P. Coburn (Feb. 5, 2014) ("Sec. Coburn Decl.") ¶ 3, NSC 445 ECF No. 59-9. This supplemental production notwithstanding, the plaintiff reads *NSC II* to demand a "much broader release of material."  Pl.'s 445 Opp'n at 33 (noting that the agency only released "exactly that information which had been previously disclosed, while redacting the remainder of the opinions").  In support, the plaintiff draws on language in *NSC II* broadly summarizing the law regarding waiver of the attorney-client privilege.  *Id.*  Specifically, *NSC II* explained that "voluntary disclosure of privileged material subject to the attorney-client privilege to unnecessary third parties in the attorney-client privilege context waives the privilege, not only as

to the specific communication disclosed but often as to all other communications relating to the same subject matter."  *NSC II*, 960 F. Supp. 2d at 198 (internal quotations omitted) (quoting *In re Sealed Case,* 121 F.3d 729, 741 (D.C. Cir. 1997)).  Emphasizing the Court's suggestion that waiver of privilege for a particular communication often has the effect of waiving the privilege for *other* communications "relat[ing] to the same subject matter," the plaintiff contends that the August 2013 Order resolving this claim requires the agency to release "the entire opinions" contained in Documents DOJ-3 and DOJ-13, "because the privilege was waived as to all other communications relating to the same subject matter, unless the agency proves otherwise."  Pl.'s 445 Opp'n at 33 (quoting *NSC II*, 960 F. Supp. 2d at 198).  The plaintiff attempts a leap too far.

The *NSC II* holding was clear: DOJ may not rely on Exemption 5 and the attorney-client privilege to withhold information from disclosure where a FOIA requester "'point[s] to specific information in the public domain' that is 'identical to that being withheld.'"  *NSC II*, 960 F. Supp. 2d at 197 (quoting *Davis v. U.S. Dep't of Justice*, 968 F.2d 1276, 1280 (D.C. Cir. 1992)).  Set against this well-established legal precedent, *NSC II* considered the agency's authority to withhold specific information in Documents DOJ-3 and DOJ-13.  First, in its discussion of DOJ-3, *NSC II* explained that "public disclosure of at least a portion of the contents of Document 3 waives the attorney-client privilege *as to that portion of the opinion*" and directed DOJ to release "those portions of Document 3 . . . that were disclosed in the meeting minutes submitted by the plaintiff" in the earlier round of summary judgment briefing.  *NSC II*, 960 F. Supp. 2d at 198 (emphasis added).  In a footnote, *NSC II* specifically contemplated a partial release of this document by noting that "[p]ortions of [DOJ-3] may not have been disclosed in the meeting minutes submitted by the plaintiff and thus need not be disclosed to the plaintiff."  *Id.* at 198 n.72.  As for Document DOJ-13, *NSC II* noted that "at least one conclusion of that OLC opinion"

had been publicly disclosed and was therefore not subject to attorney-client privilege. *Id.* at 199. Thus, DOJ was ordered to "disclose to the plaintiff the specific portion or portions of [DOJ-13] which opine[] . . . that advisory committee documents are available through FOIA requests made to the supervising agency and that the advisory committee must cooperate." *Id.* (internal quotation marks omitted).

In his declaration, the agency's declarant states that the portions of the documents ordered disclosed were disclosed, and the remainder that had not been publicly revealed—and thus retained their privileged character—was redacted. Sec. Colborn Decl. ¶ 3 (explaining that the remaining redactions "were necessary to preserve the confidentiality of information still protected by the deliberative process and attorney-client privileges"). The plaintiff presents no evidence to suggest that the agency's declarant is acting in bad faith, and agency affidavits are to be afforded the presumption of good faith "when nothing appears to raise the issue of good faith." *Larson*, 565 F.3d at 868. The agency's declarant's statement is certainly clipped, and refers back to his previous declaration which was similarly short, stating little more than the general rationale for the preservation of the attorney-client privilege. *See* Sec. Colborn Decl. ¶ 3 (citing Decl. Paul Colborn (Oct. 2, 2012) ¶¶ 15–16, NSC 445 ECF No. 29-11). Nevertheless, in light of the specific instructions given in the August 2013 Order and accompanying memorandum opinion, and the declarant's unrefuted assertion that the records in question were reviewed and redacted in compliance with that Order, summary judgment is granted to DOJ on this issue.

\*     \*     \*

To summarize, the Court grants summary judgment to the CIA and DOJ with respect to those agencies' withholdings pursuant to the attorney-client privilege and FOIA Exemption 5. In

particular, summary judgment is granted to the CIA with respect to its attorney-client withholdings in Counts Two and Seven of NSC 445 and to DOJ with respect to its attorney-client withholdings in Count Eight of NSC 445.

