# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

NATIONAL SECURITY COUNSELORS,

Plaintiff,

v.

CENTRAL INTELLIGENCE AGENCY,

Defendant.

Civil Action No. 11-444 (BAH)

Chief Judge Beryl A. Howell

NATIONAL SECURITY COUNSELORS,

Plaintiff,

v.

CENTRAL INTELLIGENCE AGENCY, *et al.*

Defendants.

Civil Action No. 11-445 (BAH)

Chief Judge Beryl A. Howell

## <u>MEMORANDUM OPINION</u>

After over six years of litigation, involving three rounds of dispositive motions and three memorandum opinions, the plaintiff, National Security Counselors ("NSC"), seeks a total of $66,944.83 for attorneys' fees and costs in Civil Action No. 11-444 ("NSC 444") and Civil Action No. 11-445 ("NSC 445"), as the prevailing party, under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552(a)(4)(E).[1]  *See* NSC 444, Pl.'s Pet. Att'ys' Fees ("NSC 444 Pl.'s Pet."), ECF No. 107; NSC 445, Pl.'s Pet. Att'ys' Fees ("NSC 445 Pl.'s Pet."), ECF No. 101;

---

[1]  NSC 444 was previously consolidated with another FOIA lawsuit involving the same parties, Civil Action No. 11-443 ("NSC 443").  *See* NSC 444, Min. Order (dated Apr. 2, 2014).  For purposes of organizational clarity in this opinion, the issues in NSC 443 will be distinguished from NSC 444.  The plaintiff's motion for further consolidation of NSC 444 and NSC 445 was denied because NSC 445 was brought against five additional defendants and involved a variety of different claims.  *See* NSC 444, Mem. Order at 5, ECF No. 117.  Nevertheless, the arguments in the pending petitions are sufficiently similar to warrant consideration in a combined Memorandum Opinion.

NSC 444, Bill of Costs ("NSC 444 Pl.'s Bill of Costs"), ECF No. 105; NSC 445, Bill of Costs ("NSC 445 Pl.'s Bill of Costs"), ECF No. 99.[2]  The defendants, the Central Intelligence Agency ("CIA") in NSC 444, and the CIA, the Defense Intelligence Agency ("DIA"), the Department of Justice ("DOJ"), the Department of State ("State"), the National Security Agency ("NSA"), and the Office of the Director of National Intelligence ("ODNI"), in NSC 445, challenge the plaintiff's eligibility and entitlement to attorney's fees and costs and, in the alternative, seek a reduction the amount of fees requested by the plaintiff.  *See* NSC 444, Def.'s Opp'n Pl.'s Pet. Att'ys' Fees ("NSC 444 Def.'s Opp'n Fees") at 1–3, ECF No. 110; NSC 445, Defs.' Opp'n Pl.'s Pet. Att'ys' Fees ("NSC 445 Defs.' Opp'n Fees") at 1–3, ECF No. 104.  The defendants also seek to reduce the plaintiff's recovery for litigation costs.  NSC 444, Def.'s Opp'n Pl.'s Bill of Costs ("NSC 444 Def.'s Opp'n Costs") at 2–5, ECF No. 109; NSC 445, Defs.' Opp'n Pl.'s Bill of Costs ("NSC 445 Defs.' Opp'n Costs") at 2–3, ECF No. 103.  For the following reasons, the plaintiff's petitions are GRANTED in part and DENIED in part.

## I.  BACKGROUND

The relevant factual and procedural history is summarized only to the extent necessary to evaluate the pending fee petitions, as the facts have been recited in ample detail in opinions resolving the parties' dispositive motions.  *See Nat'l Sec. Counselors v. CIA* (*NSC III*), 206 F. Supp. 3d 241, 246–248 (D.D.C. 2016); *Nat'l Sec. Counselors v. CIA* (*NSC II*), 960 F. Supp. 2d 101, 118–131 (D.D.C. 2013)*; Nat'l Sec. Counselors v. CIA* (*NSC I*), 898 F. Supp. 2d 233, 242–251 (D.D.C. 2012).  In February 2011, the plaintiff, a Virginia-based non-profit organization, filed three lawsuits, Civil Action No. 443 ("NSC 443"), NSC 444, and NSC 445, which together

---

[2]    The total requested award reflects the plaintiff's most recent submissions, after the plaintiff initially miscalculated the fee awards.  *See* NSC 444, Pl.'s Errata ("NSC 444 Pl.'s Errata"), ECF No. 115; NSC 445, Pl.'s Errata ("NSC 445 Pl.'s Errata"), ECF No. 109.

alleged that six federal intelligence agencies improperly processed records requests under FOIA and maintained policies and practices violating FOIA, 5 U.S.C. § 552 *et seq*., and the Administrative Procedure Act ("APA"), 5 U.S.C. § 701, *et seq*. *See NSC I*, 898 F. Supp. 2d at 241–42.

In NSC 443, the plaintiff asserted three counts against the CIA. *See generally* NSC 443, Pl.'s Compl. ("NSC 443 Compl."), ECF No. 1. Counts One and Two, respectively, challenged the CIA's response to a records request that had been assigned to the plaintiff, *id.* ¶¶ 5–17, and the CIA's overall policy of refusing to recognize assigned rights to FOIA requests, *id.* ¶¶ 18–28. The two counts survived the CIA's Motion to Dismiss in *NSC I*, 898 F. Supp. 2d 233 at 290, and summary judgment was granted to the plaintiff with respect to both counts in *NSC II*, 960 F. Supp. 2d at 208. With respect to Count Three, which challenged the CIA's response to a separate FOIA request, NSC 443 Compl. ¶¶ 29–33, summary judgment was granted in part and denied in part to the CIA in *NSC II*, 960 F. Supp. 2d at 208, and, in *NSC III*, the plaintiff's Motion for Partial Reconsideration was denied, while summary judgment was granted in all other respects on this count to the CIA, as conceded, *NSC III,* 206 F. Supp. 3d at 288–89. The plaintiff's two motions to compel production of two documents, which the plaintiff had turned over to the Federal Bureau of Investigations ("FBI") as potentially classified and expected to be returned with the classified information redacted, were granted prior to *NSC I*, *see* NSC 443, Min. Order (dated Aug. 15, 2012); NSC 443, Order ("NSC 443 Order to Compel Compliance"), ECF No. 34, and the plaintiff's "non-frivolous" Motion for Sanctions against the CIA, stemming from the agency's handling of the two documents was denied in *NSC II*, 960 F. Supp. 2d at 139, 208.[3]

---

[3]     Plaintiff's counsel received the two documents at issue in the motions to compel from a third party and, after concluding that the documents potentially contained classified information, requested guidance from CIA's

In NSC 444, the plaintiff asserted twenty-one counts against the CIA. *See generally* NSC 444, Pl.'s First Am. Compl. ("NSC 444 FAC"), ECF No. 6. Of the thirteen policy-or-practice claims, twelve were dismissed in *NSC I*, but Count Twenty-One, which challenged the CIA's alleged Cut-Off Date Policy under FOIA, was allowed to go forward. *NSC I*, 898 F. Supp. 2d at 290–91 (granting CIA's partial Motion to Dismiss with respect to Counts Two through Seven and Eleven through Sixteen and denying CIA's Motion to Dismiss with respect to Count Twenty-One). Summary judgment was later granted to the CIA on Count Twenty-One, as well as Counts One, Eight, Nine, and Ten, but denied as to Counts Seventeen, Eighteen, and Twenty, which challenged the CIA's responses to different records requests. *NSC II*, 960 F. Supp. 2d at 208−09; *see also id.* at 118 n.3 (explaining Count Nineteen was voluntarily dismissed). In *NSC III*, only Counts Eighteen and Twenty remained in dispute, and summary judgment was granted to the CIA with respect to the remaining issues on those two counts and in all other respects to the CIA, as conceded. *NSC III*, 206 F. Supp. 3d at 289.

---

counsel, who then referred the matter to the FBI. NSC 443, Pl.'s Mot. to Compel Prod. ("NSC 443 First Mot. to Compel") at 1, ECF No. 26. Plaintiff's counsel planned to use unclassified material in the documents to oppose the CIA's anticipated motion for summary judgment. *Id.* at 4. The FBI did not return the documents because they were CIA records, prompting the plaintiff to seek an order compelling production by the CIA, which motion was granted over the CIA's objection. *NSC II*, 960 F. Supp. 2d at 128. The CIA was required to provide the plaintiff with "a copy of each of the two CIA documents referenced in the plaintiff's motion, if possible, with all classified information redacted therefrom." NSC 443, Min. Order (dated Aug. 15, 2012). Although the CIA produced the two records to the plaintiff, instead of redacting only classified information, the CIA redacted additional information under FOIA Exemptions 1 and 3 and the CIA Act. 50 U.S.C. § 3507; NSC 443, Pl.'s Mot. to Compel Compliance with Court Order ("NSC 443 Second Mot. to Compel") at 1−2, ECF No. 31. Since the "two documents were not the subject of a FOIA request [as] they were in the undersigned's possession, and he voluntarily provided copies to FBI so that any classified information could be redacted and sanitized copies returned," *id.* at 2, the plaintiff filed a second motion to compel production of the two documents with only classified information redacted, *NSC II*, 960 F. Supp. 2d at 128. The second motion was granted in part, requiring the CIA to produce copies with clear indications of what material was classified and what material was withheld under Exemption 3. NSC 443 Order to Compel Compliance at 2. The manner of the CIA's compliance generated yet another dispute over the CIA's explanations of redactions. *NSC II*, 960 F. Supp. 2d at 129. The plaintiff discovered that the CIA had initially marked as "classified" certain redacted material later marked as "withheld," and vice versa. *Id.* Following that discovery, the plaintiff sought sanctions, claiming the CIA had "engaged in an extended campaign of misrepresentation" to the plaintiff and the Court. NSC 443, Pl.'s Mot. Sanctions ("NSC 443 Pl.'s Mot. Sanctions") at 1, ECF No. 50. Although the motion was denied because the CIA explained its mistakes, the CIA was "admonished to engage in clearer internal communication before making representations to the Court about the agency's positions in the future." *NSC II*, 960 F. Supp. 2d at 137.