## IV.  CONCLUSION

For the reasons discussed above, in summary, the Court rules on the defendants' motions for summary judgment, the plaintiff's cross-motions for summary judgment, and the plaintiff's motion for reconsideration as follows:

### Civil Action No. 11–443

- The Court denies the plaintiff's motion for reconsideration of the Court's August 2013 Order granting summary judgment to the CIA as to Count Three in NSC 443.  *See supra* Part III.A.

- The Court grants summary judgment in all other respects to the CIA, as conceded, on all Counts in NSC 443.

### Civil Action No. 11–444

- In Count Eighteen of NSC 444, the Court grants summary judgment to the CIA with respect to the adequacy of its search efforts.  *See supra* Part III.B.2.

- In Count Twenty of NSC 444, the Court grants summary judgment to the CIA with respect to the adequacy of its search efforts.  *See supra* Part III.B.3.

- The Court grants summary judgment in all other respects to the CIA, as conceded, on all Counts in NSC 444.

76

*Civil Action No. 11–445*

- In Count One of NSC 445, the Court grants summary judgment to the CIA with respect to the adequacy of its search efforts, *see supra* Part III.B.3, and with respect to its withholdings under: (1) the National Security Act and FOIA Exemption 3, *see supra* Part III.C.1.b; and (2) the deliberative process privilege and FOIA Exemption 5, *see supra* Part III.C.2.b.

- In Count Two of NSC 445, while rejecting the CIA's withholdings under the CIA Act and FOIA Exemption 3, *see supra* Part III.C.1.a, the Court grants summary judgment to the CIA with respect to the adequacy of its search efforts, *see supra* Part III.B.3, as well as its withholdings under: (1) the National Security Act and FOIA Exemption 3, *see supra* Part III.C.1.b; (2) the deliberative process privilege and FOIA Exemption 5, *see supra* Part III.C.2.b; and (3) the attorney-client privilege and FOIA Exemption 5, *see supra* Part III.C.3.b.

- In Count Three of NSC 445, the Court grants summary judgment to the CIA with respect to the adequacy of its search efforts, *see supra* Part III.B.3, and its withholdings under the deliberative process privilege and FOIA Exemption 5, *see supra* Part III.C.2.b.

- In Count Five of NSC 445, the Court grants summary judgment to the DIA with respect to its withholdings under the deliberative process privilege and FOIA Exemption 5, *see supra* Part III.C.2.c.

- In Count Six of NSC 445, the Court grants summary judgment to the ODNI with respect to its withholdings under the deliberative process privilege and FOIA Exemption 5, *see supra* Part III.C.2.d.

- In Count Seven of NSC 445, while rejecting the CIA's withholdings under the CIA Act and FOIA Exemption 3, *see supra* Part III.C.1.a., the Court grants summary judgment to the CIA with respect to the adequacy of its search efforts, *see supra* Part III.B.3, as well as its withholdings under: (1) the National Security Act and FOIA Exemption 3, *see supra* Part III.C.1.b; (2) the deliberative process privilege and FOIA Exemption 5, *see supra* Part III.C.2.b; and (3) the attorney-client privilege and FOIA Exemption 5, *see supra* Part III.C.3.b.

- In Count Eight of NSC 445, the Court grants summary judgment to DOJ with respect to its withholdings under the attorney-client privilege and FOIA Exemption 5, *see supra* Part III.C.3.c.

- The Court grants summary judgment in all other respects to the CIA, as conceded, on all Counts in NSC 445.

- The Court denies the plaintiff's cross-motion for partial summary judgment in NSC 445.

*          *          *

Each of the three related actions addressed herein have been pending for more than five years, with many of the underlying FOIA requests at issue submitted nearly seven years ago. As the D.C. Circuit recently emphasized, "courts must be wary of creating 'an endless cycle of judicially mandated reprocessing' of FOIA requests, lest they undermine the Act's 'premium on the rapid processing of [such] requests.'" *Am. Civil Liberties Union v. U.S. Dep't of Justice*, No. 15-5217, 2016 WL 1657953, at *4 (D.C. Cir. Apr. 21, 2016) (quoting *Bonner v. Dep't of State*, 928 F.2d 1148, 1152 (D.C. Cir. 1991)). At some point, there must be finality in litigation. After two complete rounds of summary judgment briefing, numerous declarations and *Vaughn* indices,

hundreds of pages of judicial opinions and the commitment of countless hours of judicial, agency

and requester resources, these related actions have reached that point.  Informed by the extensive

information obtained through the dozens of requests at issue here, the plaintiff is free to submit

additional FOIA requests seeking further information from the defendants.  *Id.* (reminding

requester, which unsuccessfully challenged agency's invocation of FOIA exemption, that it "can

file a new FOIA request" prompted by disclosed information).

An appropriate Order accompanies this Memorandum Opinion.

Date: September 6, 2016

_____
BERYL A. HOWELL
Chief Judge