The plaintiff also asserted twenty-one counts in NSC 445, addressing the agencies'
responses to eleven different FOIA records requests, as well as policies or practices that
pertained to over twenty other FOIA records requests. *See generally* NSC 445, Pl.'s First Am.
Compl. ("NSC 445 FAC"), ECF No. 7. In *NSC I*, nine of the counts addressing policy-or-
practice claims, including the CIA's *Glomar* response policy, were dismissed. *NSC I*, 898 F.
Supp. 2d at 291 (granting CIA's Motion to Dismiss with respect to Counts Four, Eleven,
Fourteen through Nineteen and Twenty-One). In *NSC II*, summary judgment was (i) denied in
part and granted in part to the CIA on Counts One, Two, Three, and Seven; (ii) denied in part
and granted in part to DIA on Count Five; (iii) denied to ODNI on Count Six; (iv) denied in part
and granted in part to DOJ on Count Eight; (v) denied in part and granted in part to State on
Count Nine; (vi) denied to NSA on Count Ten; (vii) granted to CIA on Count Twelve; (viii)
denied to CIA on Count Thirteen; and (ix) granted to the plaintiff on Count Twenty, which
alleged a general FOIA violation due to CIA's refusal to invoke exemptions with particularity.
*NSC II*, 960 F. Supp. 2d at 209–10. In *NSC III*, summary judgment was granted on all remaining
counts to the defendants. *NSC III* 206 F. Supp. 3d at 289–90.[4]

Following the above decisions, the plaintiff filed the pending petitions for attorney's fees,
now seeking $50,967.80 in NSC 444 (including fees for NSC 443) and $14,371.20 in NSC 445.
NSC 444, Pl.'s Errata ("NSC 444 Pl.'s Errata"), ECF No. 115; NSC 445, Pl.'s Errata ("NSC 445
Pl.'s Errata"), ECF No. 109. These requested fees reflect only a portion of the overall hours
expended in this litigation, which hours were reduced based on plaintiff's counsel's assessment
of the counts on which the plaintiff prevailed. NSC 444 Pl.'s Pet., Attach. 3, Decl. of Kelly
McClanahan, Esq. ("NSC 444 First McClanahan Decl.") ¶ 12, ECF No. 107-3; NSC 445 Pl.'s

---

[4] At the same time, CIA's justifications for withholding pursuant to FOIA Exemption 3, 5 U.S.C.
§ 552(b)(3), in Counts Two and Seven were rejected. *NSC III* 206 F. Supp. 3d at 289–90.

Pet., Attach. 3, Decl. of Kelly McClanahan, Esq. ("NSC 445 First McClanahan Decl.") ¶ 12, ECF No. 101-3. NSC also filed Bills of Costs in NSC 444 and 445, seeking $1,255.83 and $350.00, respectively. NSC 444 Pl.'s Bill of Costs at 1; NSC 445 Pl.'s Bill of Costs at 1. The defendants argue the fee petitions "should be denied," or in the alternative, the plaintiff's award "should be significantly reduced," as should the plaintiff's award of costs. *See* NSC 444 Def.'s Opp'n Fees at 1; NSC 445 Defs.' Opp'n Fees at 1; NSC 444 Def.'s Opp'n Costs at 1; NSC 445 Defs.' Opp'n Costs at 2–3. The plaintiff's requests for attorney's fees and costs are considered below.

## II. LEGAL STANDARD

The FOIA authorizes the award of attorneys' fees reasonably incurred by a plaintiff in litigation to obtain "the production of any agency records improperly withheld," 5 U.S.C. § 552(a)(4)(B), when "the complainant has substantially prevailed," *id*. § 552(a)(4)(E)(i). The D.C. Circuit has construed this statutory provision as "naturally divid[ing] the attorney-fee inquiry into two prongs, which our case law has long described as fee 'eligibility' and fee 'entitlement.'" *Brayton v. Office of the U.S. Trade Representative*, 641 F.3d 521, 524 (D.C. Cir. 2011) (citing *Judicial Watch, Inc. v. U.S. Dep't of Commerce*, 470 F.3d 363, 368–69 (D.C. Cir. 2006)). Thus, to obtain attorneys' fees under the FOIA, the plaintiff must demonstrate both eligibility and entitlement to the award. *See McKinley v. Fed. Hous. Fin. Agency*, 739 F.3d 707, 710 (D.C. Cir. 2014); *see also Weisberg v. U.S. Dep't of Justice*, 745 F.2d 1476, 1495 (D.C. Cir. 1984) ("[E]ligibility alone is not enough. . . . the complainant must [also] show that he or she is 'entitled' to an award.") (citation omitted). After establishing eligibility and entitlement, the plaintiff must then demonstrate the reasonableness of the calculation in its fee request. *See Covington v. District of Columbia*, 57 F.3d 1101, 1107–08 (D.C. Cir. 1995).

To satisfy the first requirement of eligibility for attorneys' fees, a claimant must show that he or she "substantially prevailed" in the underlying FOIA litigation. *See* 5 U.S.C. § 552(a)(4)(E)(i). The statute provides that the claimant "substantially prevailed" by gaining relief from either: "(I) a judicial order, or an enforceable written agreement or consent decree; or (II) a voluntary or unilateral change in position by the agency, if the complainant's claim is not insubstantial." *Id.* § 552(a)(4)(E)(ii). Under the first prong, the claimant substantially prevails when "'the order changed the legal relationship between [the parties],' and . . . the plaintiff 'was awarded some relief on the merits of his claim.'" *Judicial Watch, Inc. v. FBI*, 522 F.3d 364, 367 (D.C. Cir. 2008) (quoting *Davy v. CIA* (*Davy I*), 456 F.3d 162, 165 (D.C. Cir. 2006) (internal quotation marks and citation omitted)). Under the second prong, or "catalyst theory," attorney's fees may be awarded solely due to a change in an agency's position. Indeed, in such a situation, "a plaintiff 'substantially prevailed' . . . when he substantially caused the government to release the requested documents before final judgment." *Brayton*, 641 F.3d at 524–25; *accord Davis v. U.S. Dep't of Justice*, 610 F.3d 750, 752 (D.C. Cir. 2010) ("FOIA plaintiffs [are] eligible for a fee award if the lawsuit substantially caused the agency to release the requested records."); *Burka v. U.S. Dep't of Health & Human Servs.*, 142 F.3d 1286, 1288 (D.C. Cir. 1998) (holding that party claiming attorney's fees "must first establish eligibility by showing that the lawsuit was reasonably necessary and the litigation substantially caused the requested records to be released"); *Church of Scientology of Cal. v. Harris*, 653 F.2d 584, 587 (D.C. Cir. 1981) (finding that whether a party "substantially prevailed" is "largely a question of causation," asking "did the institution and prosecution of the litigation cause the agency to release the documents obtained during the pendency of the litigation?").[5]

---

[5] The catalyst theory was utilized by this Circuit until 2001, when the Supreme Court held that "the 'catalyst theory' is not a permissible basis for the award of attorney's fees." *Buckhannon Bd. & Care Home, Inc. v. W. Va.*

If the plaintiff has "substantially prevailed and thus may receive fees," then "the court proceeds to the entitlement prong and considers a variety of factors to determine whether the plaintiff *should* receive fees." *Brayton*, 641 F.3d at 524 (emphasis in original) (quotation marks and citations omitted). "This circuit has long applied a multi-factor standard" involving consideration of "[f]our non-exclusive factors": "'(1) the public benefit derived from the case; (2) the commercial benefit to the plaintiff; (3) the nature of the plaintiff's interest in the records; and (4) the reasonableness of the agency's withholding' of the requested documents." *McKinley*, 739 F.3d at 711 (quoting *Tax Analysts v. U.S. Dep't of Justice*, 965 F.2d 1092, 1093 (D.C. Cir. 1992)); *see also Cotton v. Heyman*, 63 F.3d 1115, 1117 (D.C. Cir. 1995). "No one factor is dispositive," except that "if the Government's position is correct as a matter of law, that will be dispositive." *Davy v. CIA* (*Davy II*), 550 F.3d 1155, 1159, 1162 (D.C. Cir. 2008). "The sifting of those criteria over the facts of a case is a matter of district court discretion." *Tax Analysts*, 965 F.2d at 1094 (citing *Church of Scientology*, 653 F.2d at 590); *see also Judicial Watch*, 522 F.3d 364, 371 (D.C. Cir. 2008) ("Balancing these factors is a matter for the district court.").

Even if a plaintiff is eligible and entitled to fees, the plaintiff bears the burden of demonstrating that the fees sought are reasonable. *See Covington*, 57 F.3d at 1107 ("[A] fee applicant bears the burden of establishing entitlement to an award, documenting the appropriate hours, and justifying the reasonableness of the rates.") (citing *Blum v. Stenson*, 465 U.S. 886, 896 n.11 (1984)). That determination involves a three-part analysis: "(1) determination of the number of hours reasonably expanded [sic] in litigation; (2) determination of a reasonable hourly

---

*Dep't of Health & Human Res.*, 532 U.S. 598, 610 (2001). Congress responded by resurrecting the catalyst theory for FOIA cases in the Open Government Act of 2007. *See Davis*, 610 F.3d at. 752. "The purpose and effect of this law, which remains in effect today, was to change the 'eligibility' prong back to its pre-*Buckhannon* form." *Brayton*, 641 F.3d at 525.

rate or 'lodestar'; and (3) the use of multipliers as merited." *Save Our Cumberland Mountains, Inc. v. Hodel* (*SOCM*), 857 F.2d 1516, 1517 (D.C. Cir. 1988) (citation omitted). Evidence pertinent to showing these elements include "the attorneys' billing practices; the attorneys' skill, experience, and reputation; and the prevailing market rates in the relevant community." *Covington*, 57 F.3d at 1107; *Salazar ex rel. Salazar v. District of Columbia*, 809 F.3d 58, 62 (D.C. Cir. 2015). The prevailing market rate may be shown using evidence of the "attorneys' fee matrices," the "'most commonly used'" of which "is the '*Laffey* Matrix'—the schedule of prevailing rates compiled in" *Laffey v. Nw. Airlines, Inc.*, 572 F. Supp. 354, 371 (D.D.C. 1983), *aff'd in part, rev'd in part on other* grounds, 746 F.2d 4 (D.C. Cir. 1984), which "sets out a general guideline for awarding attorneys' fees based on experience . . . adjusted for inflation." *Salazar*, 809 F.3d at 62 (citing *Eley v. District of Columbia*, 793 F.3d 97, 100 (D.C. Cir. 2015)). The original *Laffey* rates, developed in the early 1980s, were supported by a "barrage of data" pertaining to attorneys' hourly charges to "fee-paying clients in employment discrimination cases" in the Washington, D.C. area. *Laffey*, 572 F. Supp. at 371–72.

In the over thirty years since the *Laffey* Matrix was first adopted, the original matrix has spawned "competing" versions of fee schedules based on years of legal experience. *Eley*, 793 F.3d at 101; *Salazar*, 809 F.3d at 62. One version, developed by the United States Attorney's Office ("USAO") for the District of Columbia ("USAO *Laffey* Matrix"), is based on the original *Laffey* rates, as adjusted for inflation using the Consumer Price Index for All Urban Consumers for all items in the Washington, D.C. area ("All Items CPI"). *Eley*, 793 F.3d at 101; *Salazar*, 809 F.3d at 62. The USAO applies this fee matrix, which is derived from rates approved for "work done principally in 1981–82," to attorney's fees incurred prior to June 1, 2015. U.S. ATTORNEY'S OFFICE, U.S. DEP'T OF JUSTICE, LAFFEY MATRIX – 2003-2014, EXPLANATORY

NOTES ¶ 3, https://www.justice.gov/sites/default/files/usao-dc/legacy/2013/09/09/Laffey_Matrix%202014.pdf (last visited Nov. 21, 2017); U.S. ATTORNEY'S OFFICE, U.S. DEP'T OF JUSTICE, USAO ATTORNEY'S FEES MATRIX – 2015-2018 ("2015–18 USAO MATRIX"), EXPLANATORY NOTES ¶ 4, https://www.justice.gov/usao-dc/file/796471/download (last visited Nov. 21, 2017) ("[T]he USAO rates for years prior to and including 2014-2015 remain based on the prior methodology, *i.e.*, the original *Laffey* Matrix updated by the [All Items CPI] for the Washington-Baltimore area.").

A second "enhanced" fee schedule, approved in *Salazar*, 809 F.3d at 63–64, adjusts updated *Laffey* Matrix rates for inflation using the Legal Services Index ("LSI") of the nationwide CPI ("LSI *Laffey* Matrix").[6]

A third fee schedule has recently been developed by the USAO based on data in a 2011 survey from ALM Legal Intelligence ("2011 ALM Survey") of hourly lawyer rates in the D.C. metropolitan area, which rates are adjusted annually using the Producer Price Index-Office of Lawyers ("PPI-OL") national index ("2015 USAO Matrix"). 2015–18 USAO MATRIX, EXPLANATORY NOTES ¶ 2; *see also Elec. Privacy Info. Ctr. v. U.S. Drug Enf't Admin.* (*EPIC*), Civ. No. 15-00667 (CRC), 2017 WL 3049403, at *5 (D.D.C. July 18, 2017). The USAO acknowledges that methodology used in the 2015 USAO Matrix, which the USAO applies to

---

[6]         This matrix is sometimes referred to as the "*Salazar* Matrix" or the "*Salazar*/LSI Matrix," *see, e.g.*, *Makray v. Perez*, 159 F. Supp. 3d 25, 35 (D.D.C. 2016), but the term "LSI *Laffey* Matrix" will be used here. The methodology used to develop the LSI *Laffey* Matrix is described in *Salazar v. District of Columbia*, 123 F. Supp. 2d 8, 13 (D.D.C. 2000), which states that "monthly data for the legal services component of the nationwide Consumer Price Index ("CPI") produced by the United States Department of Labor Bureau of Labor Statistics" is applied to an "updated *Laffey* matrix" based on data through May 31, 1989 "for each experience level of the grid to determine the current hourly rate for each experience level for the particular year in which the work was done." As plaintiff's expert, Dr. Michael Kavanaugh, explains, the updated *Laffey* matrix is based on a "1989 sample of legal services billing rates" that "was drawn in response to the remand decision in [*SOCM*]." NSC 444 Pl.'s Pet., Attach. 1, Decl. of Michael Kavanaugh, Ph.D. ("2013 Kavanaugh Decl.") ¶ 8, ECF No. 107-1; NSC 445 Pl.'s Pet., Attach. 1, 2013 Kavanaugh Decl. ¶ 8, ECF No. 101-1. The USAO considers the LSI *Laffey* Matrix "fundamentally flawed" and "will not consent to pay hourly rates calculated with the methodology on which that matrix is based." 2015–18 USAO MATRIX, EXPLANATORY NOTES ¶ 9.

attorney's fees incurred after May 2015, "better reflects the mix of legal services that law firms collectively offer," even though "it is a national index, and not a local one." 2015–18 USAO MATRIX, EXPLANATORY NOTES ¶ 3. The government, however, will not oppose use of either "an updated *Laffey* Matrix computed using the prior [All Items CPI] methodology . . . for periods after May 2015," or the use of the "new [PPI-OL based] methodology . . . to calculate reasonable attorney's fees under applicable fee-shifting statutes for periods prior to June 2015," *id.* ¶ 5. Thus, at least three alternative methods for determining the prevailing market rate for hourly attorney's fees are sanctioned by the USAO (*i.e.*, USAO *Laffe*y Matrix or 2015 USAO Matrix applied across the board; or USAO *Laffey* Matrix applied to fees incurred before June 2015 and 2015 USAO Matrix applied to fees incurred after May 2015).

When a plaintiff seeking attorney's fees submits the required information, a presumption applies that the number of hours billed and the hourly rates are reasonable. *Covington*, 57 F. 3d at 1109. The burden then shifts to the defendant to "provide specific contrary evidence tending to show that a lower rate would be appropriate." *Id.* at 1109–10 (quoting *Nat'l Ass'n of Concerned Veterans v. Sec'y of Def*. (*Concerned Veterans*), 675 F.2d 1319, 1326 (D.C. Cir. 1982)).

## III. DISCUSSION

The defendants challenge the plaintiff's petitions for attorney's fees on the grounds that the plaintiff is neither eligible nor entitled, and, in the alternative, the requested fees are not reasonable based on the number of hours billed and the plaintiff's reliance on the LSI *Laffey* Matrix to determine rates. The defendants also challenge the plaintiff's requests for costs due to insufficient documentation, inclusion of unnecessary items, and failure to account for limited success. These issues are considered *seriatim* below.

## A.    ELIGIBILITY FOR FEE AWARDS

In the plaintiff's view, eligibility for a fee award is established because the plaintiff substantially prevailed on all three counts in NSC 443, five counts in NSC 444, and thirteen counts in NSC 445.  *See* NSC 444, Pl.'s Reply Supp. Mot. Att'ys' Fees ("NSC 444 Pl.'s Reply") at 2, ECF No. 114; NSC 445, Pl.'s Reply Supp. Mot. Att'ys' Fees ("NSC 445 Pl.'s Reply") at 2, ECF No. 108.  The defendants counter that the plaintiff is not eligible for a fee award because the fee petitions "deprive[] CIA and the Court of the information needed to accurately assess the extent to which Plaintiff has substantially prevailed in this case."  NSC 444 Def.'s Opp'n Fees at 6; NSC 445 Defs.' Opp'n Fees at 5.  Although the petitions lack specificity in describing precisely how the plaintiff prevailed with respect to each individual count, the fee petitions are generally based on the "significant percentage of" *NSC II* that favored NSC and "to a lesser degree" *NSC I.*  NSC 444 Pl.'s Pet. at 2; NSC 445 Pl.'s Pet. at 2.  Indeed, while the plaintiff was granted summary judgment on only three counts in all three cases, the plaintiff also prevailed by winning two motions to compel and causing the defendants to reverse their "position on several issues," perform "a search after initially making a *Glomar* response," and release "electronic records to NSC after arguing numerous times that it was simply not feasible to do so."  NSC 444 Pl.'s Pet. at 2–3; NSC 445 Pl.'s Pet. at 2–3.

As noted, a plaintiff may substantially prevail, pursuant to § 552(a)(4)(E)(ii), under either a court-order or the catalyst theory.  The former applies when a judicial order has been issued that changes the legal relationship between the parties, and the plaintiff has been awarded some relief on the merits.  *See Judicial Watch*, 522 F.3d at 367–68; *Campaign for Responsible Transplantation v. Food & Drug Admin.*, 511 F.3d 187, 193–94  (D.C. Cir. 2007); *see also Conservation Force v. Jewell*, 160 F. Supp. 3d 194, 201 (D.D.C. 2016).  "A court order that

changes the legal relationship between the parties is one that requires a party 'to do what the law required—something that it had theretofore been unwilling to do.'" *People for the Ethical Treatment of Animals v. Nat'l Insts. of Health*, 130 F. Supp. 3d 156, 162 (D.D.C. 2015) (quoting *Campaign for Responsible Transplantation*, 511 F.3d at 196). An order requiring an agency to take an action that is not merely procedural, such as producing records by a certain date, is judicial relief on the merits that amounts to a change in the legal relationship between parties. *See Judicial Watch*, 522 F.3d at 367–68; *Edmonds v. FBI*, 417 F.3d 1319, 1324, 1326–27 (D.C. Cir. 2005). By contrast, a procedural order, such as requiring the parties to file a joint status report or an agency to update a *Vaughn* index, does not change the legal relationship. *See Summers v. U.S. Dep't of Justice*, 569 F.3d 500, 505 (D.C. Cir. 2009) (finding orders requiring parties to file status report "do not affect a court-ordered change in the legal relationship between the plaintiff and the defendant") (internal quotation marks and citation omitted); *Campaign for Responsible Transplantation*, 511 F.3d at 196 ("[A]n order compelling the production of a *Vaughn* index, without more, is not enough to make a plaintiff a 'prevailing party' sufficient to support a claim for attorney's fees."); *see also Conservation Force*, 160 F. Supp. 3d at 203 ("[A]dministrative orders that a court might issue to aid in its determination of whether the documents have been properly withheld (*e.g.*, orders for *Vaughn* Indices or status reports) do not give rise to a finding of eligibility for attorneys' fees.").

Absent a court order that affects the parties' legal relationship, the catalyst theory is available when the plaintiff demonstrates that the litigation caused the agency to change its position voluntarily and release requested records. *Brayton*, 641 F.3d at 524–25; *Weisberg*, 745 F.2d at 1496 (explaining that, under the catalyst theory, the "party seeking such fees in the absence of a court order must show that the prosecution of the action could reasonably be

regarded as necessary to obtain the information . . . and that a causal nexus exists between that action and the agency's surrender of that information") (internal quotation marks and citations omitted).  Causation, however, requires more than correlation and, thus, in the context of FOIA attorney's fees, "the mere filing of the complaint and the subsequent release of the documents is insufficient to establish causation."  *Weisberg*, 745 F.2d at 1496; *see also Conservation Force*, 160 F. Supp. 3d at 205 (same).  Timing is a relevant factor, but something "more than *post hoc, ergo propter hoc* must be shown."  *Pub. Law Educ. Inst. v. U.S. Dep't of Justice*, 744 F.2d 181, 183 (D.C. Cir. 1984).  For instance, the release of documents after litigation is initiated does not establish eligibility when an agency's administrative backlog caused the delay in processing, defeating a plaintiff's claim of "substantially prevailing" under the catalyst theory.  *See Codrea v. Bureau of Alcohol, Tobacco, Firearms & Explosives*, Civ. No. 15-0988 (BAH), 2017 WL 4334119, at *4 (D.D.C. Sept. 28, 2017); *Gerhard v. Fed. Bureau of Prisons*, Civ. No. 16-1090 (RDM), 2017 WL 2958603, at *5 (D.D.C. July 11, 2017); *Dorsen v. U.S. Sec. & Exch. Comm'n*, 15 F. Supp. 3d 112, 120 (D.D.C. 2014).

The plaintiff's eligibility for the fees sought in the petitions is now evaluated under both prongs of 5 U.S.C. § 552(a)(4)(E)(ii), the court-order theory and the catalyst theory.

### 1.    *NSC 443*

The plaintiff substantially prevailed on all three counts of NSC 443.  With respect to Counts One and Two, the plaintiff substantially prevailed, as required for fees under § 552(a)(4)(E)(ii)(I), in *NSC II* because summary judgment was granted to the plaintiff on both counts.  *NSC II*, 960 F. Supp. 2d at 208.  The counts alleged that the CIA's assignment of rights policy violated FOIA and that the CIA was required to process a FOIA request, which the plaintiff had received through an assignment.  *Id.* at 137–48.  After *NSC II*, the CIA was

prohibited from "categorically refus[ing] to recognize the assignment of FOIA requests" and was required to "permit the plaintiff to exhaust its administrative remedies through the administrative appeals process as an assignee of the FOIA request in question." *Id.* at 148. With respect to Counts One and Two, thus, the plaintiff clearly obtained judicial relief that changed the parties' legal relationship. Moreover, the defendants do not appear to dispute that, if the plaintiff is eligible for a fee award, Counts One and Two serve as a basis. *See* NSC 444 Def.'s Opp'n Fees at 4 (recognizing grant of summary judgment to the plaintiff on Counts One and Two in NSC 443).

The plaintiff also substantially prevailed on Count Three, which sought Tables of Contents ("TOC") from the CIA's in-house journal, even though summary judgment was ultimately granted to the CIA in *NSC III*. *NSC III*, 206 F. Supp. 3d at 288–89. First, two motions to compel were granted that changed the legal relationship between the parties by requiring the defendant to release two documents "relevant to the plaintiff's claim in Count Three" by certain dates. *NSC II*, 960 F. Supp. 2d at 128; *see supra* note 2.

Second, the plaintiff also substantially prevailed under the catalyst theory on Count Three. In *NSC II*, summary judgment was denied to the CIA with respect to the agency's withholdings under Exemption 1 and Exemption 3, 5 U.S.C. § 552(b)(1),(3), as well as the CIA's refusal to produce records in an electronic format. *NSC II*, 960 F. Supp. 2d at 208. Although the court-order theory does not apply with respect to the withholdings because the relief was procedural, *see id.* at 171, 185 (giving the CIA another opportunity to establish and justify that information was properly withheld), the catalyst theory is available with respect to the part of Count Three requesting electronic records. Indeed, the CIA does not dispute that the agency "released electronic records to NSC after arguing numerous times that it was simply not

15

feasible to do so." NSC 444 Pl.'s Pet. at 2–3; *see also NSC II*, 960 F. Supp. 2d at 202–04 (detailing CIA's "unclear and internally inconsistent" attempts to explain why it would not produce the electronic records); NSC 444, Pl.'s Not. Withdrawal Cross-Mots. Part. Summ. J. ("NSC 444 Pl.'s Not. Withdrawal") at 1, ECF No. 86 (explaining government's ultimate release of electronic records). Without any other explanation for the CIA's declination initially to produce the records in the electronic format, the litigation appears to have caused the CIA's changed policy, and the catalyst theory applies. Given the plaintiff's success on Count Three with respect to the motions to compel and the electronic records production, the plaintiff has substantially prevailed on Count Three and is thus eligible for a fee award at least for the claims in NSC 443. *See Am. Immigration Council v. U.S. Dep't of Homeland Sec.*, 82 F. Supp. 3d 396, 404 (D.D.C. 2015) ("To be eligible for fees, a complainant must only *substantially*—not completely—prevail.") (emphasis in original).

### 2. *NSC 444*

The plaintiff contends that eligibility is established with respect to Counts Seventeen through Twenty-One in NSC 444, *see* NSC 444 Pl.'s Reply at 2, but eligibility is only established with respect to Counts Seventeen, Eighteen, and Twenty-One under the catalyst theory.

First, the plaintiff prevailed under the catalyst theory on Count Seventeen, which requested certain records related to the processing of earlier FOIA requests, and Count Eighteen, which sought copies of CIA records pertaining to search tools and indices, for the same reason the plaintiff substantially prevailed on NSC 443 Count Three with respect to the electronic records. *See supra* Part III.A.1. In *NSC II*, summary judgment was denied, in part, to the CIA on Counts Seventeen and Eighteen with respect to withholdings under FOIA Exemptions 3 and

5, and, additionally, with respect to the adequacy of the search for records responsive to the request at issue in Count Eighteen. *NSC II*, 960 F. Supp. 2d at 208–09. The orders requiring the CIA to explain its withholdings and searches do not constitute judicial relief for the purposes of eligibility, *see Davy I*, 456 F.3d at 165; *Conservation Force*, 160 F. Supp. 3d at 203–04, but, as a result of litigation, records that the defendant had previously provided in paper form in response to Counts Seventeen and Eighteen were then released in an electronic format. NSC 444 Pl.'s Pet. at 2–3; *see also NSC III*, 206 F. Supp. 3d at 248 n.3 (explaining government's release of the "sought-after records in electronic format") (citing NSC 444 Pl.'s Not. Withdrawal). Thus, with respect to Counts Seventeen and Eighteen, the plaintiff substantially prevailed after summary judgment was denied in part to the CIA.

Second, the plaintiff substantially prevailed on Count Twenty-One under the catalyst theory because the litigation caused the CIA to "reverse[] its position" on a policy of using "arbitrary cut-off date[s]." *See* NSC 444 Pl.'s Pet. at 2, 4; NSC 444 FAC ¶ 111–15. Count Twenty-One alleged the CIA was using arbitrary cut-off dates in general and with respect to specific requests. NSC 444 FAC ¶ 111–15. Although summary judgment was granted to the CIA on this count in *NSC II*, the grant occurred after the plaintiff voluntarily withdrew the claim. *See NSC II*, 960 F. Supp. 2d at 209; *id.* at 118–19 n.5. The plaintiff withdrew the claim because the CIA changed its cut-off date policy, but "at the time this case was filed, and in fact for over a year *after*, CIA's policy was exactly as NSC alleged. CIA did not voluntarily reverse its position on this issue for ten months after vigorously defending it in its Motion to Dismiss." NSC 444, Pl.'s Opp'n Def.'s Mot. Summ. J. on Counts Eight and Twenty-One ("NSC 444 Pl.'s Opp'n on Counts Eight and Twenty-One") at 2–3, ECF No. 46 (emphasis in original). Absent any

alternative explanation from the CIA, the plaintiff's explanation for the policy change is sufficient to establish that the plaintiff substantially prevailed under the catalyst theory.

Regarding Count Nineteen, which requested records relating to Markus Büchel, the former Prime Minister of Liechtenstein, *see* NCS 444 FAC ¶ 99–103, the plaintiff has not sufficiently demonstrated that it substantially prevailed since no judicial order issued regarding this claim. Instead, the plaintiff voluntarily withdrew the claim before issuance of any orders in the case. *See* NSC 444, Def.'s Mem. Supp. Mot. Summ. J. on Counts 1, 8, 9, 10, 17, 18, and 20 at 1 n.2, ECF No. 20 (stating NSC agreed to voluntarily dismiss Count 19). The plaintiff has not provided any additional information to demonstrate that the catalyst theory applies. Even if the CIA released the requested records after the plaintiff filed the lawsuit, the record does not provide evidence that the litigation caused the release. *See, e.g., id.* (stating only that NSC has agreed to voluntarily dismiss Count 19); NSC 444, Pl.'s Opp'n Def.'s Mot. Summ. J. on Counts 1, 8, 9, 10, 17, 18, and 20 at 1 n.2, ECF No. 26; NSC 444 Pl.'s Opp'n on Counts Eight and Twenty-One at 1 n.2 (same); *see also NSC II*, 960 F. Supp. 2d at 118 n.3 (same).

The plaintiff also did not substantially prevail on Count Twenty, which sought records related to the Office of General Counsel ("OGC") guidelines and OGC's interactions with DOJ. *NSC II*, 960 F. Supp. 2d at 153. Although summary judgment was denied in part to the CIA in *NSC II* on Count Twenty, the order only pertained to the adequacy of the CIA's search, *id.* at 154, and thus was a procedural matter. Ultimately after the CIA filed a supplemental declaration in *NSC III*, summary judgment was granted to the CIA. *NSC III*, 206 F. Supp. 3d at 260–61. The plaintiff has not otherwise demonstrated the lawsuit caused the CIA to change its position or release particular documents for the plaintiff to be eligible for fees based on Count Twenty.

Thus, the plaintiff is eligible for fees based on only Counts Seventeen, Eighteen, and Twenty-One in NSC 444.

### 3. *NSC 445*

The plaintiff argues eligibility is established with respect to thirteen different Counts in NSC 445, *see* NSC 445 Pl.'s Reply at 2 (listing Counts One through Three, Five through Ten, Twelve, Thirteen, Twenty, and Twenty-One), but eligibility is only established with respect to four. The plaintiff provides many of the same arguments in the NSC 445 fee petition as in the fee petition for the consolidated case, NSC 444, *see* NSC 445 Pl.'s Pet. at 2 (arguing eligibility is established based on favorable portions of *NSC I* and *II*, overturned policies, reversed positions, and released records); *see also supra* Part III.A.1. The plaintiff has only met his burden demonstrating that four counts make the plaintiff eligible for fees under 5 U.S.C. § 552(a)(4)(E)(ii).

First, the plaintiff substantially prevailed on Count Twenty, which challenged the CIA's "Document-Level Exemption Policy" "of refus[ing] to invoke exemptions with particularity." *NSC II*, 960 F. Supp. 2d at 149 (internal quotation marks and citation omitted) (alteration in original). In *NSC II* the plaintiff was granted summary judgment on this claim because "the CIA's categorical Document-Level Exemption Policy constitutes a failure to abide by the terms of the FOIA." *Id.* at 151 (internal quotation marks and citations omitted). The grant of summary judgment was more than just a procedural order, and the agency does not appear to dispute that, if the plaintiff is eligible for a fee award, Count Twenty serves as a basis. *See* NSC 445 Defs.'

Opp'n Fees at 3 (recognizing grant of summary judgment to the plaintiff on Count Twenty in NSC 445).  Thus, the plaintiff is eligible for a fee award based on Count Twenty.[7]

Second, the plaintiff is eligible for a fee award based on Count Twelve, which challenged the CIA's response to a FOIA request seeking records pertaining to the processing of sixteen enumerated FOIA requests.  NSC 445 FAC ¶ 83.  Initially, the CIA responded to the request with a *Glomar* response, which neither confirmed nor denied the existence or nonexistence of the records.  *Id.* ¶ 84.  In *NSC II*, summary judgment was granted to the CIA on this count, but only after the parties "stipulate[d] that CIA ha[d] satisfied Count 12," by "revers[ing] its position on this count."  NSC 445, Defs.' Mot. Summ. J. on Counts Twelve and Twenty at 3–4, ECF No. 42; *id.*, Attach. 2, Kelly McClanahan Email, ECF No. 42-2; *see also NSC II*, 960 F. Supp. 2d at 118 n.3.  The plaintiff asserts that eligibility is established because the CIA reversed its position after submitting a *Glomar* response, *see* NSC 445 Pl.'s Pet. at 2, and the CIA provides no explanation to the contrary.  Thus, the plaintiff's litigation appears to have caused the CIA to reverse its position on Count 12.

Third, the plaintiff is eligible for a fee award based on Count Nine for similar reasons that eligibility is established with respect to Counts Seventeen and Eighteen in NSC 444.  *See* Part III.A.2.  In asserting Count Nine, the plaintiff challenged the adequacy of State's search efforts in response to a FOIA request for training materials and State's refusal to produce responsive records in an electronic format.  *NSC II*, 960 F. Supp. 2d at 122.  In *NSC II*, summary judgment was denied to State as to the adequacy of the search efforts and State's refusal to produce responsive records in electronic format.  *Id.* at 210.  Although State initially argued that

---

[7]     Count Twenty-One, which was the "identical challenge" as Count Twenty but brought under the APA, was dismissed in *NSC I* for lack of subject matter jurisdiction.  *NSC I*, 898 F. Supp. 2d at 266, 290−91.  Thus the plaintiff did not substantially prevail with respect to NSC 445 Count Twenty-One.

producing the records in the plaintiff's desired format was not feasible, a later release of documents responsive to Count Nine in electronic format "rendered Count 9 moot." NSC 445, Pl.'s Reply Mem. Opp'n Defs.' Mot. Summ. J. on All Remaining Claims & Supp. Pl.'s Cross-Mot. Part. Summ. J. at 2 n.2, ECF No. 79; *see also NSC II*, 960 F. Supp. 2d at 204–06 (explaining State's arguments against producing documents in electronic format); *NSC III*, 206 F. Supp. 3d at 261 n.7 ("[Plaintiff] reports that this Count is now moot."). The plaintiff's litigation appears to have "succeeded in forcing . . . State . . . to produce electronic records," NSC 445 Pl.'s Pet. at 4, and thus the plaintiff substantially prevailed on Count Nine.

Fourth, the plaintiff is eligible for a fee award based on Count Eight, which challenged DOJ's withholding of sixteen records responsive to the plaintiff's request for Office of Legal Counsel opinions concerning FOIA and the Privacy Act, 5 U.S.C. § 552a. *NSC II*, 960 F. Supp. 2d at 119–20. Although summary judgment was granted in part to DOJ in *NSC II* and one part of Count Eight was rendered moot by the plaintiff locating a public copy, *see NSC II*, 960 F. Supp. 3d at 199; *see also* NSC 445, Pl.'s Opp'n Defs.' Mot. Summ. J. on Counts 1, 2, 3, 5, 6, 7, 8, 9, 10, and 13 at 32, ECF No. 33, summary judgment was also denied in part with respect to two withheld documents, for which DOJ was ordered to release portions, *NSC II* 960 F. Supp. 2d at 198–199. DOJ ultimately released these portions pursuant to the order, *see NSC III*, 206 F. Supp. 3d at 288 (finding "the portions of the documents ordered disclosed were disclosed"), and thus the denial of summary judgment both changed the parties' legal relationship and resulted in the release of additional records.

The plaintiff, however, has not established eligibility with respect to the remaining eight counts asserted in the fee petition for NSC 445 against CIA (Counts One, Two, Three, Seven, and Thirteen), DIA (Count Five), ODNI (Count Six), and NSA (Count Ten). On all eight counts,

each of which challenged the relevant agency's response to a different FOIA request, summary judgment was either denied or denied in part to the agency with respect to that agency's withholdings under one or more designated FOIA exemptions. *NSC II*, 960 F. Supp. 2d at 209–10. For all the records remaining in dispute after the summary judgment decisions, the parties were directed to file a joint status report and propose a schedule for further proceedings, including deadlines for submitting supplementary *Vaughn* indices or declarations. *Id.* These orders to file status reports and supplementary explanatory material were procedural, not substantive, and thus, they do not make the plaintiff eligible for attorney's fees under the court-order theory. *See Davy I*, 456 F.3d at 165 (distinguishing orders that are procedural from those that are substantive in the context of determining eligibility). Although the plaintiff claims success by broadly mentioning "the number of records released which had not been processed as of the filing of the complaints," NSC 445 Pl.'s Pet. at 2, the mere processing of records after a lawsuit is initiated is not sufficient to demonstrate the plaintiff is a prevailing party. *See Church of Scientology*, 653 F.2d at 588 (requiring "casual nexus" between litigation and documents released). Thus, absent any additional and specific information from the plaintiff on the eight remaining counts in NSC 445, the plaintiff is also not eligible for a fee award on these eight counts under the catalyst theory.

In sum, the plaintiff has established eligibility for a fee award based on all counts in NSC 443, Counts Seventeen, Eighteen, and Twenty-One in NSC 444, and Counts Eight, Nine, Twelve, and Twenty in NSC 445.

### B.    ENTITLEMENT TO FEE AWARDS

The plaintiff must also demonstrate entitlement to an award. *See Weisberg*, 745 F.2d at 1495. In the plaintiff's view, entitlement is established under this Circuit's four-factor test,

which balances (1) "the public benefit derived from the case;" (2) "the commercial benefit to the plaintiff;" (3) "the nature of the plaintiff's interest in the records;" and (4) "whether the government has a reasonable basis for withholding the requested information." *Cotton,* 63 F.3d at 1117. Each factor, with respect to all of the eligible counts in NSC 444 and 445, is assessed in turn.

### 1. *Public Benefit*

The public benefit entitlement factor "requires consideration of both the effect of the litigation for which fees are requested and the potential public value of the information sought." *Davy II*, 550 F.3d at 1159; *see also McKinley*, 739 F.3d at 711 ("The first factor considers the significance of the contribution that the released information makes to the fund of public knowledge."). Public benefit is established where release of the requested information "is likely to add to the fund of information that citizens may use in making vital political choices." *Cotton*, 63 F.3d at 1120 (quoting *Fenster v. Brown*, 617 F.2d 740, 744 (D.C. Cir. 1979)). Although "a bare allegation that a request bears a nexus to a matter of public concern does not automatically mean that a public benefit is present," a requestor can demonstrate a public benefit by showing a request at issue has "at least a modest probability of generating useful new information about a matter of public concern." *Morley v. CIA*, 810 F.3d 841, 844 (D.C. Cir. 2016) (citing *Davy II*, 550 F.3d at 1159). Courts consider that "modest probability" through "an *ex ante* assessment of the potential public value of the information requested, with little or no regard to whether any documents supplied prove to advance the public interest." *Id.*

In the instant case, the public benefit factor weighs in favor of the plaintiff. First, the plaintiff "is a non-profit public interest law firm which specializes in, as the name would suggest, national security matters," and "[p]art of NSC's mission is to foster greater public understanding

of such issues, especially where they intersect with information and privacy law."  NSC 444 Pl.'s

Pet. at 3–4; NSC 445 Pl.'s Pet. at 3.  The plaintiff's requests were designed to obtain in-house

journals and to "shed light on CIA's processing of FOIA requests."  NSC 444 Pl.'s Pet. at 4; *see*

*also* NSC 445 Pl.'s Pet. at 3.  In consideration of the plaintiff's stated goals and mission, an *ex*

*ante* assessment would demonstrate that the plaintiff's requests provide a public benefit.  *See*

*Morley*, 810 F.3d at 844 (requiring *ex ante* assessment).

Second, the plaintiff has explained that this litigation succeeded in forcing agencies to

change "FOIA-unfriendly policies."  NSC 444 Pl.'s Pet. at 4; NSC 445 Pl.'s Pet. at 4.  With

respect to Counts One and Two in NSC 443, the plaintiff succeeded in invalidating the CIA's

policy for assigning rights.  *NSC II*, 960 F. Supp. 2d at 137–48, 208.  Under that policy, the CIA

did not accept the legal assignment of FOIA requests.  *Id.* at 137–48.  With respect to Count

Twenty in NSC 445, the plaintiff succeeded in invalidating the CIA's "Document-Level

Exemption Policy," *id*. at 149–51, 210, and with respect to Count Nine in NSC 445, the plaintiff

succeeded in requiring State to produce electronic records, *NSC III*, 206 F. Supp. at 261 n.7

(citing NSC 445, Pl.'s Reply Mem. Opp'n Defs.' Mot. Summ. J. on All Remaining Claims &

Supp. Pl.'s Cross-Mot. Part. Summ. J., at 2 n. 2, ECF No. 79 ("State has rendered Count 9 moot

by releasing the requested records in electronic format.")).

The policies were invalidated as inconsistent with the FOIA and "the animating principle

behind FOIA, which is to increase the *public's* access to governmental information."  *NSC II*,

960 F. Supp. 2d at 142 (emphasis in original) (internal quotation marks and citation omitted).

The combination of the plaintiff's intent, as expressed through NSC's statement of mission, and

the results in this litigation leading to the invalidation of two policies inimical to furthering

public disclosure under the FOIA demonstrate that the public benefit factor weighs in favor of the plaintiff.

## 2. *Commercial Benefit and Nature of Plaintiff's Interest*

The second and third factors, the plaintiff's commercial benefit and interest in the information, may be evaluated together. *Davy II*, 550 F.3d at 1160 ("The second and third factors . . . are often considered together"). Where a plaintiff has a commercial benefit or a personal interest in pursuing litigation, "an award of fees is generally inappropriate" because the claimant has sufficient motivation to bring suit without the promise of attorneys' fees. *See Fenster*, 617 F.2d at 743; s*ee also Cotton*, 63 F.3d at 1120 ("When a litigant seeks disclosure for a commercial benefit or other personal reasons, an award of fees is usually inappropriate.") (citation omitted).

In the instant case, the plaintiff persuasively shows that this factor weighs in the plaintiff's favor. Indeed, the plaintiff is "a non-profit organization which specializes in transparency and national security law." NSC 444 Pl.'s Reply at 3; NSC 445 Pl.'s Reply at 3. The plaintiff's goal is to make documents available to the public, including to competitors. *See* NSC 444 Pl.'s Reply at 3; NSC 445 Pl.'s Reply at 3; *see also* NSC 445 Pl.'s Reply, Attach. 1, Document Vault, ECF No. 108-1 (providing screenshot of website "where documents obtained from the government via [NSC] FOIA requests will be made available to the public in their raw form"). The defendants argue that the "Plaintiff clearly has a commercial interest in obtaining the information it requests through FOIA" because the plaintiff "frequently litigates FOIA cases against intelligence agencies." NSC 445 Defs.' Opp'n Fees at 8; *see also* NSC 444 Def.'s Opp'n Fees at 9. Under that logic, however, this factor would weigh against an award of attorney's fees to experienced, frequent requestors with mission driven interests in using the FOIA. While the

result of that approach might be to depress the use of FOIA, this would not further the public disclosure policy animating this statute. In short, this factor weighs in favor of the plaintiff.[8]

### 3. *Reasonableness of CIA's withholdings*

The fourth entitlement factor evaluates "whether the agency's opposition to disclosure had a reasonable basis in law, and whether the agency had not been recalcitrant in its opposition to a valid claim or otherwise engaged in obdurate behavior." *McKinley*, 739 F.3d at 712 (quoting *Davy II*, 550 F.3d at 1162) (internal quotation marks omitted). While, as noted, a correct legal position is dispositive, "[i]f the Government's position is founded on a colorable basis in law, that will be weighed along with other relevant considerations in the entitlement calculus." *Davy II*, 550 F.3d at 1162 (citation omitted). In response to the criticism that "evaluat[ing] the government's nondisclosure decisions will open the floodgates by transforming every motion for attorney fees into a mini-trial on the merits of the underlying FOIA claim," the D.C. Circuit has acknowledged as "undeniable that considering the merits of an agency's nondisclosure decision will frequently complicate the adjudication of motions for attorney fees." *Brayton*, 641 F.3d at 528.

This factor also weighs in favor of the plaintiff. Indeed, the plaintiff correctly notes that the holdings in the plaintiff's favor were premised on "a lack of reasonable basis in law" in the government's position and "many problems with the positions taken by CIA," NSC 444 Pl.'s Pet. at 5; *see also* NSC 445 Pl.'s Pet. at 5, regarding the CIA's assignment policy and "Document-Level Exemption Policy," which violated FOIA, *see NSC II*, 960 F. Supp. at 137–51. Although the plaintiff's argument would benefit from greater clarity, *see* NSC 444 Def.'s Opp'n

---

[8]    This factor has previously been evaluated to weigh in favor of the plaintiff. *See Nat'l Sec. Counselors v. CIA* (*NSC*), 189 F. Supp. 3d 73, 80–81 (D.D.C. 2016) (finding "the factors relevant to NSC's entitlement to attorney fees balance in favor of NSC"). In fact, in that case, the agency defendants did not even "contend that the FOIA requests benefitted NSC commercially." *Id.* at 80.

Fees at 10 (arguing the plaintiff merely provides "a sweeping statement that gives CIA and the Court little to go on"); *see also* NSC 445 Defs.' Opp'n Fees at 9 (same), the parties need not re-litigate the prevailing claims. Thus, the plaintiff's success in changing policies inimical to FOIA is sufficient to demonstrate that this fourth factor weighs in favor of the plaintiff.[9]

Since all four entitlement factors favor the plaintiff, the plaintiff is entitled to a fee award for those counts on which the plaintiff is eligible. The billing records and computation of a reasonable fee award is reviewed next.

### C.    BILLING RECORDS

The defendant argues that, even if the plaintiff is eligible and otherwise entitled, the fee award should be denied because the plaintiff did not submit contemporaneous billing records. NSC 444 Def.'s Opp'n Fees at 11–12 (challenging NSC 444 First McClanahan Decl. ¶ 12); NSC 445 Defs.' Opp'n Fees at 9–10 (challenging NSC 445 First McClanahan Decl. ¶ 12). Fee applicants in this Circuit must "include contemporaneous time records of hours worked and rates claimed, plus a detailed description of the subject matter of the work with supporting documents, if any." *In re Donovan*, 877 F.2d 982, 994 (D.C. Cir. 1989) (per curiam). Indeed, "[c]asual after-the-fact estimates of time expended on a case are insufficient to support an award of attorneys' fees," and thus "[a]ttorneys who anticipate making a fee application must maintain contemporaneous, complete and standardized time records which accurately reflect the work done by each attorney." *Concerned Veterans*, 675 F.2d at 1327.

---

[9]    The plaintiff also references the Motion for Sanctions filed in NSC 443 to demonstrate the CIA took positions that "lack [a] reasonable basis in law." NSC 444 Pl.'s Pet. at 5; *see also* NSC 443 Pl.'s Mot. Sanctions at 1 (explaining motion related to CIA's "misrepresentation to both Plaintiff and the Court regarding the nature of the information it redacted from the two documents at issue in Plaintiff's Motion to Compel Production"). Although the plaintiff did not prevail, *NSC II*, 960 F. Supp. 2d at 208, the motion was described as "non-frivolous," *id.* at 139 ("The CIA should know better than to make such an obviously unfounded argument, particularly in light of the many allegations of bad faith that have been leveled by the plaintiff in these cases, including allegations that prompted a non-frivolous motion for sanctions."). The discussion of the Motion for Sanctions in *NSC II* lends support to the finding that the fourth entitlement factor favors the plaintiff.

The plaintiff supports the pending fee petitions with *post hoc* billing records that plaintiff's counsel created after he had entered the time into an Excel Sheet, rather than submitting the original billing records themselves. *See* NSC 444 First McClanahan Decl. ¶ 12; NSC 445 First McClanahan Decl. ¶ 12. The defendants here argue that the plaintiff's fee petition should be denied given that the plaintiff submitted a *post hoc* chart while being "on notice that charts created *post hoc* are not an adequate substitute for contemporaneous billing records" because in *Nat'l Sec. Counselors v. CIA (NSC)*, 189 F. Supp. 3d 73, 83 (D.D.C. 2016), another Judge on this Court reduced the plaintiff's requested fee award "by 40% due in part to the fact that Plaintiff failed to submit contemporaneous billing records and relied, instead, and a chart that its counsel prepared *post hoc*." NSC 444 Def.'s Opp'n Fees at 12; NSC 445 Defs.' Opp'n Fees at 10–11; *see also* NSC 444 Def.'s Opp'n Fees, Attach. 1, Civ. Action No. 11-442, Fourth Decl. of Kelly McClanahan, Esq. ¶ 7, ECF No. 110-1 (providing copy of billing chart from *NSC*, 189 F. Supp. 3d 73); NSC 445 Defs.' Opp'n Fees, Attach. 1, Civ. Action No. 11-442, Fourth Decl. of Kelly McClanahan, Esq. ¶ 7, ECF No. 104-1 (same).

The defendants rely on *NSC*, 189 F. Supp. 3d 73, primarily to argue that the plaintiff's fee petition here should be denied, but, as even the defendants admit, the fees were only *reduced* in the earlier FOIA case, not denied entirely. Furthermore, the 40% reduction accounted for deficiencies across the whole fee petition, *see NSC*, 189 F. Supp. 3d at 83 (discussing reduction due to issues such as the number of hours, amount of detail, duplicative work), and unlike in the instant case, the plaintiff's counsel "did not testify that the chart of fees was recompiled from contemporaneous records," NSC 444 Pl.'s Reply at 5 (distinguishing the present case from *NSC*, 189 F. Supp. 3d 73); NSC 445 Pl.'s Reply at 5 (same). The cases are sufficiently distinguishable such that the fee petition should not be denied based on the plaintiff being "on notice."

In the alternative, the defendants ask that the fee award be reduced due to the *post hoc* billing records. This argument is more appropriate, since the plaintiff's records are not "so deficient as to prevent opposing counsel or the Court from 'mak[ing] an informed determination as to the merits of the application.'" *Citizens for Responsibility & Ethics in Washington v. U.S. Dep't of Justice* (*CREW*), 825 F. Supp. 2d 226, 231 (D.D.C. 2011) (quoting *Concerned Veterans*, 675 F.2d at 1327). First, plaintiff's counsel has provided a detailed explanation about how the billing records were prepared, stating: "I copied the information in the chart I provided to the Court directly from my contemporaneous billing records, except where I reduced a number for partial success or added explanatory text in the description." NSC 444 Pl.'s Reply, Attach. 1, Second Decl. of Kelly McClanahan, Esq. ("NSC 444 Second McClanahan Decl.") ¶ 2, ECF No. 114-1; NSC 445, Pl.'s Reply, Attach. 2, Second Decl. of Kelly McClanahan ("NSC 445 Second McClanahan Decl.") ¶ 2, ECF No. 108-2. Second, the charts provide enough detail to account for time spent on the successful Counts in *NSC I* and *NSC II*. *See Concerned Veterans*, 675 F.2d at 1327 ("[T]he fee application need not present the exact number of minutes spent nor the precise activity to which each hour was devoted nor the specific attainments of each attorney.") (internal quotation marks and citation omitted). For these reasons, the fee petition will not be denied, but the deficiencies of the billing records are factored into the fee award.

### D. REASONABLE FEE AWARD

A substantially prevailing party may be awarded "reasonable attorney fees and other litigation costs." 5 U.S.C. § 552(a)(4)(E)(i). To determine reasonable fees, the hours reasonably expended in litigation are multiplied by a reasonable hourly rate—the "lodestar amount." *Bd. of Trs. of Hotel & Rest. Emps. Local 25 v. JPR, Inc.*, 136 F.3d 794, 801 (D.C. Cir. 1998). The fee applicant has the burden of "documenting the appropriate hours, and justifying the

reasonableness of the rates." *Covington*, 57 F.3d at 1107 (citing *Blum*, 465 U.S. at 896 n.11; *Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983)). Once the fee applicant "has carried his burden of showing that the claimed rate and number of hours are reasonable, the resulting product is presumed to be the reasonable fee," and the burden shifts to the defendant to "rebut the case for a requested rate" with "equally specific countervailing evidence." *Id.* at 1109 (internal quotation marks and citations omitted).

The parties in the instant matter dispute both the rate and hours claimed by the plaintiff. The plaintiff asserts that the enhanced rates in the LSI *Laffey* Matrix should be used in calculating the fee award. NSC 444 Pl.'s Pet. at 6–7; NSC 445 Pl.'s Pet. at 6–7. Additionally, the plaintiff asserts that attorney's fees should be awarded for 132.7 hours of work in NSC 443 and NSC 444 and 36.1 hours in NSC 445. *See* NSC 444 Pl.'s Errata, ECF No. 115; NSC 445, Pl.'s Errata, ECF No. 109.[10] The defendants contend that, if attorney's fees are awarded in this case, the calculation should be based on a methodology sanctioned by the USAO, and the number of hours used, especially in NSC 444, should be "significantly reduce[d]." NSC 444 Def.'s Opp'n Fees at 3; NSC 445 Defs.' Opp'n Fees at 3. The reasonableness of the rate is considered first, followed by the number of hours on which a reasonable award may be based.

### 1. *Reasonable Billing Rate*

As noted *supra* in Part II, three sub-elements are considered to determine a reasonable hourly rate: "(1) 'the attorneys' billing practices'; (2) 'the attorneys' skills, experience, and

---

[10] The plaintiff's fee petitions originally requested fees based on fewer hours, namely, 125.7 hours in NSC 443 and NSC 444 and 27.7 hours in NSC 445, but the defendants correctly observed that the hours in the billing records submitted with the initial fee petitions total to 131.7 and 33.5, respectively. NSC 444 Def.'s Opp'n Fees at 18 n.7; NSC 445 Defs.' Opp'n Fees at 14 n.5. The plaintiff acknowledged the errors and recalculated the fee awards to include the missed hours, as well as one hour spent working on the reply in NSC 444 and 2.6 hours spent working on the reply in NSC 445. *See* NSC 444 Pl.'s Errata; NSC 445, Pl.'s Errata; *see also* NSC 444 Pl.'s Reply at 7; NSC 445 Pl.'s Reply at 5–6. Neither the Errata notices nor the plaintiff's replies provide a factual basis for the additional fees-on-fees requests.

reputation'; and (3) 'the prevailing market rates in the relevant community.'" *Salazar*, 809 F.3d at 62 (quoting *Covington*, 57 F.3d at 1107).[11]  Only the parties' dispute concerning the third sub-element, which is "inherently difficult" to determine, *Reed v. District of Columbia*, 843 F.3d 517, 521 (D.C. Cir. 2016) (quoting *Eley*, 793 F.3d at 100 (quoting *Blum*, 465 U.S. at 895 n.11)), warrants detailed discussion.  At the outset, the defendants do not dispute that an inflation adjusted variant of a USAO rate schedule is available to public interest lawyers seeking fees in "complex federal litigation" to calculate the prevailing market rate, or that this litigation qualifies as "complex federal litigation."  *See* NSC 444 Def.'s Opp'n at 15; NSC 445 Defs.' Opp'n at 11; *see also Eley*, 793 F.3d at 100 (citing *Laffey*, 572 F. Supp. at 371).[12]  Rather, the defendants

---

[11]    The first two sub-elements are easily addressed. With respect to the first sub-element, the defendant argues that the plaintiff should have submitted information regarding the attorney's "usual billing rate." NSC 444 Def.'s Opp'n at 16; NSC 445 Defs.' Opp'n at 12.  The defendants rely on *Kattan by Thomas v. District of Columbia*, 995 F.2d 274, 278 (D.C. Cir. 1993), as amended (June 30, 1993)), but that case is inapposite for several reasons: not only were attorney's fees sought under the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. §§ 1400 *et seq.*, rather than the FOIA, and the *Kattan* court did not consider the *Laffey* Matrix in awarding attorney's fees, *see id.* at 278, but also that case involved private counsel for an individual rather than, as here, a nonprofit organization. The law is well established that for nonprofit organizations, matrices reflecting the prevailing market rate may be used to determine the prevailing rate without the plaintiff providing a "usual billing rate," since such a billing rate may not exist for such mission driven organizations. *See Am. Immigration*, 82 F. Supp. 3d at 404  ("To calculate fees for public-interest attorneys who have no customary hourly rates, courts often look to prevailing market rates in the community.") (citing *Blum*, 465 U.S. at 896–97); *EPIC*, 218 F. Supp. 3d 27, 47 (D.D.C. 2016) ("Government or public interest attorneys who do not have a standard billing rate may utilize the so-called *Laffey* Matrix to establish the prevailing market rate."); *see also* NSC 444 Pl.'s Pet at 5–6 (citing *Copeland v. Marshall*, 641 F.2d 880, 889 (D.C. Cir. 1980)); NSC 445 Pl.'s Pet at 5 (same); NSC 444 Pl.'s Reply at 6; NSC 445 Pl.'s Reply at 5.  With respect to the second sub-element in determining a reasonable hourly rate, the plaintiff has provided Mr. McClanahan's credentials, *see* NSC 444, Pl.'s Pet, Attach. 2, Resume of Kel McClanahan, ECF No. 107-2; NSC 445, Pl.'s Pet, Attach. 2, Resume of Kel McClanahan, ECF No. 101-2, which the defendants do not dispute.

[12]    This Circuit has recently taken a categorical approach to determining whether any variant of the *Laffey* matrix presumptively applies in cases brought under different fee-shifting statutes.  In *Eley*, 793 F.3d 97, and *Reed v. District of Columbia*, 843 F.3d 517 (D.C. Cir. 2016), the D.C. Circuit used this categorical approach to find that plaintiffs bringing suit under the IDEA had not met their burden to demonstrate that this type of litigation is "sufficiently 'complex'" to warrant use of any version of the *Laffey* matrix.  *See Eley*, 793 F.3d at 105; *Reed*, 843 F.3d at 525.  By contrast, Title VII, antitrust, and certain other civil rights cases have been deemed "sufficiently 'complex'" that *Laffey* matrix rates apply in attorney's fees litigation.  *See Reed*, 843 F.3d at 525–26 (quoting *Eley*, 793 F.3d at 105); *id.* at 527 (Tatel, J., concurring).  The D.C. Circuit has yet to opine on whether FOIA litigation categorically warrants application of *Laffey* matrix rates, but the USAO concedes that the USAO attorney's fees matrices are "intended for use" in FOIA cases, just as in other "cases in which a fee-shifting statute permits the prevailing party to recover 'reasonable' attorney's fees." 2015–18 USAO MATRIX, EXPLANATORY NOTES ¶ 1 (citing FOIA). Indeed, the "complexity" of a FOIA case has been considered only to determine *which Laffey* matrix variant applies, as opposed to whether *Laffey* matrix rates apply at all.  *See, e.g., NSC*, 189 F. Supp. at 82; *Poulsen v. U.S. Dep't of Homeland Sec.*, Civ. No. 13-498 (CKK), 2016 WL 1091060, at *6 (D.D.C. Mar. 21, 2016).

argue that the USAO sanctioned matrices should be applied because the "Plaintiff has failed to meet its burden of showing that the enhanced rates in the LSI *Laffey* Matrix," which are based on inflation in legal services nationally," are reasonable for this case. *See* NSC 444 Def.'s Opp'n at 15–16; NSC 445 Defs.' Opp'n at 11–12.

In order to show that the LSI *Laffey* Matrix is warranted in this case, the plaintiff submits as evidence: (1) a declaration prepared in 2013 by Dr. Michael Kavanaugh, the economist whose analysis has frequently been adopted by courts applying the LSI *Laffey* Matrix to determine prevailing market rates ("2013 Kavanaugh Declaration"); (2) a link to an online copy of the LSI *Laffey* Matrix; and (3) citations to cases from this Court applying the LSI *Laffey* Matrix to determine reasonable attorney's fees. *See* NSC 444 Pl.'s Pet. at 5–7; *id.* Attach. 1, Decl. of Michael Kavanaugh, Ph.D. ("2013 Kavanaugh Decl.") ¶ 12, ECF No. 107-1; *See* NSC 445 Pl.'s Pet. at 5–7; *id.* Attach. 1, 2013 Kavanaugh Decl. ¶ 12, ECF No. 101-1. The 2013 Kavanaugh Declaration, in turn, includes three attachments: Dr. Kavanaugh's resume, a 1996 declaration by Dr. Kavanaugh in *Salazar v. District of Columbia*, 954 F. Supp. 278 (D.D.C. 1996), and a copy of the LSI *Laffey* Matrix with rates for the period of 1988 through 2013.

In the 2013 Kavanaugh Declaration, Dr. Kavanaugh argues that the LSI *Laffey* Matrix provides a preferable approach to determining prevailing market rates than the USAO *Laffey* Matrix because the LSI *Laffey* Matrix is based on a 1989 sample of legal services billing rates, which were considered in *SOCM,* 857 F. 2d at 1523–25, and *"is more likely to be a more accurate estimate of current rates because it utilizes the more recent observations, whereas the DOJ version [referring to the USAO *Laffey* Matrix] uses an older survey."* 2013 Kavanaugh Declaration at ¶ 23; *id*. at ¶ 10 (explaining that, to develop the LSI *Laffey* Matrix, "[t]he 1981-1982 Laffey matrix was updated to 1988–1989 rates with a new survey in connection with the

[*SOCM*] litigation at the urging of the D.C. Circuit"). The LSI *Laffey* Matrix then adjusts the 1989 data using an inflator that is specific to the legal services industry and reflects a national market. *Id*. ¶¶ 15–17. According to Dr. Kavanaugh, the USAO *Laffey* Matrix is less accurate because: (1) the general CPI index, by including and giving significant weight to items not relevant to legal services, fails to accurately account for market forces that influence prices in the legal services industry; (2) the general CPI index, in focusing on the local market of Washington, D.C., does not accurately reflect the market for complex litigation, which is now national due to "[r]esource mobility and low-cost communication"; and (3) the base rates from 1982 are older than the rates developed in 1989. *Id.* ¶¶ 16–23.

The shortcomings of the USAO *Laffey* Matrix have been previously discussed at length by this Court. *See, e.g., Makray v. Perez*, 159 F. Supp. 3d 25, 32–36 (D.D.C. 2016); *Eley v. District of Columbia*, 999 F. Supp. 2d 137, 150–57 (D.D.C. 2013) *vacated on other grounds*, 793 F.3d 97 (D.C. Cir. 2015). The 2013 Kavanaugh Declaration, however, fails to compare the approach in the LSI *Laffey* Matrix to the new 2015 USAO Matrix, the latter of which addresses certain deficiencies of the USAO *Laffey* Matrix by applying the PPI-OL index, which is focused on legal services costs, to rates provided in the 2011 ALM Survey. *See* 2015–18 USAO MATRIX, EXPLANATORY NOTES ¶¶ 2–3. Plainly, the 2011 ALM Survey data is more recent survey data than that used as a basis in the LSI *Laffey* Matrix.

The plaintiff's barebones submission in this case, which includes an outdated declaration and offers no analysis of the USAO's newest methodology reflected in the 2015 USAO Matrix, does not meet the plaintiff's burden to demonstrate that use of the LSI *Laffey* Matrix is warranted. The Circuit has held that a plaintiff in complex federal litigation can meet the burden of showing that the LSI *Laffey* Matrix rates apply by submitting: (1) an affidavit covering the

relevant billing period by Dr. Michael Kavanaugh explaining "why the LSI is a better measure of the change in prices for legal services in Washington, D.C. than the" most updated USAO methodology at the time; (2) "billing rates tables demonstrating the difference between average national law firm rates and the LSI update to the *Laffey* Matrix, as well as the difference between average national law firm rates and the USAO update to the Laffey Matrix"; and (3) a National Law Journal Rates Survey showing "that the rates for partners in Washington, D.C. on the high-end of the market far exceeded the rates in the LSI update." *Salazar*, 809 F.3d 58, 64–65. Although *Salazar* did not hold that a plaintiff must always submit these *exact* three forms of evidence, the Circuit emphasized that the plaintiff had "submitted 'a great deal of evidence regarding prevailing market rates for complex federal litigation.'" *Id.* at 64 (quoting *Covington*, 57 F.3d at 1110). An expert affidavit from 2013 together with a copy of the LSI *Laffey* Matrix hardly meets *Salazar's* requirement of "a great deal of evidence," or even the identical evidence to that in *Salazar*, 809 F.3d at 64. Where such identical evidence has been submitted the LSI *Laffey* Matrix has been applied instead of the USAO *Laffey* Matrix. *See, e.g., Citizens for Responsibility & Ethics in Washington v. U.S. Dep't of Justice* (*CREW II*), Civ. No. 11-00374 (CRC), 2016 WL 554772, at *1 (D.D.C. Feb. 11, 2016) ("[A]s was the case in *Salazar*, the affidavits, billing-rate surveys, and prior district-court orders that *CREW* has offered to support the reasonableness of LSI-adjusted rates in "complex federal litigation" are sufficient."); *Elec. Priv. Info. Ctr. v. U.S. Dep't of Homeland Sec.* (*EPIC*), 218 F. Supp. 3d 27, 49 (D.D.C. 2016) (applying LSI *Laffey* Matrix when plaintiff submitted evidence that "is indistinguishable from the evidence in *Salazar*").[13]

---

[13] *CREW II* was decided following the remand, in the wake of *Eley* and *Salazar*, of *Citizens for Responsibility & Ethics in Washington v. United States Dep't of Justice* (*CREW I*), 80 F. Supp. 3d 1, 5 (D.D.C. 2015), a case on which the plaintiff relies.

Recent decisions from this Court support a finding that the plaintiff's evidentiary submission here is deficient by falling short of what *Salazar* requires and failing to address the 2015 USAO Matrix. For instance, where the plaintiffs' evidentiary submissions do not address the 2015 USAO Matrix, application of the LSI *Laffey* Matrix has been generally denied. *See, e.g., EPIC*, 2017 WL 3049403, at *17 (D.D.C. July 18, 2017) (finding plaintiff failed to address the defendant's "defense of the revised USAO matrix," and "[i]nstead offer[ed] a string of cases that have applied the LSI-*Laffey* matrix and reli[ed] heavily on" *Salazar*, even though none of those cases "discuss the updated USAO matrix's new methodology, and the billable hours they were assessing likely occurred prior to the period covered by it"); *Clemente v. FBI*, No. 08-1252 (BJR), 2017 WL 3669617 at *5 (D.D.C. Mar. 24, 2017) (finding plaintiff carried her burden for demonstrating LSI rates applied for work done prior to June 1, 2015, but the plaintiff did "not provide[] a reason as to why the [LSI] Matrix would be superior to the [2015] USAO Matrix for services rendered after June 1, 2015").

In this circumstance, where the plaintiff did not meet his burden for demonstrating that the LSI *Laffey* Matrix is superior, a USAO methodology is applied as the default to determine the prevailing market rate. *See Covington*, 57 F.3d at 1109. To be clear, the USAO will not challenge as "unreasonable" those attorney's fees computed using one of its three alternative methods, the most recent of which, as previously discussed, adjusts for inflation using the USAO's preferred inflator at present, the PPI-OL. Given the shortcomings of the USAO *Laffey* Matrix, which the government does not defend, and the availability of the newest methodology to apply to work completed prior to and after June 2015, *see* 2015–18 USAO MATRIX,

---

EXPLANATORY NOTES ¶ 5, the 2015 USAO Matrix will be applied here to determine rates throughout the entire period of this litigation.

In this regard, the USAO's adoption of the 2015 USAO Matrix, which is based on an entirely new data set of hourly billing rates from 2011 and a wholly different cost adjustor, at least implicitly recognizes the deficiencies in the assumptions underlying the USAO *Laffey* Matrix. By contrast to measuring the rate of increase in the cost of legal services by the costs of all goods and services in the Washington, D.C. area per the All Items CPI, the 2015 USAO Matrix, uses as the inflator the PPI-OL specific to legal services. *Id.* ¶ 3. To the extent that the USAO still relies on the USAO *Laffey* Matrix to determine prevailing market rates, the USAO does so merely because that methodology has been deemed "reasonable" in some cases, *id.* ¶ 4, without otherwise defending the assumptions underlying that rate schedule. Indeed, the USAO does not contest applying the 2015 USAO Matrix to determine attorney's fees for work completed either before or after May 2015. Given the improvements in the assumptions underlying the 2015 USAO Matrix, this is the rate schedule that the Court will apply here.[14]

In sum, because the plaintiff failed to meet his burden, the methodology of the 2015 USAO Matrix will be applied as the default here to determine the prevailing market rates. No party, however, has provided the information necessary to apply the new methodology to rates in

---

[14] Notwithstanding this conclusion, the 2015 USAO Matrix is not critique-free. For example, this matrix is based on data from the 2011 ALM Survey, the reliability of which this Court has previously questioned for purposes of assessing prevailing hourly rates for complex federal litigation, given the broad mix of cases reflected in the survey. *See Makray*, 159 F. Supp. 3d at 51. While the 2011 ALM Survey data offers the advantage of providing reported billing practices of attorneys in the Washington, D.C. area, *see* 2015–18 USAO MATRIX, EXPLANATORY NOTES ¶ 4, and more recent data than the rates in any version of the *Laffey* Matrix, *see id.* ¶ 2, the 2011 ALM Survey data includes rates charged by attorneys across all practice areas, which undermines the degree to which the data "fairly reflects rates charged by attorneys engaged principally in complex federal litigation," *Makray*, 159 F. Supp. 3d at 51. Thus, without any further explanation of why the USAO relies on the 2011 ALM Survey as a starting point for calculating rates in the 2015 USAO Matrix, alternative methods may provide better estimates of the prevailing rate for the federal litigation. Notably, the defendants provide no expert affidavits to support the 2015 USAO Matrix or address any shortcoming, and none of the cases the defendants cite analyze the 2015 USAO Matrix. NSC 444 Defs.' Opp'n at 15–18 (citing, *e.g., NSC*, 189 F. Supp. 3d at 82; *CREW*, 142 F. Supp. 3d at 10; *Heller v. District of Columbia.*, 832 F. Supp. 2d 32, 46–47 (D.D.C. 2011)); NSC 444 Defs.' Opp'n at 11–14 (same).

years prior to 2015 and, therefore, the fee award must be computed in accordance with the calculations ordered, *infra*, in Part III.D.3.[15]

### 2. *Reasonable Billing Hours*

In determining reasonable fees, courts have "no precise rule or formula" as a guide, but may "identify specific hours that should be eliminated, or it may simply reduce the award to account for the limited success." *Hensley*, 461 U.S. at 436–37. The Supreme Court has instructed that "where the plaintiff achieved only limited success, the district court should award only that amount of fees that is reasonable in relation to the results obtained." *Id*. at 440. As a result, "a prevailing FOIA plaintiff is not entitled to an attorneys' fees award for 'nonproductive time or for time expended on issues on which plaintiff ultimately did not prevail.'" *Weisberg*, 745 F.2d at 1499 (quoting *Concerned Veterans*, 675 F.2d at 1327). "The essential goal in shifting fees . . . is to do rough justice, not to achieve auditing perfection. So trial courts may take into account their overall sense of a suit, and may use estimates in calculating and allocating an attorney's time." *Fox v. Vice*, 563 U.S. 826, 838 (2011); *see also EPIC*, 2017 WL 3049403, at *6 ("The Court's role in awarding fees is to do rough justice not engage in a picayune battle of the ledgers.") (internal quotation marks and citation omitted); *Bloomgarden v. U.S. Dep't of Justice*, 253 F. Supp. 3d 166, 179 (D.D.C. 2017) (reducing requested fees based on "rough justice") (quoting *Fox*, 563 U.S. at 838).

In this case, the plaintiff has not sought fees for all the hours spent on this extensive litigation, but only the hours spent on the claims for which the plaintiff asserts a colorable argument to be a prevailing party. NSC 444 Pl.'s Pet. at 8; NSC 445 Pl.'s Pet. at 8. Nevertheless, the CIA argues in NSC 444 that the plaintiff has claimed an "unreasonable number

---

[15] This approach does not dictate the outcome in future cases where the parties provide more robust evidentiary submissions enabling closer scrutiny of the relative merits of various attorney's fees rate schedules.

of hours." *See* NSC 444 Def.'s Opp'n at 15 ("In the present case, despite similarly limited success [to NSC 445], Plaintiff is seeking fees for nearly five times as many hours. Plaintiff has failed to show that its claim for fees on more than 125 hours of attorney work is reasonable . . . ."). According to the CIA, the plaintiff's hours should be further reduced because the plaintiff's billing records "lack the detail necessary to determine whether the claimed hours were necessary or spent on issues upon which Plaintiff ultimately prevailed," the plaintiff has included time "spent reviewing responsive records," and "Plaintiff does not appear to have sufficiently accounted for limited success in this litigation." *Id.* at 13–14. As the CIA acknowledges, some courts have declined to award fees for time spent reviewing responsive records, and others have permitted fees for such review for litigation purposes. *See id.* at 14 & n.4 (citing *CREW*, 825 F. Supp. 2d at 231, and *American Immigration Council*, 82 F. Supp. 3d at 412 for support, while conceding *Elec. Privacy Info. Ctr. v. FBI*, 80 F. Supp. 3d 149, 159 (D.D.C. 2015), allowed a fee award "for time spent reviewing records for litigation purposes"). The defendants in NSC 445 also argue that the hours in NSC 445 should be reduced. NSC 445 Defs.' Opp'n at 3.

Due to the difficulty in parsing the plaintiff's billing record to determine which hours were spent on which counts and how "necessary" each item was to the litigation, a rough justice approach will be taken to account for the limited success. As discussed *supra* in Part III.A, the plaintiff is eligible and entitled to a fee award on three of the three counts presented in NSC 443, and three of the five counts presented in NSC 444, which is a total of six out of eight, or 75% of the counts presented in the NSC 444 fee petition. For the fee award requested in NSC 445, the plaintiff is eligible and entitled to an award for four of the thirteen, or about 30%, of the counts presented. The rough justice approach must also reflect any deficiencies in the billing record, including those discussed *supra* in Part III.C. Thus, the plaintiff's total requested fee award,

pursuant to the calculation ordered below, will be reduced by 25% for the petition in NSC 444, and the fee award in NSC 445 will be reduced by 70%.

### 3. *Fee Calculation*

The defendants are directed to supply the plaintiff, within ten days of issuance of the Order accompanying this Memorandum Opinion, with a 2015 USAO Matrix that sets out a fee schedule using the same methodology for the entire period of this litigation. Further, the parties are directed to submit jointly, within twenty days of issuance of the Order accompanying this Memorandum Opinion, the total amounts of the plaintiff's fee award in NSC 444 and NSC 445, computed in accordance with the conclusions discussed, *supra,* in Part III.D.1 and D.2.[16]

### E. Other Litigation Costs

The plaintiff also seeks to recover other litigation costs in the amounts of $1,255.83 for NSC 443 and NSC 444, and $350.00 for NSC 445. NSC 444 Pl.'s Bill of Costs at 1; NSC 445 Pl.'s Bill of Costs at 1. In the petition covering NSC 443 and NSC 444, the plaintiff seeks costs for the fees for filing the action with the Clerk ($700), for service of summons and subpoena and subpoena ($42.43), and "for printed or electronically recorded transcripts necessarily obtained for use in the case" ($513.40). NSC 444 Pl.'s Bill of Costs at 1. The CIA disputes the latter two costs and argues that the plaintiff "should receive no more than 10% of the costs it has properly claimed," which is "no more than $70." NSC 444 Def.'s Opp'n Costs at 5. In NSC 445, the plaintiff seeks an award of $350 for the filing fee, NSC 445 Bill of Costs at 1, and the defendants

---

[16] The plaintiff provides no documentation for the award of fees on fees in connection with the replies in both NSC 444 and NSC 445. *See supra* note 10. If the plaintiff still seeks the fees-on-fees award, the plaintiff must also provide a factual basis for the additional one hour requested in NSC 444 and 2.6 hours requested in NSC 445. *See Boehner v. McDermott,* 541 F. Supp. 2d 310, 325 (D.D.C. 2008) (explaining that "the party requesting fees on fees has the burden of establishing the reasonableness of the request and must submit supporting documentation that provides sufficient detail").

argue the "Plaintiff's costs should," due to limited success, "be reduced to $35 or less."  NSC 445 Defs.' Opp'n Costs at 3.

Under local rules, the plaintiff may recover for all of the costs provided, *see* D.D.C. R. 54.1(d).  A court may reduce the fees, but a reduction is not necessary.  *See Moore v. Nat'l Ass'n of Secs. Dealers, Inc.*, 762 F.2d 1093, 1107 (D.C. Cir. 1985) ("[A]llowance, disallowance, or apportionment of costs is in the sound discretion of the district court."); *see also Elec. Priv. Info. Ctr. v. U.S. Dep't of Homeland Sec.*, 982 F. Supp. 2d 56, 65 (D.D.C. 2013) ("$350 (the filing fee) will not be reduced for partial success.").  Given that the plaintiff substantially prevailed on at least some of the counts in each case, and, in the case of NSC 443 and NSC 444, the CIA "seeks to impose a greater burden on Plaintiff than is required by any rule," *see* NSC 444, Pl.'s Reply Supp. Bill of Costs at 1–3, ECF No. 111; *see also* NSC 445, Pl.'s Reply Supp. Bill of Costs at 1–2, ECF No. 105, the plaintiff may recover the litigation costs of $1,605.83 in full.

## IV.   CONCLUSION

For the foregoing reasons, the plaintiff's petitions for attorney's fees and costs are granted in part and denied in part.  The plaintiff shall be awarded a fee award, as calculated pursuant to *supra* Part III.D.3, in addition to $1,255.83 for costs in NSC 443 and NSC 444, and $350.00 for costs in NSC 445.

An Order consistent with this Memorandum Opinion will issue contemporaneously.[17]

Date: November 21, 2017

_____
BERYL A. HOWELL
Chief Judge

---

[17]   Given resolution of the pending fee petitions, the following four motions will be denied as moot: (1) NSC 444, Unopposed Motion to Expedite Consideration of Bill of Costs and Fee Petition, ECF No. 118; (2) NSC 444, Sealed Motion for Leave to File Document Under Seal, ECF No. 119; (3) NSC 445, Unopposed Motion to Expedite Consideration of Bill of Costs and Fee Petition, ECF No. 111; and (4) NSC 445, Sealed Motion for Leave to File Document Under Seal, ECF No. 112.